UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:14-CV-0074-JHM-HBB

DEREK SCHALL                                                                               PLAINTIFF

VS.

SUZUKI MOTOR OF AMERICA, INC;                                                DEFENDANTS
SUZUKI MOTOR CORPORATION;
and NISSIN KOGYO CO., LTD.

**PLAINTIFF DEREK SCHALL'S MOTION
TO COMPEL ADDITIONAL TESTIMONY FROM SUZUKI DEFENDANTS'
CORPORATE REPRESENTATIVES DUE TO NEWLY PRODUCED DOCUMENTS**

Plaintiff, by counsel, respectfully moves the Court pursuant to CR 1, 26, and CR 30(b)(6), to reopen the corporate representative depositions taken of Defendant Suzuki Motor Corporation of America, Inc. ("SMAI") and Suzuki Motor Corporation ("SMC") to allow Plaintiff to obtain testimony concerning documents and information that was produced and available to Plaintiff after the initial corporate representative depositions occurred.   Courts have permitted parties like Plaintiff in this case to reopen previously closed corporate representative depositions for this limited purpose.  This Court addressed a nearly identical issue earlier this year in *Smith v. Old Dominion Freight Line, Inc.*, 2017 U.S. Dist. LEXIS 82606 (W.D. KY. May 30, 2017), where the Court outlined the relevant legal standard governing this issue and concluded that plaintiff was permitted to reopen a corporate representative deposition of the defendant to address the newly produced and discovered material, regardless of whether such material was ultimately admissible at trial.

As indicated by the Court in *Smith*, courts should reopen the deposition if the material is not duplicative of prior testimony, there are no less burdensome means of obtaining the discovery, and the discovery is relevant and proportional under CR 26.  Here, Plaintiff seeks to take testimony from corporate representatives about specific factual issues identified in subsequently produced materials.  As they were not previously produced, Plaintiff was unable to obtain corporate representative testimony on these issues.  Obtaining testimony from a corporate representative is the most efficient way to obtain this information, and in fact the only way to bind the corporation and get details concerning certain general documents involving multiple parties to avoid individual deponents' claims of a lack of knowledge.  Many of the subsequently produced documents are textbook examples of why the 30(b)(6) process was created, including undated or otherwise unidentified general PowerPoints and policy and procedure documents that only a corporate representative can adequately address, and reports concerning other similar incidents involving multiple corporate individuals.

Finally, there is no question that the documents are highly relevant to this product liability litigation.  They include, among other things, (1) newly produced records of hundreds of additional reports of other similar incidents that were not produced to plaintiff until approximately a year after the depositions occurred, (2) unredacted versions of 97 reports of other similar incidents that were previously produced in their redacted form, and thus did not allow Plaintiff to investigate the reports or examine a corporate representative about the reports based on the investigation, (3) previously undisclosed sworn, notarized questionnaires called "AIQs" that were sent to Suzuki by customers who had crashes related to the failure of their front brakes, some of which were submitted before the recall and defect were publicly disclosed, (4) quality control guidelines and policies and procedures for how such reports should have been

2

investigated and what reports and information was sent from SMAI (and Suzuki's former wholly-owned subsidiary American Suzuki Motor Corporation ("ASMC")), (5) previously undisclosed policies and procedures from 2013 – years before the depositions – concerning the process for a recall and disclosure of a defect at Suzuki, (6) over a thousand newly produced emails containing information about other similar incidents and reflecting circumstantial evidence of each Suzuki defendants' knowledge of and responsibility for the investigation and ultimate disclosure of the defect and recall, and (7) 54 foreign language documents selected by Plaintiff that SMC originally produced in Japanese that SMC subsequently agreed to translate as a resolution of an outstanding discovery dispute.  In addition to the relevance of these materials, Plaintiff's need to obtain testimony about these key documents likely to be used at trial to address potential evidentiary objections to these documents and materials.

Requiring Suzuki to prepare corporate representatives on these documents and this information is also proportional.  The documents should have been produced and the witnesses prepared prior to their initial depositions.  Had they produced these materials, there is no question Plaintiff would have had the right to question them about the documents at that time. Suzuki should not benefit from their unilateral decision to withhold these documents until after the corporate representative depositions.

If this Court does not reopen the depositions for this limited purpose, Plaintiff will never have an opportunity to question a corporate representative and obtain binding testimony about these key documents prior to trial.   Moreover, Plaintiff needs these depositions to obtain foundational information about this evidence concerning its potential admissibility at trial.

## PROCEDURAL HISTORY

Plaintiff is permanently paralyzed from the chest down due to injuries he sustained in a motorcycle crash while he was riding his 2007 Suzuki GSX-R motorcycle home from a church group gathering on July 19, 2013.  The case was originally filed in July 2014, but due to procedural and jurisdictional motion practice, discovery did not begin until June 2015.  As soon as discovery commenced, Plaintiff served initial written discovery on June 1, 2016, and initial 30(b)(6) deposition notices on Defendants SMAI and SMC on July 1, 2015.  SMAI and SMC first produced documents in August 2015.  Litigation over the location of SMC's corporate representative deposition – and scheduling issues concerning availability of SMAI's representatives – delayed the depositions until February 2016 (SMAI) and March 2016 (SMC).  The final 30(b)(6) notices are attached as Exhibits A and B respectively.

### SMAI'S Corporate Representative Depositions and Subsequent Document Productions

Once the depositions were scheduled, SMAI made additional productions in September 2015, November 2015, and December 2015.  *See* Exhibit C (Ltr from Suzuki Counsel to Court dated July 8, 2016).[1]  SMAI then produced two representatives: Mark Eastman on February 10, 2016, and Steve Muthig on February 11, 2016.   Mr. Eastmen testified predominately to issues concerning the bankruptcy, along with SMC's relationship with SMAI and its prior wholly-owned American subsidiary, American Suzuki Motor Corporation ("ASMC").  All other topics were supposed to be addressed by Mr. Muthig.

