UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:14CV-00074-JHM

DEREK SCHALL                                                                                          PLAINTIFF

vs.

SUZUKI MOTOR OF AMERICA, INC.;
SUZUKI MOTOR CORPORATION; and
NISSIN KOGYO CO., LTD.,                                                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion for protective order filed by Defendant Suzuki Motor Corporation ("SMC") (DN 132). Relying on the general rule, SMC argues that the Court should issue a protective order requiring Plaintiff to conduct the Fed. R. Civ. P. 30(b)(6) deposition of its designated witness, Yoshinobu Matsumoto, in Japan because that is where SMC's principal place of business is located (DN 132). Schall objects to the motion because special circumstances exist that justify the Court issuing an order directing SMC to produce its Rule 30(b)(6) witness in Orange County, California, where SMC established the headquarters for its wholly-owned subsidiary Defendant Suzuki Motor of America, Inc. ("SMAI") (DN 133). By agreement of the parties, no reply will be filed (DN 130). The motion stands submitted to the undersigned for ruling. For the reasons that follow, SMC's motion for protective order is denied.

### Background

Schall filed his complaint on July 17, 2014 (DN 1) and his amended complaint on July 18, 2014 (DN 5). Schall asserts that he owned and operated a 2006 Suzuki

motorcycle, model GSX-R600, equipped with a front brake master cylinder determined to be defective by SMC and SMAI (DN 5 ¶ 6, 38, 39). Specifically, he contends that the brake piston was insufficiently surface treated and this led to corrosion which, in turn, generated hydrogen gas which impaired the function of the brake system (Id. ¶ 27-29, 38). Schall claims that, due to this defect in the motorcycle's front master brake cylinder, he was unable to stop and was involved in a single-vehicle collision in which he sustained serious physical injuries (Id. ¶ 7, 39). Schall brought this action alleging strict products liability and negligence against SMC, the manufacturer of the motorcycle; SMAI, the importer of the motorcycle; and Nissin Kogyo Co., Ltd., the manufacturer of the front brake master cylinder (Id. ¶ 41-52).

As a result of procedural and jurisdictional motion practice, the undersigned did not issue a scheduling order until May 29, 2015 (DN 52). Schall served initial written discovery on June 1, 2016 (DN 121 PageID # 1529). He issued initial Rule 30(b)(6) deposition notices to SMAI and SMC on July 1, 2015 (Id.). The actual scheduling of those depositions was delayed by litigation over the location of SMC's corporate representative deposition and scheduling issues concerning the availability of SMAI's representatives (Id.). In August 2015, SMAI and SMC produced documents in response to Schall's initial written discovery (Id.). SMAI made additional document productions in September, November, and December 2015 (Id.). During this time frame, SMC apparently produced over 131,000 Japanese language documents, including emails (Id.).

Schall took the depositions of SMAI's corporate representatives, Mark Eastman and Steve Muthig, on February 10 and 11, 2016, respectively. Schall took the deposition of SMC's corporate representative, Mr. Matsumoto, in California on March

9, 2016. At the time, Mr. Matsumoto was employed as the Director of Thai Suzuki Motor Co. Ltd. in Thailand (DN 123 PageID # 1620). SMC flew Mr. Matsumoto to California at its expense for the Rule 30(b)(6) deposition (Id.).

There appears to be no dispute that Schall received six categories of documents from SMAI and SMC in the months following the corporate representative depositions. Specifically: (1) SMAI produced the post July 2013 "Siebel" reports[1]; (2) SMAI produced unredacted versions of the 97 "Siebel" reports that were generated through July 2013 and previously produced in redacted form; (3) SMAI produced the AIQ questionnaires[2]; (4) SMAI and SMC produced quality control guidelines and policies and procedures addressing the investigation of accidents and disclosure of a defect to SMC; (5) SMAI produced 1,169 emails containing information about other similar incidents; and (6) SMC produced 54 documents selected by Schall for translation from Japanese to English language, as a resolution of an outstanding discovery dispute involving the thousands of Japanese language documents produced by SMC (DN 121 PageID # 1527-34; DN 123 PageID # 1620).

