UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:14-CV-00074-JHM

DEREK SCHALL                                                                                    PLAINTIFF

V.

SUZUKI MOTOR OF AMERICA, INC;                                               DEFENDANTS
SUZUKI MOTOR CORPORATION;
NISSIN KOGYO CO., LTD.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions by Defendants Suzuki Motor Corporation (SMC) and Nissin for an order determining that Japanese law governs Plaintiff Derek Schall's claims. [DN 188; DN 198]. Fully briefed, the matter is ripe for decision. For the following reasons, Defendants' motions are **DENIED**. Kentucky substantive law shall apply.

### I.    BACKGROUND

Schall has lived in Kentucky for a few years. [DN 198-2 Pl. Dep. 6:25–7:22]. He purchased a used 2007 Suzuki GSX-R600 motorcycle. [*Id.* at 53:20–25]. Schall was in an accident while riding the motorcycle. [DN 5 ¶ 39]. He asserts that when he approached a curve and applied the brakes, he was unable to slow the motorcycle and ran off the road. [*Id.*]. Schall sued Defendants SMC, Nissin, and Suzuki Motor of America, Inc. (SMA) alleging that the front brake master cylinder (FBMC) and brake system in his motorcycle were defective. [*Id.* at ¶ 38]. Schall brings negligence and strict liability claims against Defendants. [*Id.* at ¶¶ 41–52].

SMC is a Japanese corporation. [DN 188 at 2]. SMC designs, assembles, and manufactures motor vehicles. [*Id.*]. SMC sells its products to distributors such as SMA, the exclusive distributor for Suzuki motorcycles in the U.S. [DN 188 at 3]. SMA is SMC's wholly-owned subsidiary but is a separate and independent legal entity. [*Id.* at 4]. SMC previously sold its products to American

Suzuki Motor Corporation (ASMC), which is now defunct and dissolved. [*Id.* at 3]. When ASMC existed, it was a wholly-owned subsidiary of SMC that was separate and independent. [*Id.* at 4]. SMC designed and manufactured the Suzuki GSX-R600 in Japan and sold the motorcycle to ASMC in Japan. [*Id.*]. Nissin is a Japanese corporation that manufactures brake master cylinders and other brake components. [DN 198-2 at 1]. Nissin designed the brake components in Japan, manufactured the components in Japan and China, sold the brake component parts to SMC in Japan, and delivered the components in Japan. [DN 198 at 3]. Nissin did not install the component parts on the motorcycle—SMC did. [*Id.*].

SMC and Nissin now ask the Court to determine whether Kentucky or Japanese law is applicable to this case. [DN 188; DN 198].

## II. DISCUSSION

SMC and Nissin make several arguments in their motions: (1) they argue that there is a material conflict between Japanese and Kentucky law; (2) they argue that under Kentucky's torts choice-of-law rule, the Court must apply Japanese law to Schall's products liability claims; and (3) they argue that the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution bars application of Kentucky law. [DN 188 at 6–15; DN 198 at 5–15].

### A. Conflict of Laws Between Kentucky and Japanese Products Liability Law

The Court must first determine if Kentucky law conflicts in any material way with Japanese law because there can be no injury in applying Kentucky law if it does not conflict with Japanese law. *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 816 (1985). "[A]bsent any material differences in the law, the Court would confront a 'false conflict' in which there is *no conflict* between the law of the two states. In such an instance the Court should simply apply the law of the forum state." *Allstate Imaging, Inc. v. First Indep. Bank*, No. 08-cv-11363, 2010 WL 1524058, at *3 (E.D. Mich. Apr. 15, 2010) (citations omitted).

2

The parties seem to agree that there are material differences between Kentucky and Japanese products liability law. [DN 188 at 6–7; DN 198 at 6–7; DN 223 at 10]. Defendants identify five conflicts: (1) Japanese law prohibits jury trials in products liability civil actions, whereas Kentucky law permits a jury trial; (2) Japan requires a plaintiff in a products liability lawsuit to prove beyond a reasonable doubt that a manufacturer defectively designed or manufactured its product and that the defect caused the plaintiff's injuries, whereas Kentucky requires proof by a preponderance of the evidence; (3) Japan recognizes an exemption for component-parts manufacturers in products liability lawsuits, whereas Kentucky does not; (4) if a plaintiff succeeds in obtaining a judgment against a Japanese entity located in Japan, Japan requires that the plaintiff obtain an "execution judgment" from a Japanese court to enforce that judgment on the entity; and (5) Kentucky recognizes punitive damages, but Japan does not. [DN 188 at 1, 6–7; DN 198 at 1, 6–7; DN 223 at 10]. The Court finds that there is a conflict in Kentucky and Japanese products liability law on the identified issues.

**B. Kentucky's Torts Choice-of-Law Rule**

The Court must engage in a choice-of-law analysis to decide whether Kentucky or Japanese substantive law applies.[1] "Federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Muncie Power Prods. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)). "First, as a starting presumption, there is 'no doubt Kentucky prefers the application of its own laws over those of another forum.'" *Custom Prods., Inc. v. Fluor Daniel Can., Inc.*, 262 F. Supp. 2d 767, 771 (W.D. Ky. 2003) (citation omitted). "Second, although this principle should generally dictate the outcome, there are occasions when a careful examination of the facts reveals that the case's actual connection to Kentucky is simply too remote to justify applying Kentucky law." *Id.*

---

[1] Because the Court ultimately decides Kentucky substantive law applies, it is not necessary to decide whether these laws are substantive or procedural.

