UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:14-CV-00074-JHM

DEREK SCHALL                                                                                    PLAINTIFF

V.

SUZUKI MOTOR OF AMERICA, INC.,
SUZUKI MOTOR CORP., AND
NISSIN KOGYO CO., LTD.                                                                 DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

   This matter is before the Court on Defendant Nissin Kogyo Co., Ltd.'s ("Nissin") Motion to Exclude the Testimony of Plaintiff's Proposed Expert, Camilo Castillo, M.D. [DN 195]. Suzuki Motor of America, Inc. ("SMAI") and Suzuki Motor Corporation ("SMC") moved to join Nissin's Motion [DN 197] and the Court granted that Motion. [DN 287]. Fully briefed, this matter is ripe for decision. For the following reasons, Nissin's Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

   This is a product liability action arising from a motorcycle accident in which Schall was rendered a T-4 paraplegic. Schall sued Nissin, SMAI, and SMC claiming that the defendants defectively designed and manufactured brake components installed on a 2007 Suzuki GSX-R600, which caused his accident. Schall retained Dr. Castillo as an expert witness to discuss Schall's injury and his expected prognosis in an effort to support his damages claims.

   Dr. Castillo, a licensed and practicing physician, currently serves as an Assistant Professor in the Department of Neurological Surgery, Division of Physical Medicine and Rehabilitation at the University of Louisville. [DN 232-7 at 1]. He is also the Medical Director of the Spinal Cord Injury Program at the Frazier Rehabilitation Institute in Louisville, Kentucky. [*Id.*]. Dr. Castillo

intends to testify that Schall's paralysis will cause an increased risk for various medical complications and a reduced life expectancy. [DN 195-5 at 1–2]. Additionally, Dr. Castillo plans to affirm the reasonableness and necessity of Schall's life care plans prepared by Catherine Ingebrigtsen, which detail possible future care needs. [*Id.* at 2].

Nissin moves to exclude Dr. Castillo's testimony and premises the Motion on the argument that his opinion is unreliable, irrelevant, and not helpful to the jury. [DN 195 at 2]. Nissin takes particular issue with Dr. Castillo's lack of familiarity with Schall and the specific injury suffered as well as his failure to review Ingebrigtsen's second life care plan. Schall responds that the issues raised by Nissin do not render Dr. Castillo's testimony inappropriate for trial. Instead, Schall argues that Nissin should address those concerns during its cross-examination of Dr. Castillo.

## II. STANDARD OF REVIEW

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, "the Supreme Court 'established a general gatekeeping obligation for trial courts' to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (quoting *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001)) (alteration omitted). Pursuant to *Daubert*, the Court must determine whether evidence proffered under Rule 702 "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. 579, 597 (1993).

Although there is no "definitive checklist or test" for meeting the standard of Rule 702, *Daubert* laid out a number of factors that typically "bear on the inquiry," including: whether the theory or method in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Id.* at 593–94. Despite *Daubert* concerning scientific evidence, the Supreme Court in *Kumho Tire Co. v. Carmichael* held that a trial court may consider the above factors for all types of evidence. 526 U.S. 137, 150 (1999).

The Sixth Circuit has provided additional guidance on Rule 702 by outlining several "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best*, 563 F.3d at 177).

Where the testimony of a proffered expert is challenged for insufficient "factual basis, data, principles, methods, or their application," like here, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [his or her] discipline.'" *Kumho Tire,* 526 U.S. at 149 (quoting *Daubert,* 509 U.S. at 592). Generally, "a trial judge . . . ha[s] considerable leeway in deciding . . . whether particular expert testimony is reliable," *Id.* at 152; *accord Conwood*, 290 F.3d at 792; *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000), and his decision whether to admit expert testimony is reviewed for abuse of discretion. *See Kumho Tire*, 526 U.S. at 142; *Newell Rubbermaid*, 676 F.3d at 527; *Hardyman*, 243 F.3d at 258; *see also Tamraz v. Lincoln Electric Co.*, 620 F.3d 665, 672 (6th Cir. 2010) ("Rule 702, we recognize, does not require anything approaching absolute certainty. And where one person sees speculation, we

3

acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line.") (internal citations omitted).