Only after these depositions occurred did SMAI begin producing a number of highly relevant documents, none of which were available to Plaintiff prior to the corporate representative depositions.

---

[1] The letter was Suzuki's effort to argue that the case schedule deadlines should not be extended despite the recent substantial document productions and the numerous existing document disputes between the parties.

*First*, on March 1, 2013 – one month after SMAI's corporate representative deposition – SMAI produced an additional 1,169 emails totaling approximately 10,000 pages of material. No explanation was provided about why these emails were withheld from the initial production.

*Second*, on April 4, 2013 – two months after SMAI's corporate representative deposition – SMAI produced unredacted versions of what are called "Siebel" reports that reflect instances when customers and dealers reported issues with Suzuki GSX-R motorcycle front brakes to ASMC and, subsequently, SMAI. Initially, Suzuki produced redacted versions of these 97 reports where they had redacted the customer names and other necessary information to identify the people making the report and their contact information. Plaintiff was thus unable investigate any of these reports. This issue was litigated, and ultimately this Court ordered the Suzuki Defendants to produce the unredacted reports. *See* Order dated March 23, 2016, Dkt. #74.

*Third*, on April 14, 2016 – two months after SMAI's corporate representative deposition – they produced many "AIQs." AIQs are notarized questionnaires completed and returned by individuals who reported crashes due to front brake failures of their Suzuki GSX-R motorcycles. They were all dated long before the corporate deposition occurred. No explanation was provided for why they were withheld prior to the deposition.

*Fourth*, the depositions themselves identified several documents and categories of documents and information that were previously unknown to Plaintiff. Most importantly, they highlighted the specific names of documents and how they were used, allowing Plaintiff to draft targeted and specific discovery requests to obtain documents and information that was previously not produced by the Suzuki Defendants. Those documents were produced during the summer of 2016, along with the additional discovery responses. *See* Ex. C, identifying production dates after SMAI's corporate representative depositions in February 2016.

Included in these additional productions were, among other things, a number of quality process and procedure documents concerning the communication and dissemination of information between SMAI and SMC, warranty policy and procedure manuals, personnel records for individuals involved in the quality function, policy and procedure manuals for individuals employed as technical service managers who had day-to-day interaction with customers and dealers concerning issues with the GSX-R motorcycles, training videos concerning brake bleeding and maintenance, and advertisements concerning the Suzuki GSX-R motorcycles.

***Finally***, and perhaps most importantly, it became clear to Plaintiff that SMAI was withholding several highly relevant materials – some of which were produced in other litigations pending in other jurisdictions.  In November 2016, Plaintiff sought and obtained an order from this Court ordering Suzuki to produce an index showing what documents were produced in each litigation, and further permitting Plaintiff to coordinate and work with other plaintiffs to both translate the foreign documents produced by SMC (among other issues).  Following this order, Suzuki and Plaintiff, along with plaintiffs in other cases, came to a global resolution concerning Suzuki's document production.

Two major issues were addressed.  First, Suzuki had withheld all reports it had received of other similar incidents from the documents produced to Plaintiff on the theory that any report it received after the date of Plaintiff's wreck in July 19, 2013 was irrelevant.  This position had no legal justification, and this Court cited the long-standing law in the Sixth Circuit dating back to 2007 about the multiple ways OSIs are relevant.  The Court stated:

> Substantially similar incidents are relevant where they tend to show the existence of a dangerous condition, to prove the manufacturer's knowledge of the danger, to demonstrate the risk created by the defendant's conduct, or to show that the alleged defect or dangerous condition caused the injury.

Exhibit D, p. 5 (citing *Burke v. U-Haul Int'l, Inc.*, No. 3:03-CV-32-H, 2007 WL 403588, at *1 (W.D. Ky. Jan. 31, 2007).  Given this clear law, Suzuki's claim that such documents were irrelevant to one issue – their knowledge – was not grounds to withhold these materials.

In addition, Suzuki failed to provide native electronic documents such as excel files and power-points.  Without such documents, performing an analysis of the various hundred-page unusable pdfs of these excel spreadsheets was impossible.

Ultimately, on January 5, 2017 – eleven months after SMAI's corporate representative deposition – SMAI produced a complete set of documents in this case, including hundreds of additional substantially similar incident reports and thousands of additional emails and other documents in native excel and electronic format.

**SMC's Corporate Representative Deposition And Subsequent Productions**

Prior to the corporate representative deposition of SMC's designated representative, SMC produced over 131,000 Japanese language documents.  Virtually all of SMC's Japanese language e-mails (including 29,251 documents and attachments) were produced in December 2015.  Rather than providing English answers to Plaintiff's written interrogatories, SMC referred Plaintiff to the foreign language documents.  Given the difficulty in scheduling SMC's corporate representative deposition and – and the scheduling order deadlines at the time – Plaintiff proceeded with the deposition in March 2016.

Nonetheless, following the deposition, Plaintiff received numerous highly relevant documents from SMC directly or from SMAI that related to SMC.

*First*, in April 2014 – a month after SMC's corporate representative deposition – SMC produced unredacted versions of the Siebel reports of front brake failures.  As with SMAI, these

7

documents are critical as they go to SMC's knowledge and the nature of its investigation into the brake failures.

*Second*, in May 2013 – two months after SMC's corporate representative deposition – SMC first produced its policies and procedures governing the investigation into the defect, disclosure of the defect, and ultimate decision to initiate a recall.  These documents are relevant to Plaintiff's claims for failure to warn, punitive damage claims, and negligence claims based on their inadequate quality control processes.