In July of this year, Schall filed a motion, pursuant to Fed. R. Civ. P. 1, 26, and 30(b)(6), to reopen the depositions of corporate representatives for SMAI and SMC due to the newly produced documents (DN 121). SMAI and SMC objected to the motion (DN 123), and Schall filed a reply (DN 125).

---

[1] The "Siebel" reports reflect instances when customers and dealers reported issues with the Suzuki GSX-R motorcycle front brakes to Americans Suzuki motor Corporation ("ASMC") and, subsequently, SMAI (DN 121 PageID # 1530).

[2] Sworn and notarized questionnaires called "AIQs" were completed and returned by customers who had crashes related to the failure of the front brakes on their Suzuki GSX-R motorcycles (Id.).

3

In a memorandum opinion and order filed on September 13, 2017, the undersigned observed that Schall took the deposition of SMC's corporate representative, Mr. Matsumoto, on March 9, 2016 (DN 127 PageID # 1715). Further, the undersigned recognized that in the months following that Rule 30(b)(6) deposition, SMC produced to Schall the following categories of documents: quality control guidelines and policies and procedures addressing the investigation of the accidents and disclosure of the defect to SMC; and 54 documents selected by Schall for translation from Japanese to English language, as a resolution of an outstanding discovery dispute involving the thousands of Japanese language documents produced by SMC (Id. PageID # 1715-16). In pertinent part the undersigned's ruling reads as follows:

> The Court concludes that Schall should be permitted to reopen the Rule 30(b)(6) deposition with regard to both categories of documents.[3] Clearly, testimony by SMC's corporate representative about each category of documents is relevant, within the meaning of Rule 26(b)(6), to Schall's strict liability and negligence claims.
>
> Obtaining testimony from SMC's corporate representative about the first category of documents is proportional to the needs of the case because the burden and expense incurred by SMC is outweighed by its importance to Schall's negligence claim regarding SMC's evaluation of complaints about the defect and the information it received from SMAI. With regard to Rule 26(b)(2)(C)(i), the information Schall seeks about SMC's policies is not unreasonably cumulative or duplicative, nor can it be obtained from some other source that is more convenient, less burdensome, or less expensive. In reaching this conclusion, the Court notes that SMC does not dispute that its corporate representative indicated he was unaware of policies and procedures governing the investigation of the defect and disclosure of the

---

[3] In reaching this conclusion, the undersigned declined SMC's invitation to apply the distorting effects of hindsight to Schall's decision to limit the Rule 30(b)(6) deposition to one day (DN 127 PageID # 1716 n. 7). The undersigned observed that Schall did not at that time have the benefit of the knowledge that he now has because SMC produce the material at issue after he made his decision and conducted the deposition (Id.).

4

defect. Further, while interrogatories may provide an adequate basis to develop a working understanding about SMC's policies and procedures, deposing a Rule 30(b)(6) witness will provide Schall with the ability to tailor probing questions in response to the witness' answers to previous questions. Rule 26(b)(2)(C)(ii) does not provide SMC relief here because Schall's ability to conduct a probing examination was hamstrung by the material not having been produced and Mr. Matsumoto being unprepared for examination regarding the corporation's policies and procedures. Clearly, Schall is entitled to testimony from a Rule 30(b)(6) witness who is educated about this material and speaks on behalf of SMC.

Obtaining testimony from SMC's corporate representative about the 54 documents selected by Schall for translation from Japanese to English language is proportional to the needs of the case because the burden and expense incurred by SMC is outweighed by its importance to Schall's strict liability and negligence claims. With regard to Rule 26(b)(2)(C)(i), the information Schall seeks about these translated documents is not unreasonably cumulative or duplicative, nor can it be obtained from some other source that is more convenient, less burdensome, or less expensive. Rule 26(b)(2)(C)(ii) does not provide SMC relief here because Schall's ability to conduct a probing examination was hamstrung by the material's not having been translated prior to Mr. Matsumoto's deposition. Further, the Court declines SMAI's invitation to apply the distorting effects of hindsight to Schall's decision to proceed with the Rule 30(b)(6) deposition rather than wait for resolution of the discovery dispute over translations of the documents. Clearly, Schall is entitled to testimony from a Rule 30(b)(6) witness who is educated about this material and speaks on behalf of SMC.