Under the Kentucky torts choice-of-law rule, "any significant contact with Kentucky is sufficient to allow Kentucky law to be applied." *Id.* at 772 (citation omitted). In other words, "if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied." *McGinnis v. Taitano*, 3 F. Supp. 2d 767, 769 (W.D. Ky. 1998) (citation omitted). "Kentucky courts have 'held the fact that [an] accident occurred in Kentucky, was, standing alone, enough contact to justify the application of the law of Kentucky.'" *Boggess v. Price*, No. 04-5761, 2005 WL 1385943, at *4 (6th Cir. June 10, 2005) (citation omitted).

There are significant contacts here: Schall is a Kentucky resident, he was injured in Kentucky, and he purchased the motorcycle in Kentucky. [DN 198-2 Pl. Dep. 6:25–7:22, 53:20–25; DN 5 at 8]. In determining whether these contacts were enough to justify applying Kentucky law, "the Court considers whether these facts prove Kentucky has an interest in this case." *Custom Prods.*, 262 F. Supp. 2d at 773. "Importantly, Kentucky's tort and products liability laws are intended to protect Kentucky residents and provide compensation when they are *the injured party*." *Id.* (citations omitted). Kentucky has an interest in applying its products liability law to protect Schall who is a Kentucky resident.

SMC and Nissin point to additional facts that they believe weigh in favor of applying Japanese law such as the alleged conduct of SMC and Nissin that led to Schall's claim occurred in Japan, SMC and Nissin reside in Japan, the relationship between SMC and Nissin and the other parties are centered in Japan, and SMC and Nissin have pervasive contacts with Japan but no connections with Kentucky. [DN 188 at 12–15; DN 198 at 11–15]. But "Kentucky courts do not apply a balancing test." *Custom Prods.*, 262 F. Supp. 2d at 773 n.9; *see Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. 1968) (holding "[u]pon further study and reflection the court has decided that the conflicts question should not be determined on the basis of a weighing of interests, but simply on the basis of whether Kentucky has

enough contacts to justify applying Kentucky law"). The contacts that exist here are significant enough to justify applying Kentucky law.

### C. Kentucky's Torts Choice-of-law Rule and the Due Process Clause of the U.S. Constitution

Even though the Court finds that Kentucky substantive law applies, the issue now becomes whether the application of Kentucky law violates the Due Process Clause. Schall argues that the Supreme Court's Due Process Clause rule in the conflict of laws context is the same as Kentucky's torts choice-of-law rule, and therefore application of Kentucky law is constitutional. [DN 223 16–18]. The Court disagrees—the two rules are not the same. Kentucky may have significant contacts to win the day in a choice-of-law rule analysis, but that does not necessarily mean that the application of Kentucky substantive law in this case will pass constitutional muster. Issues of fairness and foreseeability come into play.

"[T]he Due Process Clause . . . [provides] modest restrictions on the application of forum law." *Phillips Petrol.*, 472 U.S. at 818. "In deciding constitutional choice-of-law questions . . . under the Due Process Clause . . . [the Supreme] Court has traditionally examined the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation." *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 637–38 (1981) (plurality opinion). "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 312–13. "When considering fairness in this context, an important element is the expectation of the parties." *Phillips Petrol.*, 472 U.S. at 822 (citation omitted).

Kentucky has significant contacts under the Due Process Clause analysis. Schall is a Kentucky resident, he was injured in Kentucky, he purchased the motorcycle in Kentucky, and

Kentucky has an interest in protecting its resident from injury by products in Kentucky. [DN 198-2 Pl. Dep. 6:25–7:22, 53:20–25; DN 5 at 8].

The issue here is primarily whether it would it be fair to subject SMC and Nissin to Kentucky law. "The application of an otherwise acceptable rule of law may result in unfairness to the litigants if, in engaging in the activity which is the subject of the litigation, they could not reasonably have anticipated that their actions would later be judged by this rule of law." *Allstate*, 499 U.S. at 326–27 (Stevens, J. concurring).

In this instance, SMC placed brake component parts in a motorcycle that they chose to sell to distributors like SMA, who they knew would sell their Suzuki motorcycles in the United States. [DN 188 at 3]. The Court believes SMC could have reasonably expected that their actions would later be judged by the substantive laws of other jurisdictions, in this case, Kentucky. Nissin creates brake component parts not only for Suzuki, but also Honda, Toyota, Yamaha, Isuzu, Mitsubishi, General Motors, Harley-Davidson, and others. [223-11 at 1]. With clients that sell vehicles with their brake component parts across the globe including the United States, Nissin could have reasonably anticipated that their actions would be governed by Kentucky law. Thus, it is neither arbitrary nor unfair to apply Kentucky law in this case.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motions for an order determining that Japanese law governs the Schall's claims are **DENIED**. Kentucky substantive law shall apply.

Joseph H. McKinley Jr., Senior Judge
United States District Court

November 19, 2019

cc: counsel of record