### III. DISCUSSION

Dr. Castillo intends to testify that Schall's paralysis will cause an increased risk for various medical complications and a reduced life expectancy. Additionally, Dr. Castillo plans to affirm the reasonableness and necessity of Schall's life care plans prepared by Catherine Ingebrigtsen, which detail possible future health care needs. Nissin seeks to exclude this testimony.[1]

**A. Increased Risk for Various Medical Complications**

The primary impetus behind retaining Dr. Castillo appears to be his knowledge of spinal cord injuries and the attendant medical complications. The vast majority of the doctor's expert report concerns the various medical complications and reduced life expectancy that Schall can expect to experience based on his injury. Nissin challenges the reliability of this testimony by pointing to Dr. Castillo's lack of particularized familiarity with Schall and his injury. [DN 195 at 12]. Nissin states that Dr. Castillo never (1) met, examined, or communicated with Schall; (2) communicated with Schall's family members; (3) communicated with Schall's treating physicians, medical providers, or hired experts; or (4) reviewed a single page of Schall's medical records. [*Id.*]. Schall does not contest this argument but says that it is not grounds for deeming Dr. Castillo's testimony unreliable and excluding it, but instead should be addressed during Dr. Castillo's cross-examination. [DN 232 at 6, 10]. The Court agrees.

---

[1] Throughout Nissin's Motion, it repeatedly takes issue with Schall's failure to turn over a medical records summary prepared by Schall's attorneys. [DN 195 at 4 n.2, 12–13 n.3]. Nissin points out that Rule 26 requires disclosure of facts or data considered by a witness in forming his or her opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii). While true, it is clear that Dr. Castillo's expert opinion is not based on any other details other than Schall's general injury. Nissin has not contested the underlying fact which forms the basis of the doctor's opinion—that Schall suffered a spinal cord injury on July 19, 2013 which rendered him a T-4 AIS-A paraplegic. Thus, the failure to turn over a medical records summary is of no consequence to the issues raised here.

Dr. Castillo's expert report makes clear that he is not opining that Schall will undoubtedly suffer from every listed medical problem, rather his opinion addresses what kinds of complications may arise in individuals with T-4 spinal injuries, generally. The patients that Dr. Castillo has treated and upon whom he bases his opinions may or may not mirror the medical history of Schall. Further, it is undisputed that Dr. Castillo reviewed only a summary of Schall's medical records rather than the records themselves and has never met Schall. These circumstances may go to the weight of his testimony before a jury, but they do not render the testimony so unreliable that it should be excluded altogether under *Daubert*. As stated by the Supreme Court, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

It is certainly the case that a testifying expert's knowledge must be "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. But, the testimony Dr. Castillo intends to offer concerning Schall's potential future medical complications is not based on subjective belief or unsupported speculation. The record demonstrates that Dr. Castillo has had extensive medical education and training in the treatment of spinal cord injury patients. Additionally, he relies on cumulative research produced by the National Spinal Cord Injuries Statistical Center at the University of Alabama concerning the life expectancy of spinal cord injury patients. [DN 195-6 at 39:4–40:16]. Further, he has conducted extensive research and published articles on spinal cord injuries. Based upon Dr. Castillo's experience, training, and education, the Court finds that he is qualified to testify as an expert and his opinion concerning medical complications attendant to T-4 paraplegics is neither unreliable nor inadmissible. *See Jahn*, 233 F.3d at 388 ("Experts are permitted a wide latitude in their opinions, including those not based on

firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'") (quoting *Daubert*, 509 U.S. at 592). Nissin's Motion to Exclude Dr. Castillo's opinion concerning Schall's increased risk for various medical complications is **DENIED**.