*Third*, and importantly, a number of discovery disputes concerning SMC's documents and responses to Plaintiff's written discovery were contested between the parties in the summer of 2016 following SMC's document production. For example, Plaintiff argued that SMC's reference to foreign language documents in response to written interrogatories was inappropriate, and that if SMC was going to refer to foreign language documents in response to written interrogatories it had a duty to produce translated copies of such documents.[2]  Furthermore,

---

[2] Multiple courts have held that while a party does not have a duty to translate documents, they do have a duty to provide English answers to written interrogatories in United States Courts.  Where a party chooses to refer to documents as opposed to providing written answers under Fed. R. Civ. P. 33(d), courts have recognized that the documents referred to must be provided in a translated form, as Fed. R. Civ. P. 33(d) only permits references to documents when the burden on reviewing the materials and collecting the information is the same on both parties. In fact, this Court expressly found that such translations must be provided in a recent case, *Hiser v. Volkswagon Group of Am.. Inc.*, 2017 U.S. Dist. LEXIS 12313 (W.D. Ky. Jan. 30, 2017), where the Court held that "Courts passing upon the issue consistently hold that English-language translations must be produced" in the context of documents referenced in response to written interrogatories pursuant to Rule 33(d), as "the burden on identifying the relevant information . . . will be substantially greater for the requesting party . .. than for the responding party."

The "consistent" court decisions referenced in *Hiser* include, among others, the following: *Nature's Plus Nordic A/S v. Natural Organics*, 274 F.R.D 437 (E.D.N.Y. Mar. 28, 2011) (holding that the "Court agrees with those courts that have addressed this issue and finds that when a party responds to an interrogatory by producing documents written in a foreign language, Rule 33(d) requires the responding party to provide a translation of those documents."); *Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, Civil Action No. 08-CV-12393, 2009 U.S. Dist. LEXIS 58059, 2009 WL 2022308, at *4-5 (E.D. Mich. July 8, 2009) (rejecting argument that requesting party should bear burden of translation, where producing party directed requesting party to foreign-language documents in response to Interrogatories pursuant to Rule 33(d), as that argument "ignore[d] the fact that [the] issue [was] not before the Court on a Request for Production, but by way of Interrogatories"); *E. & J Gallo Winery v. Canine Rallo, S.p.A.*, No. 1:04cv5153 OWW DLB, 2006 U.S. Dist. LEXIS 84048, 2006 WL 3251830, at *5 (E.D. Cal. Nov. 8, 2006) (same); *Invensas Corp. v. Renesas Elecs. Corp.*, Civil Action No. 11-448-GMS-CJB, 2013 U.S. Dist. LEXIS 199894, at *17 (D. Del. May 8, 2013) (ordering production of English language translations of data referred to in interrogatory

Plaintiff disputed SMC's decision to produce PDFs of native excel files, making it difficult if not impossible to review such files. Finally, Plaintiff believed SMC was withholding materials that had been produced in other cases as part of a divide and conquer strategy to give limited information to each different plaintiff. Plaintiff in fact filed motions or letter briefs on each of these issues.

As part of a global resolution of discovery disputes, SMC agreed to provide the plaintiffs involved in the dispute with 100 translated documents. Approximately 54 such translated documents have been requested and produced to date, and they were first produced in April 2017.

***Finally***, the thousands of emails and documents produced by SMAI – including hundreds of new reports of other similar incidents – are all relevant to SMC's liability in this litigation. Such documents go to SMC's knowledge, comparative fault and responsibility, and potential punitive damage claims. The question of what SMC knew about the hundreds of Siebel reports received after the recall, how SMC investigated those reports, what SMC instructed SMAI to do with those reports and its role in that process, and how SMC changed the reporting process between SMAI and SMC are all relevant issues in this products liability case.

## <u>ARGUMENT</u>

Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any party's claim or defense."

---

responses); *In re Air Crash Disaster Near Warsaw, Poland on May 9, 1987*, No. MDL 787, 1996 U.S. Dist. LEXIS 22711, 1996 WL 684434 (E.D.N.Y. Nov. 19, 1996) (holding foreign language documents referred to in written discovery responses must be produced in English, along with documents already translated by defense counsel).

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (*citing Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). The Court has wide discretion when dealing with discovery matters, including when deciding whether information might be relevant. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).  Rule 26 was recently amended to include a proportionality provision. *Albritton v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 83606 at *4 (W.D. Ky. June 28, 2016) ("Proportionality is the touchstone of the revised Rule 26(b)(1)'s scope of discovery provisions.").

In terms of the importance of a 30(b)(6) deposition, and the burdens imposed on a defendant (or any corporate entity) responding to such a notice, this Court recently outlined those burdens in detail, and Plaintiff will not repeat them here.  *See Janko Enters. v. Long John Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334 (W.D. Ky. Apr. 2, 2014).  Simply put, corporations have a duty to present a prepared and knowledgeable corporate representative on the topics identified in the notice who is able to testify about more than the deponent's personal knowledge, and there must have been a meaningful and significant investigation into the topics identified in the notice.  *Id.* This process is critical as it allows a party to obtain binding testimony from an authorized representative that it can rely upon for trial, rather than requiring the party to obtain dozens of depositions from each individual corporate officer or employee involved in the factual issues of the case.  *Id.*

In *Smith v. Old Dominion Freight Line, Inc.*, 2017 U.S. Dist. LEXIS 82606 (W.D. KY. May 30, 2017), the Court outlined the legal standard governing the specific issue before this case: whether to reopen a party's deposition under Fed. R. Civ. P. 30(b)(6) based on materials produced after the deposition was completed:

If a deponent "has already been deposed in [a] case," then "[a] party must obtain leave of court" in order to take the deposition. Fed. R. Civ. P. 30(a)(2)(A)(ii). "[T]he court must grant leave [to resume the deposition] to the extent consistent with Rule 26(b)(1) and (2)." *Id.* at (a)(2). Rule 26(b)(1) is the touchstone for the scope of civil discovery. Rule 26(b)(1) provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) addresses limitations on the frequency and extent of discovery; subpart (b)(2)(A) gives the court discretion to alter limits on written discovery and the length of depositions under Rule 30, and subpart (b)(2)(B) sets forth limitations on electronically stored information. *Id.* at (b)(2)(A)-(B). Finally, subpart (b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1) [set forth above]." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

When additional documents are produced after a corporate representative deposition, courts have consistently allowed litigants to reopen the deposition to obtain testimony concerning the newly produced materials, which is what the Court ultimately allowed in *Smith*. *See, e.g.*, *Smith v. Old Dominion Freight Line, Inc.*, 2017 U.S. Dist. LEXIS 82606 (W.D. Ky. May 30, 2017) (granting plaintiff's request to reopen the corporate representative deposition for documents produced after the deposition had concluded); *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 900 (S.D. Ohio 2015) (reopening discovery and permitting plaintiff to obtain additional 30(b)(6) deposition testimony concerning new

information discovered during the deposition and additional documents produced after the deposition); *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, 2016 U.S. Dist. LEXIS 112980 (N.D. Ohio Aug. 23, 2016) (ordering party to produce additional 30(b)(6) witness to supplement testimony based on plaintiff 30(b)(6) witness' failure to prepare and provide testimony regarding deposition topics); *Laethem Equip. Co. v. Deere & Co.*, 2007 U.S. Dist. LEXIS 72593 (E.D. Mich. Sep. 28, 2007) (permitting plaintiff to take additional 30(b)(6) deposition testimony concerning topics where additional documents were produced after the deposition, and finding that deposition would take place in the court's chambers before the court given the numerous discovery battles between the parties).

As discussed below, each of the categories of newly produced documents are related to previously noticed topics outlined in SMC and SMAI's respective 30(b)(6) depositions, and Plaintiff should be permitted to obtain binding corporate testimony concerning these new documents as it relates to these topics areas.

## I.   PLAINTIFF SHOULD BE PERMITTED TO CONTINUE THE DEPOSITION OF SMAI AND SMC'S CORPORATE REPRESENTATIVES CONCERNING THE AIQ QUESTIONNAIRES

Plaintiff's 30(b)(6) notices to SMAI and SMC sought testimony and all related documents concerning:

> All customer complaints, FTIRs, incident reports, warrant claims, service repair reports or other communications from any party or entity concerning potential problems with a Defective Motorcycle's front brake systems or front brake power and performance.[3]

---

[3] SMAI 30(b)(6) Notice Topic 16.  SMC 30(b)(6) Notice Topic 14.  SMC's notice was slightly different in that it also made clear that it included "your communications with ASMC and SMAI regarding such issues."  The AIQs are also relevant to other topics raised in the respective 30(b)(6) notices, including (1) to SMC and SMAI's investigation into the defect, which would include the investigation they performed based on these reports, and the Recall and Recall Notice that necessarily ignored these sudden brake failure findings, *See* SMAI 30(b)(6) Notice Topic Nos. 17 and 18.  SMC 30(b)(6) Notice Topic Nos. 15 and 16, and (2) the communications between SMAI, ASMC and SMC, *see* SMAI 30(b)(6) Notice Topic No. 5; SMC 30(b)(6) Notice Topic Nos. 14, 15, 16.

Following the deposition, SMAI produced AIQs, which were sworn and notarized questionnaires sent to SMAI and its predecessor ASMC by customers who suffered crashes while riding Suzuki GSX-R motorcycles and alleged that the crash was the result of sudden brake failure. Such documents were also requested in Plaintiff's initial discovery to SMC and SMAI. They were clearly non-privileged, and highly relevant as they contained significant details of each other similar incident referenced in the questionnaires. They also contained contact information for the person submitting the questionnaire. Some of those individuals are now identified as witnesses in Plaintiff's Rule 26(a) disclosures. Plaintiff is still attempting to contact other individuals.

*First*, this testimony would not be cumulative of any prior testimony. Plaintiff has never had an opportunity to question a corporate representative about these documents, as they were not produced at the time. While Plaintiff could ask general questions about the reports received and transmitted to SMAI and SMC, it is only now that they can ask detailed questions about specific other similar instances that are most likely to be offered into evidence at trial, along with Suzuki's knowledge, investigation, statements to such individuals, and resolution of each such instance. Absent such testimony, SMAI and SMC would be able to make bold claims concerning these incidents based on previously undisclosed factual information, and surprise Plaintiff with such information at trial.

*Second*, obtaining the testimony is not unduly burdensome, nor is there any other more convenient means. Absent being able to depose a corporate representative, Plaintiff would be forced to depose dozens of individuals referenced in the documents. This contravenes the purpose of the 30(b)(6) rule, which instead promotes efficiency by requiring the corporation to put forth a prepared witness who cannot – unlike individuals – deny knowledge of any specific

13

fact or circumstance and will bind the corporation. This is in fact precisely what Bryan Malyszek, who was one of the individuals who received the questionnaires, did during his deposition when asked about the questionnaires. (*See, e.g.*, Ex. E, Deposition of Bryan Malyszek, pp. 85:9-20).[4] Plaintiff needs to get a corporate representative on the record to provide binding testimony concerning the AIQs.

**Third**, such testimony is clearly within the scope of discovery. This Court has already recognized the importance and relevance of these other similar incidents. In its March 2013 Order, the Court identified four different ways that such incidents are relevant and admissible. In that same order, the Court also made clear the burden on Plaintiff to establish facts for each of these incidents. In fact, in *Smith v. Old Dominion Freight Line, Inc.*, Judge Lindsay found that one of the specific areas where testimony should be reopened is when such testimony relates to prior accidents or incidents, citing the same relevancy language from *Burke* relied upon by this Court. *See* 2017 U.S. Dist. LEXIS 82606, at *20-21 (May 30, 2017).