(Id. PageID # 1716-17).

In sum, the undersigned granted Schall's motion for leave to reopen the deposition of SMC's corporate representative because of conduct by SMC with regard to witness preparation and document production. Further, the undersigned sought to address this conduct by ordering SMC to produce a prepared and knowledgeable corporate representative to testify about the documents identified above (Id. PageID #

1718).  Moreover, in an effort to address the delays precipitated by SMC and SMAI's conduct, the undersigned extended the fact discovery deadline to December 18, 2017 for the limited purpose of completing this and other specified depositions by "**no later than December 15, 2017**" (Id.) (emphasis in original).

SMC has again designated Mr. Matsumoto as its corporate representative in the Rule 30(b)(6) deposition (DN 132 PageID # 1735-36).  Instead of agreeing to once more produce him in California, on a date that complies with the Court's December 15, 2017 deadline, SMC has filed a motion for a protective order that would require Schall to conduct the Rule 30(b)(6) deposition in Japan.  There is no dispute that if SMC's motion is granted, Schall will have to comply with all of the strict procedural requirements in the United States-Japan Consular Convention and Protocol Treaty ("the Treaty") to conduct the deposition in Japan, and the soonest it might be conducted would be the spring or summer of 2018, months after the December 15, 2017 deadline specified in the Court's order.

Arguments

1. SMC's Motion

SMC, a Japanese corporation with a principal place of business in Japan, has moved for entry of a protective order under Fed. R. Civ. P. 26(c)(1) because it contends there is a presumption that this Rule 30(b)(6) deposition must be conducted in Japan (DN 132 PageID # 1730-32).  SMC asserts that Schall must rebut this presumption by demonstrating that "special circumstances" exist to conduct the deposition in the United States (Id.).  SMC contends that the Court should consider

cost, convenience, and litigation efficiency in determining whether Schall has demonstrated that "special circumstances" exist (Id. PageID # 1732).

2. Schall's Response

Schall asserts that following the Court's order, he repeatedly communicated with SMC about scheduling the Rule 30(b)(6) deposition (DN 133 PageID # 1785-89). Schall indicates that SMC waited until October 2, 2017 to announce that it would only produce Mr. Matsumoto in Japan (DN 133 PageID # 1785-89). Schall suggests that this delay is questionable due to SMC's previous discovery conduct and its knowledge of the lengthy and costly scheduling process for taking depositions in Japan (Id.). Referring to the United States-Japan Consular Convention and Protocol Treaty, Schall contends that the strict and burdensome regulations governing depositions in Japan are one of the main reasons that multiple courts have rejected Japanese defendants' arguments on this issue, instead finding that the deposition should be conducted in the United States (Id. PageID # 1786-1806). Schall submits that he has shown "good cause" to require SMC to produce Mr. Matsumoto, or any other representative it may designate, in California for the Rule 30(b)(6) deposition (Id.).

Applicable Standard

District courts within the Sixth Circuit have developed a general tenet that Rule 30(b)(6) depositions should be taken at the corporation's principal place of business. *See* Davis v. Hartford Life & Accident Ins. Co., No. 3:14-CV-00507-TBR, 2016 WL 3843478, at *3 (W.D. Ky. July 13, 2016); Pogue v. Northwestern Mut. Life Ins. Co., No. 3:14-CV-598-CRS-CHL, 2016 WL 2343898, at *3 (W.D. Ky. May 2, 2016). The general tenet recognizes that the plaintiff voluntarily chose the forum, in contrast to the corporate defendant who is an involuntary participant in the litigation. Davis, 2016

WL 3843478, at *3. For this reason, the general tenet creates a presumption that there is "good cause" for a protective order, under Fed. R. Civ. P. 26(c)(1)(B), when a Rule 30(b)(6) deposition is noticed for a location other than the defendant's principal place of business. *See* Davis, 2016 WL 3843478, at *3; Pogue, 2016 WL 2343898, at *3; Steppe v. Cleverdon, No. 06-144-JHM, 2007 WL 6831006, at *2 (E.D. Ky. July 25, 2007). However, district courts within the Sixth Circuit recognize that this presumption of "good cause" can be rebutted by demonstrating "special circumstances." *See* Davis, 2016 WL 3843478, at *3-4; Pogue, 2016 WL 2343898, at *3-4; Cassidy v. Teaching Co., LLC, No. 2:13-CV-884, 2014 WL 4377843, at *2-3 (S.D. Ohio Sept. 4, 2014).