### B. Reasonableness and Necessity of Ingebrigtsen's Life Care Plans

Nissin next argues that Dr. Castillo's opinion that Ingebrigtsen's life care plans are reasonable and necessary is unreliable and must be excluded. Specifically, Nissin argues that "[Dr.] Castillo can point to nothing reliable upon which to base his opinion that the life care plan is reasonable and necessary." [DN 195 at 14]. Schall responds that Dr. Castillo is qualified to give such an opinion based on his specialization in treating patients with like injuries. [DN 232 at 10]. For example, Schall notes, Dr. Castillo spends much of his time "determining which treatment modalities are appropriate for patients with spinal injuries." [*Id.* at 10–11].

Ingebrigtsen prepared two separate life care plans for Schall. [DN 195-3]. In her own words, Ingebrigtsen stated that she assessed Schall's "current level of functioning and developed a life care plan to identify reasonable and expected costs associated with his diagnosis." [*Id.* at 2, 20]. One of her life care plans calculates costs for a normal life expectancy and the other does the same for a reduced life expectancy. [*Id.*]. As he admits, Dr. Castillo only reviewed the reduced life expectancy plan. [DN 195-6 at 10:1–12].

Dr. Castillo's opinion that the life care plans are reasonable and necessary is a clinical assessment that he is qualified to provide. It is clear from his CV that Dr. Castillo has extensive experience treating and rehabilitating patients with spinal cord injuries. [DN 232-7]. He currently serves as the medical director of the spinal cord injury program at the Frazier Rehabilitation Institute. [*Id.* at 1]. Before that, he was the interim medical director of a spinal cord injury program

at a rehabilitation hospital in Washington, D.C. [*Id.*]. Since 2012, Dr. Castillo has held academic appointments within departments of spinal cord injury and rehabilitation at various hospitals. Further, Dr. Castillo is a member of numerous professional organizations and holds several certifications and licenses in the field of spinal cord injury and rehabilitation. [*Id.* at 2]. These experiences, along with others detailed on his CV, make clear that Dr. Castillo is acutely familiar with the type of injury Schall suffered and the necessary medical care, therapy, home health care, equipment and supplies, and medication that someone in Schall's position would require. *See Jahn*, 233 F.3d at 388 ("Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'") (quoting *Daubert*, 509 U.S. at 592). That Dr. Castillo did not meet Schall in person, did not speak with any of Schall's treating physicians, and did not spend more than 60-90 minutes reviewing one of Ingebrigtsen's life care plan does not render his testimony inadmissible. Instead, as above, these subjects are appropriate for Nissin's cross-examination of Dr. Castillo.

Although Dr. Castillo reviewed only one of the life care plans prepared for Schall, the reports are nearly identical. [DN 195-3]. In fact, the first ten pages are mirror images of each other. [*Id.*]. The next six pages detail different categories of costs that will be incurred by Schall over his lifetime—medical care, home health assistance, therapy, equipment and supplies, and medications. [*Id.* at 12–17, 30–35]. The final page of each report adds those categories' costs together to reach a total lifetime cost. [*Id.* at 18, 36]. All the individual medical needs, equipment, and services provided for in the life care plans are the same, though the costs vary in a few respects. Because the reports are identical in terms of the individual needs, Dr. Castillo may testify about

the reasonableness of both reports even though he only reviewed the reduced life expectancy report.

In its Reply brief, Nissin challenged Dr. Castillo's qualifications to opine as to the reasonableness of the cost figures associated with the life care plans. There is nothing in Dr. Castillo's report that indicates he intends to testify about the reasonableness of Ingebrigtsen's projected costs. [DN 195-5]. Nor was there any discussion of this subject during his deposition. Therefore, the Court assumes that Dr. Castillo will not be offering any such opinion, and on that basis, Nissin's motion to exclude any opinion of Dr. Castillo as to the reasonableness and necessity of Ingebrigtsen's life care plans is **GRANTED**. Otherwise, the motion to exclude Dr. Castillo's testimony is **DENIED**.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Nissin's Motion to Exclude the Testimony of Camilo Castillo, M.D. [DN 195] is **GRANTED in part** and **DENIED in part**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

February 4, 2020

cc: counsel of record