**Fourth**, while the AIQ information was produced by SMAI, it is highly relevant to both SMAI and SMC, and SMC should be forced to produce a witness to testify about these documents. They go to the heart of this case – what SMC knew, causation concerning the defect, and what, if anything, SMC did in the face of the information it possessed. Given that SMAI is a wholly-owned subsidiary of SMC and under its complete control, it is both fair and proportional to require SMC to now come forward for a continued deposition on these topic areas.

---

[4] Mr. Malyszek the head of ASMC and subsequently SMAI's mediation department, also claimed a lack of knowledge when asked to clarify why he signed off on a fact sheet concerning the recall that said sudden front brake failure did not occur in the GSX-R motorcycles when he was personally aware of at least three instances when customers reported sudden front brake failure prior to Suzuki's disclosure of the defect. (Malyszek Dep. pp. 97:18-99:21). Plaintiff needs to obtain corporate representative deposition testimony on these issues.

*Finally*, even if this information may not ultimately be admissible, at this discovery stage, it is certainly relevant and discoverable. *See, e.g., Smith v. Old Dominion Freight Line, Inc.*, 2017 U.S. Dist. LEXIS 82606, at *20-21 (May 30, 2017) (noting that issues concerning other similar incidents was discoverable and required the reopening of the corporate representative deposition on the issue, even if the information may ultimately be inadmissible at trial).

Accordingly, Plaintiff respectfully requests that he be permitted to continue SMAI and SMC's corporate representative depositions on the subsequently produced AIQ questionnaires.

## II.   PLAINTIFF SHOULD BE PERMITTED TO CONTINUE THE DEPOSITION OF SMAI AND SMC'S CORPORATE REPRESENTATIVE CONCERNING THE UNREDACTED SIEBEL REPORTS

Following SMAI's and SMC's corporate representative depositions, both SMAI and SMC produced unredacted Siebel reports concerning reports of front brake failure and performance issues that were transmitted to SMAI before Plaintiff's wreck.  At the time that Plaintiff took the long-scheduled deposition of SMAI's corporate representative and SMC's representative, Plaintiff only had redacted versions of these 97 reports that redacted the name and contact information of the people that made the reports.  As such, Plaintiff was unable to perform any investigation into the reported incidents.  Moreover, Plaintiff did not have the native excel files where many of these reports were catalogued and transmitted internally at SMAI, and thus could not perform any analysis into who at SMAI knew what when, and what they did about it.

Now Plaintiff has been able to complete their investigation, and has specific questions for SMAI about the specific details concerning these 97 other similar incidents so that Plaintiff can make determinations about which other similar incidents Plaintiff will seek to introduce at trial.

Because of the court's requirement that such incidents be "substantially similar" Plaintiff seeks to confirm facts and get a complete picture from SMAI about these incident reports.

Like the AIQs, this testimony was requested and is relevant to a number of topic areas identified in Plaintiff's prior 30(b)(6) notices to SMAI and SMC. [5]  Furthermore, like the AIQ documents, allowing testimony concerning these newly produced redacted documents complies with the standards for reopening testimony recognized by the Court.

*First*, this testimony is not cumulative or duplicative.  Plaintiff has never been able to depose anyone at SMAI or SMC concerning the specific facts of these reports because they could not investigate and gather the information from the customer.  This prejudice is highlighted by an exchange with Mr. Muthig – SMAI's corporate representative and the head of quality assurance – about these reports.

When Plaintiff attempted to question SMAI's representative, Steve he began by stating that because of the length of time that had passed, the events in his mind were beginning to get a "little bit gray in the mind" (Ex. F, Muthig Dep. 15:16-24).  Nonetheless, he admitted that in preparation for his deposition he had personally reviewed only 40 documents prior to his deposition in total, and had only talked to a single person for 10 minutes.  (Ex. F, Muthig Dep. p. 17:4-22:17).  Thinking he must have reviewed summaries, Plaintiff's counsel asked what summaries he reviewed, at which point he admitted he had not reviewed any.  (Ex. F, Muthig Dep. p. 18:17-19:5).  When Plaintiff asked him a specific question about what he did to review

---

[5] SMAI 30(b)(6) Notice Topic 16.  SMC 30(b)(6) Notice Topic 14.  SMC's notice was slightly different in that it also made clear that it included "your communications with ASMC and SMAI regarding such issues."  The AIQs are also relevant to other topics raised in the respective 30(b)(6) notices, including (1) to SMC and SMAI's investigation into the defect, which would include the investigation they performed based on these reports, and the Recall and Recall Notice that necessarily ignored these sudden brake failure findings, *See* SMAI 30(b)(6) Notice Topic Nos. 17 and 18.  SMC 30(b)(6) Notice Topic Nos. 15 and 16, and (2) the communications between SMAI, ASMC and SMC, *see* SMAI 30(b)(6) Notice Topic No. 5; SMC 30(b)(6) Notice Topic Nos. 14, 15, 16.

the individual 97 Siebel Reports, he testified that he only reviewed "three or four" of the 97

reports.  (Ex. G, Muthig Dep. p. 342:2-20).[6]

The prejudice to Plaintiff in having redacted – as opposed to unredacted – versions of

these reports at the time of Mr. Muthig's deposition was then obvious based on Plaintiff's effort

to question him about one of the specific instances.  Plaintiff introduced an October 30, 2012

email concerning a list of GSX-R brake failure reports received from customers, which involved

a customer who reported a brake failure in June 2012.  Mr. Muthig testified it involved a

customer whose bike tipped over while she was in her driveway, and thus it was not a crash.