In determining whether "special circumstances" exist district courts within the Sixth Circuit have considered the factors of cost, convenience, and litigation efficiency. *See* Davis, 2016 WL 3843478, at *3-4; Pogue, 2016 WL 2343898, at *3-4; Cassidy, 2014 WL 4377843, at *2-3. District courts from other circuits have also considered factors such as the court's ability to intervene if there is a discovery dispute during the deposition[4], the procedural process for taking and scheduling the deposition[5], the delays that may be imposed on the case as a result of conducting a foreign deposition[6], and whether it would be unfair to the deposing party to limit its

---

[4] Delphi Auto. Sys., LLC v. Shinwa Int'l Holdings Ltd., No. 1:07-CV-0811-SDB-JMS, 2008 U.S. Dist. LEXIS 55929, at *6-7 (S.D. Ind. July 23, 2008); New Medium Techs. LLC v. Barco N.V., 242 F.R.D. 460, 467 (N.D. Ill. Apr. 30, 2007); Custom Form Mfg., Inc. v. Omron Corp., 196 F.R.D. 333, 336-37 (N.D. Ind. 2000).

[5] In re Vitamins Antitrust Litig., No. 99-179 (TSH), MDL No. 1285, 2001 U.S. Dist. LEXIS 24025, at *34-35 (D.D.C. Nov. 30, 2001); Dean Foods Co. v. Eastman Chem. Co., No. C 00-4379 WHO, C00-4402 WHO (JL), 2001 U.S. Dist. LEXIS 25447, at *23-24 (N.D. Cal. Aug. 13, 2001).

[6] Advanced Tech. Incubator, Inc. v. Sharp Corp., No. 2:07-CV-468, 2008 U.S. Dist. LEXIS 84272, at *9-12 (E.D. Tx. Oct. 21, 2008).

discovery to depositions abroad while the defendant-deponent freely conducts discovery in the United States[7]. Notably, the Sixth Circuit has indicated that district courts are vested with great discretion in designating the location of a deposition. Lomax v. Sears, Roebuck & Co., No. 99-6589, 2000 WL 1888715, at *3 (6th Cir. 2000).

## Discussion

Here, Schall wants to take the Rule 30(b)(6) deposition of Mr. Matsumoto in Orange County, California. However, SMC is a Japanese corporation having its principal place of business in Hamamatsu-shi, Shizuoka-prefecture, Japan. Thus, there is a presumption of "good cause" for a protective order specifying that Schall take the deposition of Mr. Matsumoto in Japan. The Court will now determine whether Schall has rebutted this presumption by demonstrating "special circumstances" exist to conduct the deposition in the United States.

1. Costs

With regard to cost, SMC asserts that mere disparity in available funds is not sufficient to rebut the presumption (DN 132 PageID # 1732-34). Further, SMC points out the Pogue court explained that "[i]f a difference in available funds for travel were sufficient to overcome the presumption, then the rule requiring depositions to take place at the corporation's principal place of business would never have arisen." 2016 WL 2343898, at *3.

Schall seeks to distinguish the circumstances here from those in Pogue by emphasizing that the travel costs associated with taking the deposition in Japan are extreme, and will have to be borne by over six or seven attorneys as opposed to a

---
[7] In re Honda Am. Motor Co., 168 F.R.D. 535, 539 (D. Md. 1996).

single witness (DN 133 PageID # 1797-98). Further, Schall points out that in addition to the travel expenses, he will also be required to pay a $1,283 reservation fee (nonrefundable); a $309 per hour fee to have an embassy officer present during the deposition; a $415 fee for providing a seal and certifying the deposition; the as yet unknown cost of having reporters and videographers who speak English present at the deposition; and, because there is no access to the internet and a photocopier at the Embassy, the cost of having to find and reserve a facility nearby where those services can be obtained. Schall contends that he should not have to incur these thousands of dollars in additional expenses to obtain testimony from SMC's representative in Japan when the Court concluded that the deposition should be reopened due to SMC's conduct.