(Ex. H, Muthig Dep. p. 218:1-223:1).

After the deposition, SMAI produced the unredacted Siebel Report for this incident, and

identified the rider as Kristen Trujillo.  (*See* SMAI SCHALL 6706 first produced on April 4,

2016).  We then found and spoke to Ms. Trujillo.  She informed us and will testify that she

crashed when her front brakes unexpectedly failed while riding and going around a curve,

substantially similar to what Plaintiff experienced in this case.  Ms. Trujillo was not the only

customer to provide additional details concerning their Siebel Report.  Multiple riders whose

names had been redacted agreed to testify about their particular circumstances.  Unsurprisingly,

while many of the reports only mentioned customers experiencing reduced brake pressure after

---

[6] Plaintiff is not seeking to perform a line-by-line analysis of the corporate representative deposition testimony, nor is it asking the Court to reopen Mr. Muthig's deposition on the various topic areas on the grounds that he was unprepared at this time.  Plaintiff is only asking to be able to re-depose a party representative about the materials produced after Mr. Muthig's deposition.  However, there is no plausible claim that Mr. Muthig either reviewed or relied upon the subsequent productions at the time he provided his initial testimony, and thus Plaintiff could not have obtained testimony from him on these documents at that time.  Notably, courts have repeatedly found that a party's decision to produce an unprepared corporate representative such as Mr. Muthig is sanctionable and is similar to producing no witness at all.  *Janko Enters.*, 2014 U.S. Dist. LEXIS 185334 at *30; *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 400-01 (W.D. Tenn. 2011) (Lilly's Rule 30(b)(6) designee was not adequately prepared to testify on the noticed topics because he did not meet with employees he knew had accessed plaintiff's website, examine their computers to determine what portion of plaintiff's secure site had been accessed, or "review any documents or records to determine who accessed the site, although he admitted that Lilly probably had such records available").

the bike was sitting – and not while it was being ridden – the customers themselves reported near miss crashes that ultimately led them to have their bikes checked due to the brake failures. *See* Ex. I, Plaintiff's Amended Rule 26(a) disclosures.[7]

Prior to obtaining the unredacted Siebel Reports, Plaintiff would not be able to press SMAI's corporate representatives about the details of this incident. Now, Plaintiff can and needs to obtain such details.

*Second*, there is no less burdensome way to get the details of these various other similar incidents then through corporate designee testimony, as Plaintiff would otherwise need to depose dozens of people. All this information is readily available to SMAI and SMC, they simply must review it before they produce someone to testify (unlike Mr. Muthig, who only reviewed three or four reports).

*Third*, the information is highly relevant. As noted above, this Court has already identified the standards for admissibility of other similar incidents, noting that they must be substantially similar. This testimony is critical to determining what incidents are substantially similar, and furthermore go to SMAI and SMC's knowledge, investigation, failure to warn, and the nature of the defect itself and its causal relationship with Plaintiff's wreck.

There are 96 more Kristen Trujillos, and Plaintiff seeks to depose a prepared SMAI corporate representative on these unredacted Seibel reports to ensure that critical foundational testimony can be obtained at trial for the reports Plaintiff is likely to use. Notably, Plaintiff will make a good faith effort to limit the 97 reports to those most likely to be used at trial.

### III.   PLAINTIFF SHOULD BE PERMITTD TO CONTINUE THE DEPOSITION OF SMAI AND SMC'S CORPORATE REPRESENTATIVES CONCERNING THE HUNDREDS OF ADDITIONAL SIEBEL REPORTS RECEIVED AFTER PLAINTIFF'S CRASH

---

[7] Ms. Trujillo has been disclosed as a trial witness on Plaintiff's Rule 26(a) disclosures.

After the SMAI and SMC corporate representative depositions, it became obvious that SMAI and SMC withheld Siebel Reports involving other similar incidents that were reported to SMAI **after** Plaintiff's crash.  Litigation ensued to collect these reports, and ultimately SMAI agreed to produce them in January 2017, over ten months after SMAI's corporate representative deposition occurred.  These reports – like the AIQs and unredacted Siebel Reports referenced above – are highly relevant documents concerning other similar incidents.  Hundreds of them reference not just brake failure, but crashes.  These records are relevant to multiple topics in the 30(b)(6) notices previously served on SMAI and SMC.[8]  Furthermore, like the AIQ documents and unredacted Siebel Reports, allowing testimony concerning these newly produced redacted documents complies with the standards for reopening testimony recognized by the Court.

*First*, these documents were never produced prior to the depositions in any form, redacted or unredacted, and thus no testimony has been obtained concerning these reports and their details from a corporate representative.[9]

*Second*, there is no less burdensome way to get the details of these various other similar incidents then through corporate designee testimony, as Plaintiff would otherwise need to depose dozens of people.

*Third*, the information is highly relevant.  As noted above, this Court has already identified the standards for admissibility of other similar incidents, noting that they must be

---

[8] SMAI 30(b)(6) Notice Topic 16.  SMC 30(b)(6) Notice Topic 14.  SMC's notice was slightly different in that it also made clear that it included "your communications with ASMC and SMAI regarding such issues."  The AIQs are also relevant to other topics raised in the respective 30(b)(6) notices, including (1) to SMC and SMAI's investigation into the defect, which would include the investigation they performed based on these reports, and the Recall and Recall Notice that necessarily ignored these sudden brake failure findings, *See* SMAI 30(b)(6) Notice Topic Nos. 17 and 18.  SMC 30(b)(6) Notice Topic Nos. 15 and 16, and (2) the communications between SMAI, ASMC and SMC, *see* SMAI 30(b)(6) Notice Topic No. 5; SMC 30(b)(6) Notice Topic Nos. 14, 15, 16.