The circumstances here are distinguishable from those in cases such as Pogue, 2016 WL 2343898, at *4, and Davis, 2016 WL 3843478, at *4, where the issue was merely the difference in available funds for travel. Here, the undersigned granted Schall's motion for leave to reopen the deposition of SMC's corporate representative because of conduct by SMC with regard to witness preparation and document production (DN 127). Instead of agreeing to again produce Mr. Matsumoto in California, SMC now seeks to have the deposition completed in Japan which will impose a significant financial burden on Schall if he wants to obtain the discovery that the undersigned has already indicated he is entitled to obtain. Thus, with regard to the factor costs, the unique situation before the court constitutes "special circumstances" sufficient to rebut the presumption that SMC has "good cause" for its protective order.

2. Convenience

SMC claims that it has designated Mr. Matsumoto as its corporate representative because there are no employees in the United States who could adequately represent SMC in the Rule 30(b)(6) deposition (DN 132 PageID # 1735-36). SMC asserts that Mr. Matsumoto now works in Japan as the Manager and Group Leader of the Chassis Design Group in the Motorcycle Body Design Department (DN 132 PageID # 1734, DN 132-1 PageID # 1746-48). SMC contends that taking Mr. Matsumoto's deposition in the United States will impose a significant disruption and hardship to both Mr. Matsumoto and SMC because he is responsible for supervising numerous engineers and other support staff, answering questions, and providing direction for its engineering team to complete work critical to Suzuki's on-going business of designing and producing motorcycles around the world (Id.). Additionally, SMC claims that Mr. Matsumoto will lose at least two business weeks of time as a result of his traveling to the United States, adapting to the time zone change, preparing for the deposition, attending the deposition, traveling back to Japan, and adapting to the time change (Id.).

Schall suggests that any inconvenience was caused by SMC's own misconduct (DN 133 PageID # 1800-03). Further, Schall suggests that there are steps such as delegation of duties and use of electronic communications that Mr. Matsumoto and SMC can take to address some of the purported hardships caused by what should be a brief absence of a few days, as opposed to the claimed two business weeks, if SMC produced Mr. Matsumoto in California (Id.). Schall points out that Mr. Matsumoto appeared to have no trouble adjusting to the time zone changes when he flew from Thailand to California, a substantially longer trip, for the original deposition (Id.).

11

Finally, Schall asserts that the circumstances here are distinguishable from the cases cited by SMC for support on the question of whether the deposition should be conducted in Japan (Id.).

The undersigned notes that the convenience analysis includes consideration of whether there is any hardship to counsel, where the deponent lives, and to what extent the deponent's affairs may be disrupted by having to travel to the site of the deposition. *See* MEMC Electronic Materials v. Balakrishnan, No. 2:12-CV-344, 2012 WL 1606053, at*3 (S. D. Ohio May 8, 2012) (citations omitted). With regard to the issue of any hardship to counsel, the undersigned notes that Schall's counsel will need to comply with the procedural requirements under the Treaty in order to conduct the deposition in Japan. By contrast, SMC's counsel will not face a similar burden if the deposition is conducted in California.

The burden of the procedures required to conduct a deposition in Japan are daunting. *See* Dean Foods Co. v. Eastman Chem. Co., No. C 00-4379 WHO, C00-4402 WHO (JL), 2001 U.S. Dist. LEXIS 25447, at *23 (N.D. Cal. Aug. 13, 2001). The district court in Dean summarized the procedures as follows:

> 1) Contact the consulate in Osaka to find out what dates are available. There are only two meeting rooms in the consulate and the largest holds only fifteen people;
>
> 2) Make an initial reservation for the preferred dates;
>
> 3) Submit a certified check for the $400 reservation fee;
>
> 4) Petition the court for a commission to take the deposition on the specified date;
>
> 5) Transmit a certified copy of the commission to the consulate naming all the persons to be deposed, and of all who will participate;

6) Pre-pay in full the required consular fee of $200 per day;

7) Each attorney who will attend the deposition must obtain a special visa issued by the Japanese government to conduct depositions in Japan, which can be issued only after the consulate confirms that it is ready to proceed with the deposition;

8) Arrange for stenographers, videographers and interpreters; Japanese court reporters are extremely rare and therefore heavily booked. American court reporters are prohibited from working in Japan without a permit;

9) Be prepared to sign the transcript in the presence of the consular officer.