[9] Limited fact testimony was obtained from Mr. Malyszek, but he was not and did not speak for the corporation and had done even less pre-deposition preparation than Mr. Muthig.

substantially similar.  This testimony is critical to determining what incidents are substantially similar, and furthermore go to SMAI and SMC's knowledge, investigation, failure to warn, and the nature of the defect itself and its causal relationship with Plaintiff's wreck.

*Finally*, in terms of whether it is proportional to require SMAI and SMC to recall a witness to address these issues, it is important to remember that they had no valid legal justification for withholding these documents.  The law in the Sixth Circuit is clear that other similar incidents that are substantially similar are relevant and admissible for several issues, including, among others, knowledge, causation, and awareness of the danger of the defect.  Despite this clear law, SMC and its wholly-owned subsidiary SMAI withheld all incidents after July 19, 2013 – the date of Plaintiff's wreck – on the grounds that they were irrelevant to SMC and SMAI's knowledge.  This is even more egregious given that they made this same argument in December 2015 when they tried to withhold the lawsuits filed after Plaintiff's crash on the same theory, and this Court summarily rejected that argument.

Because they chose to delay production and discovery based on unsupportable legal grounds, they cannot now claim that it is somehow unfair to require them to reproduce witnesses on these newly produced documents.

**IV. PLAINTIFF SHOULD BE PERMITTED TO CONTINUE THE DEPOSITION OF SMAI AND SMC'S CORPORATE REPRESENTATIVES CONCERNING THE 1,619 NEW EMAILS PRODUED BY SMAI AFTER ITS CORPORATE REPRESENTATIVE DEPOSITIONS**

SMAI withheld 1,619 emails from its initial e-mail production in November 2015, and did not produce them until March 1, 2016.  There is no valid basis they were withheld – they were clearly requested previously in both Plaintiff's 30(b)(6) Notice to SMAI and Plaintiff's written discovery requests.  The information contained in these emails address numerous topics identified in Plaintiff's 30(b)(6) notice, including communications internally at SMAI and

20

between SMAI/ASMC and SMC about the recall, the language of the Recall Notice, the investigation and analysis of the various Siebel Reports and customer complaints about front brake pressure, the control SMC had over SMAI and ASMC and their operations, and establish evidence supporting Plaintiff's claim that SMAI is the successor to ASMC.[10]  Again, allowing Plaintiff to take additional corporate representative deposition testimony on these emails complies with the standard for such discovery.

*First*, Plaintiff intends to limit his examination to the newly produced emails, for the purposes of gathering foundational information to establish the admissibility of the documents for use at trial.  Because they were never produced, they were not previously addressed by any corporate representative witness.

*Second*, the 30(b)(6) process is the most efficient way to obtain testimony concerning the e-mails generally from both SMC and SMAI, as the other alternative would be to take numerous individual depositions.  This is particularly difficult for SMC's witnesses as many of them are located in Japan (although, as reflected in the emails, many SMC employees also regularly travel to the United States for business, and various SMC employees are routinely positioned at SMAI for short tenures).

*Third*, the documents are highly relevant.  Virtually all of SMC's production is in Japanese.  These emails reflect English language communications from SMC's employees about complex business matters in English, and are highly relevant to issues involving the relationship between the parties and their comparative fault, the information that was exchanged between them on specific issues, the investigation they performed concerning the defect, the language they agreed upon to use for the recall, and SMC's control over SMAI (among other issues).  A

---

[10] Specifically, they relate to the following topics: SMAI 30(b)(6) Notice Topic Nos. 5, 8, 12, 16, 17, 18, 19, 20, 23, and 24; SMC 30(b)(6) Notice Topic Nos. 13, 14, 15, 16, 17, and 21.

number of emails provide the correspondence about the hundreds of additional reports that Suzuki received after Plaintiff's wreck.  These are not tangential issues, but the central issues in this products liability case and at the heart of Suzuki's defenses.

Finally, allowing this testimony is proportional.  This case is a multi-million dollar litigation involving a permanently paralyzed individual and questions of the defendant's knowing decision to conceal information about the defect from Plaintiff and other members of the public.  Requiring the Suzuki defendants to produce a witness about highly relevant emails they withheld is both fair and reasonable.

## V.   PLAINTIFF SHOULD BE PERMITTED TO CONTINUE THE DEPOSITION OF SMAI AND SMC'S CORPORATE REPRESENTATIVES CONCERNING THE NEWLY PRODUCED POLICY AND PROCEDURE MANUALS

Both SMAI and SMC withheld policy and procedure documents until after their corporate representative depositions had concluded.  Specifically, SMAI withheld (1) its technical service manager manuals and warranty manuals governing the processes for collecting and reporting information such as customer complaints internally at SMAI and previously ASMC, (2) its one-page policy it used to determine what information was supposed to be reported to SMC and when it was supposed to be reported, and (3) a spreadsheet proposing to completely overhaul the process for transmitting information from SMAI/ASMC to SMC in Japan, including revising who could send reports, when they should be sent, and how often they should be sent.  (*See, e.g.* SMAI production on May 19, 2016 and May 23, 2016, SMAI SCHALL 36664 *et seq.*).  SMC withheld its policies and procedures concerning the process it used to investigate the defect and ultimately declare a defect.  (*See, e.g.* SMC production on May 23, 2016, SMC SCHHAL 309453 *et seq.*).  Plaintiff should be permitted to reopen the

depositions to obtain testimony about these new materials, and how they related to the investigation, decision to initiate the recall, and statements in the recall notice.