   Consular facilities and staff are available only on weekdays, and not on holidays, during the lunch hour or after closing: basically for a seven-hour day.

Id. at *23-24. Additionally, Schall has pointed out that the fees have only increased since the Dean ruling in 2001, and now include a $1,283 reservation fee (nonrefundable), $309 per hour fee for embassy officers who may take or attend the deposition, and $415 fee for providing a seal and certifying the deposition (DN 133 PageID # 1794). Moreover, Schall has identified the following factors related to the procedural process of taking a deposition in Japan:

1) Plaintiff's counsel cannot connect to the internet during the deposition;

2) Plaintiff's laptop and other electronic equipment needs to be pre-registered, and cannot connect to the internet during the deposition – if the laptop or Ipad breaks or is damaged shortly before the deposition the process has to start all over again;

3) Depositions are limited to six total hours per day, and this includes the time for setting up, asking questions, breaking everything down and leaving for a mandatory evacuation at lunch, then coming back after lunch and doing it all over again;

4) Plaintiff has no ability to change or alter counsel to the extent an issue arose – if Mr. Thompson, Mr. Rhoads or Mr. Ellis became ill or otherwise indisposed, it would be impossible for the other counsel to substitute in under Japanese law and obtain the necessary visa, and the process would need to be started all over again;

5) There are no photocopiers for use at the Embassy, meaning if there was any issue concerning a copy, it would further delay the deposition.

(Id.).

Clearly, compliance with these procedural requirements will constitute a considerable hardship to Schall's counsel. Other district courts have considered these burdensome procedural requirements in their analysis. *see* In re Vitamins Antitrust Litig., No. 99-179 (TSH), MDL No. 1285, 2001 U.S. Dist. LEXIS 24025, at *34-35 (D.D.C. Nov. 30, 2001) (recognized that the detailed requirements present a sizeable procedural impediment); Dean Foods Co., 2001 U.S. Dist. LEXIS 25447, at *23-24 (referring to the burden as "daunting"); In re Honda Am. Motor Co., 168 F.R.D. 535, 540 (D. Md. 1996) (noted that the additional procedural steps could unduly prolong the litigation). And at least two courts have relied on the burdensome procedural requirements when they concluded that the Rule 30(b)(6) depositions should be conducted in the United States, not Japan. *See* In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 24025, at *35; Dean Foods Co., 2001 U.S. Dist. LEXIS 25447, at *24. Further, imposing such a hardship on Schall's counsel is particularly troubling because the undersigned reopened the deposition of SMC's corporate representative due to conduct by SMC with regard to witness preparation and document production.

The undersigned acknowledges that there will be some disruption to the affairs of Mr. Matsumoto and SMC if he is required to travel from Japan to California for the deposition. However, there are reasonable steps such as delegation of duties and the

14

use of telephones, emails, and video communications to adequately address many of the tasks identified. Further, SMC's claim that Mr. Matsumoto will miss two business weeks of time is not fully credible. Mr. Matsumoto is an experienced international traveler who has undoubtedly developed the ability to quickly adjust to such time zone changes, as he did when he made a substantially longer trip, from Thailand to California, to attend the earlier deposition.

Additionally, Mr. Matsumoto's affidavit merely indicates that SMC has determined there are no employees in the United States who could adequately represent it at a Rule 30(b)(6) deposition (DN 132-1 ¶ 7). His affidavit is noticeably silent on the question of whether there is another SMC employee working outside the United States who could travel to California and adequately represent SMC at a Rule 30(b)(6) deposition. Obviously, the hardships identified in Mr. Matsumoto's affidavit could be avoided if SMC designated a different employee to travel to California and represent it at the Rule 30(b)(6) deposition. Thus, with regard to the factor convenience, the unique situation before the court constitutes "special circumstances" sufficient to rebut the presumption that SMC has "good cause" for its protective order.