*First*, this testimony is not cumulative, nor has Plaintiff been able to obtain binding corporate representative testimony previously.  Plaintiff has never been able to question any corporate representative to obtain binding testimony about these policies, as they were never produced before the depositions.  In fact, Mr. Muthig testified for the first time during his deposition about a one-page guideline used by the parties in how the parties addressed the transmission of Siebel reports and product safety information.  That guideline was never identified or produced prior to SMAI's corporate representative deposition, even though it was requested and readily available on SMAI's server.   (Ex. J, Muthig Dep. 98:1-99:20).

*Second*, the most efficient way to obtain testimony about these various policies is through a corporate representative who is required to investigate the issues and produced a prepared and knowledgeable witness.  In fact, it is policies and procedures such as these that most require a corporate representative.  SMAI's PowerPoint about overhauling the SMAI/SMC reporting process is undated and has no author.  Were Plaintiff required to track down the author, he could literally go through dozens of depositions where people denied knowledge of the document, which is – in fact – what occurred the first time Plaintiff referenced it with one of the senior quality analysts who worked at SMAI.  A corporate representative would be forced to review the issue and provide binding testimony.[11]

*Third*, the information is highly relevant.  First, Plaintiff has brought a failure to warn claim, and information about how SMAI and SMC exchanged information about the defect is

---

[11] Plaintiff's initial effort to obtain testimony from SMAI's former quality control director for motorcycle operations – Steven Holl – was unsuccessful when Mr. Holl testified he did not know anything about the PowerPoint.  (Ex. K, Holl Dep. p. 61:16-62:5)

relevant to the speed in which they investigated the issue and ultimately disclosed the defect to the public. Second, the information known and provided to SMAI and the process SMC and SMAI agreed upon is relevant to Plaintiff's independent negligence claim concerning their quality control activities. Third, it is relevant to punitive damages. If SMAI or SMC understood it had a process failure in how information was transmitted and shared and failed to change the process – or considered changing the process and failed to do so – it could be relevant to punitive damages. Fourth, it could be relevant to the question of what SMAI and SMC knew, and their knowledge is one of the relevant issues in this products liability claim.

Again, even if this information may not ultimately be admissible, at this discovery stage, it is certainly relevant and discoverable. *See, e.g., Smith v. Old Dominion Freight Line, Inc.*, 2017 U.S. Dist. LEXIS 82606, at *20-21 (May 30, 2017) (noting that changes to policies and procedures following the incident in question was discoverable and required the reopening of the corporate representative deposition on the issue, even if the information may ultimately be inadmissible at trial).

## VI. PLAINTIFF SHOULD BE PERMITTED TO CONTINUE THE DEPOSITION OF SMAI AND SMC'S CORPORATE REPRESENTATIVES CONCERNING THE NEWLY PRODUCED TRANSLATED DOCUMENTS

SMC has now produced translated versions of documents that were referenced or should have been referenced in response to interrogatory responses. As part of a global agreement to resolve outstanding discovery issues, SMC agreed to produce 100 documents translated from Japanese into English. 54 of them have now been produced. They address a wide variety of issues, including the decision to conduct a recall and disclose the defect, the testing and nature of the defect, the investigation performed, the relationship between SMC and ASMC/SMAI, and

the customer and dealer reports provided to SMC concerning issues with the GSX-R front brakes.

Plaintiff does not seek to reopen the deposition of SMC concerning all the documents that it produced, even though there were numerous issues with the production that were resolved through the global agreement.  Plaintiff does seek, however, to question SMC's and SMAI's corporate representatives on these 54 translated documents.  Under the standards set forth by this Court for reopening depositions, such testimony is both necessary and permissible here.

*First*, this testimony is not duplicative or cumulative.  Plaintiff has never questioned any witness about these foreign language materials and the details of them contained therein.  Moreover, because of the nature of translated documents that were produced Plaintiff needs to obtain sworn representative testimony about the specific language of these documents.  They contain stamps saying, "**translation without guaranty, in the event of any translation dispute the original Japanese document will control**".  Because of this, and the importance of the contents of these documents, Plaintiff needs to obtain sworn testimony under oath to confirm an agreed understanding of these documents to avoid disputes over language at trial.

*Second*, the best way to obtain this testimony is through a corporate representative who is prepared to address the facts within these documents.

*Third*, the documents are highly relevant to Plaintiff's claims and the issues in this case.  They concern the recall and whether to announce a recall at all or delay the disclosure (they chose to delay), whether to investigate potential issues and customer reports, concerns expressed that delay of the disclosure could risk public safety, scientific analysis underlying the defect, communications between SMAI/ASMC and SMC, SMAI and SMC's knowledge of issues concerning the defect, and other similar relevant materials.

**Finally**, requiring SMC to produce a prepared witness on these 54 documents and their contents in proportional to this case, involving serious bodily injury and permanent paralysis of a young man who Plaintiff alleges was injured because Defendants knew about the defect and failed to disclose it.

<u>**CONCLUSION**</u>

In conclusion, for the reasons stated herein, Plaintiff submits that its motion to compel should be granted in full.

Dated: July 14, 2017

Respectfully submitted,

By:  /s/ Tyler S. Thompson
DOLT, THOMPSON, SHEPHERD & CONWAY, PSC
13800 Lake Point Circle
Louisville, Kentucky 40206
(502) 244-7772
(502) 244-7776 FAX

Christopher L. Rhoads
RHOADS & RHOADS
115 East 2nd Street
Owensboro, Kentucky 42303
(270) 683-4600

Anthony P. Ellis
624 W. Main Street, Suite 200
Louisville, KY 40202
(502) 777-1440 (Phone)
(859) 878-2049 (Fax)

<u>Certificate of Service</u>

  I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Christopher R. Cashen
chris.cashen@dinsmore.com

Robert M. Croft
Robert.croft@dinsmore.com

Casey Wood Hensley
chensley@fbtlaw.com

Jeffrey J. Mortier
jmortier@fbtlaw.com

Randall R. Riggs
rriggs@fbtlaw.com