3. Litigation Efficiency

SMC acknowledges that the Treaty imposes additional strict procedures for taking depositions in Japan (DN 132 PageID #1736-43). However, SMC asserts that, while the procedures are strict, they are not unduly burdensome, and these procedures must be respected by the Court (Id.). Further, SMC indicates that Schall should have foreseen the need to comply with these procedures when he filed suit against a Japanese corporation (Id.). Moreover, SMC contends that other courts have concluded a 12-hour time difference is not dispositive on the issue of litigation efficiency (Id. PageID # 1742-43).

15

Schall argues that multiple courts have recognized that conducting a deposition in Japan will substantially impair the court's jurisdiction and ability to intervene if a discovery dispute arises during the deposition (Id. PageID # 1795-96). Schall points out that the parties in this case have had to contact the Court and seek judicial intervention over 10 times since discovery began in 2015 (Id.). Further, Schall suggests that if a discovery issue arose during the deposition, there is at least the potential that the parties would have to make another trip to Japan to complete the deposition (Id.). Additionally, Schall points out that district courts are likely to infringe on a foreign sovereign if they attempt to regulate a deposition occurring on foreign soil (Id.).

The undersigned finds that the strict procedural requirements under the Treaty are antithetical to promoting litigation efficiency. They will require Schall to expend a great deal of additional time and money to arrange the deposition. Further, the strict procedural requirements will delay completion of the deposition to at least the spring or summer of 2018, maybe longer. See In re Honda Am. Motor Co., 168 F.R.D. at 540 (noted that the additional procedural steps could unduly prolong the litigation). Moreover, taking this Rule 30(b)(6) deposition in Japan will have an impact on the Court's ability to intervene, should it become necessary, to address a discovery dispute. For example, this Court's authority to intervene may be compromised by sovereignty issues. See Delphi Auto. Sys., LLC v. Shinwa Int'l Holdings Ltd., No. 1:07-CV-0811-SDB-JMS, 2008 U.S. Dist. LEXIS 55929, at *6-7 (S.D. Ind. July 23, 2008) (observing that foreign judicial sovereignty may be infringed if a federal court compels discovery on foreign soil); In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 24025, at *36-37 (noting that taking Federal Rules deposition testimony abroad does pose a potential affront to a foreign nation's sovereignty); Custom Form Mfg., Inc. v. Omron Corp., 196 F.R.D. 333, 336-37 (N.D. Ind. 2000) (observing that the federal district court's authority to address discovery

disputes during the depositions would be compromised by sovereignty issues if the depositions took place in Japan). Additionally, due to the time difference between Japan and Kentucky, this Court will be closed while the deposition is being conducted. *See* New Medium Techs. LLC v. Barco N.V., 242 F.R.D. 460, 467 (N.D. Ill. Apr. 30, 2007) (noting the 14 hour time difference between Japan and Chicago where the court was located). Further, it would be patently unfair to require Schall to comply with these strict, time consuming, and expensive requirements in order to complete the deposition of SMC's Rule 30(b)(6) witness in Japan, when the undersigned ordered the deposition reopened because of conduct by SMC with regard to witness preparation and document production.[8] Thus, the undersigned concludes that conducting the deposition in Japan would not further litigation efficiency in this case.

In sum, after considering the factors of cost, convenience, and litigation efficiency, the undersigned concludes that there are "special circumstances" sufficient to rebut the presumption that SMC has "good cause" for its protective order.

ORDER

**IT IS HEREBY ORDERED** that SMC's motion for a protective order (DN 132) is **DENIED**.

Copies: Counsel

---

[8] For this reason, the circumstances here are distinguishable from those in the cases cited by SMC where the courts ordered the depositions be conducted in Japan. *See* Motion Games, LLC v. Nintendo Co., Ltd., 2014 WL 5306961 (E.D.Tex. 2014); Six West Retail Acquisition v. Sony Theatre Management Corp., 203 F.R.D. 98, 108 (S.D. N.Y. 2001); Chris-Craft Indus. Products, Inc. v. Kuraray Co., Ltd., 184 F.R.D. 605, 608–09 (N.D. Ill. 1999); Narco Avionics, Inc. v. Sportsmen's Market, Inc., 1992 WL 37106, at *5 (E.D.Pa. 1992).