CIVIL ACTION NO: 4:14-CV-00074-JHM

DEREK SCHALL                                                    PLAINTIFF

V.

SUZUKI MOTOR OF AMERICA, INC.,
SUZUKI MOTOR CORP., and
NISSIN KOGYO CO., LTD.                                          DEFENDANTS

## Memorandum Opinion and Order

This matter is before the Court on Defendants' Motion to Exclude Plaintiff's expert witness, Rex McLellan.  [DN 189].  Fully briefed, this matter is ripe for decision.

## I.     Background

 Plaintiff Derek Schall was injured in a motorcycle accident on July 19, 2013, in Daviess County, Kentucky.  [DN 5 ¶ 39].  He alleges that the accident was caused by defects in the front brake master cylinder on the motorcycle, a 2007 Suzuki GSX-R600.  [*Id.*]  He has brought an action against Suzuki Motor Corporation ("SMC"), the manufacturer of the motorcycle; Suzuki Motor of America, Inc. ("SMAI"), the importer of the motorcycle; and Nissin Kogyo Co., Ltd. ("Nissin"), the manufacturer of the front brake master cylinder, alleging strict products liability and negligence.  [*Id.* ¶ 41–52].

## II.     Standard of Review

Defendants move the Court to exclude Plaintiff's expert, Rex McLellan, arguing that his opinions do not meet the standards of Federal Rules of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the

expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). "Rule 702 guides the trial court by providing general standards to assess reliability." *Id.*

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. *Kumho Tire*, 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular

expertise, and the subject of his testimony." *Id.* at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citation omitted); *see also Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 5633216, at *1–2 (W.D. Ky. Nov. 22, 2017).

### III. DISCUSSION

Schall retained Dr. Rex McLellan to provide expert testimony related to the front brake master cylinder. Dr. McLellan opined that the brake master cylinder was defective due to the potential for galvanic corrosion and gas evolution, that zinc was an improper material for use in the brake master cylinder piston, that the GSX-R's brake master cylinder exhibited evidence of corrosion, and that Suzuki's investigation of the reduced braking phenomenon and recall were too slow. Defendants now move to exclude the testimony of Dr. McLellan arguing that (1) Dr. McLellan is not qualified to offer these opinions; (2) Dr. McLellan opinions lack a sufficiently reliable basis; and (3) Dr. McLellan's testimony is not relevant. [DN 189 at 2].

### A. Qualification to Offer Opinions

Defendants maintain that while Dr. McLellan's background and expertise is in materials science engineering, he does not possess the knowledge, skill, experience, training, or education that qualifies him to offer opinions about whether the brake master cylinder was defective, whether the brake master cylinder contained corrosion or hydrogen at the time of the accident, or whether Suzuki's investigation was appropriate. According to Defendants, Dr. McLellan has never designed nor manufactured a brake master cylinder or any other motorcycle component or worked for a company that does so; never been retained to opine regarding corrosion within a brake master cylinder; never published peer reviewed articles on hydrogen and its reaction in a fluid, reactions of solids or metals in brake fluid, or zinc corrosion; never authored any scholarly papers on

corrosion and his papers on hydrogen are limited to hydrogen embrittlement; taught no classes focused on corrosion; has limited experience as a litigation consultant in motorcycle cases; and never worked as a consultant concerning zinc corrosion on brake systems or automobiles, only garage roofs. Defendants contend that he is not a member of any professional organizations associated solely with the science of corrosion and is not an expert in the field of corrosion engineering, mechanical engineering, motorcycle operations, or how a company responds to a product issue, investigates product issues, or recalls products. Thus, Defendants argue that Dr. McLellan lacks expertise as a brake master cylinder designer or manufacturer, and as a result, he is not qualified to offer opinions about the design and manufacture of a brake master cylinder. [DN 189 at 24–25]. The Court disagrees.

Dr. McLellan is qualified to offer expert opinions in this case. The record reflects that Dr. McLellan has a B-Met (equivalent to a Bachelor of Science) of Metallurgy from Sheffield England and a Ph.D. in Physical Metallurgy from Leeds University. Dr. McLellan is also a licensed professional engineer. For 49 years, Dr. McLellan served as a professor of materials science with his last position at Rice University in Houston, Texas. At his deposition, he characterized his discipline as materials science and engineering. [McLellan Dep. at 120]. During his tenure as a professor, Dr. McLellan conducted significant research in the area of vibrations in solids and interactions with interstitial atoms, notably hydrogen atoms and solids. He authored over 260 peer-reviewed articles, 69 of those articles address interactions between hydrogen and solids. In the litigation field, he examined the corrosion of zinc in cases where galvanization, or a lack thereof, was a problem and examined the effect of coatings on corrosion. [*Id.* at 126–127]. Dr. McLellan is a member of the American Society for Metals and the American Institute of Mining and Metallurgical Engineers.

Dr. McLellan explained during his deposition that he considers himself "to be a materials engineer, and that discipline incorporates corrosion engineering." [McLellan Dep. at 122]. He further explained that "materials science is a very all-encompassing discipline and it does cover a great deal of what people . . . would formally term corrosion engineering." [*Id.*]. Given his knowledge, skill, experience, training, and education, he is qualified to proffer an expert opinion on a variety of metallurgy, material science, and engineering topics. Specifically, testimony related to corrosion and the materials selected for use in the brake master cylinder are within the scope of Dr. McLellan's expertise in the fields of materials science and physical metallurgy. Similarly, Dr. McLellan is qualified to opine when reported scientific findings would alert an engineer or a materials scientist that corrosion may be a problem within the brake master cylinder. The Court will address the admissibility of Dr. McLellan's opinions regarding the timeliness of the recall in section C(2) below.

Furthermore, the fact that Dr. McLellan never personally designed, manufactured, or examined a brake master cylinder for a motorcycle prior to his opinions rendered in this case does not disqualify him as an expert. "The federal courts in a number of product liability cases involving engineering experts have permitted an expert witness with general knowledge to give expert testimony where the subject of that testimony related to such general knowledge but the expert had no specialized knowledge of the particular product." *Burke ex rel. Burke v. U-Haul Int'l, Inc.*, No. 3:03CV-32-H, 2006 WL 3043421, *4 (W.D. Ky. Oct. 20, 2006) (court permitted expert qualified in vehicle dynamics to opine how a tow dolly reacted to an accident, even though the expert had no particular experience with tow dollies) (citing *DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988)); *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 455 (6th Cir. 2013) ("[W]e will not require [an expert] to have a specialized knowledge of firearms to offer opinions" in a firearm design and manufacturing defect case). The Court considers a proposed expert's "full range of

practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); *see also Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14-CV-00022-JHM, 2016 WL 276126, at *3 (W.D. Ky. Jan. 21, 2016).

The Court finds that Dr. McLellan's knowledge in the fields of materials science, metallurgy, and engineering qualifies him to offer opinions about whether the brake master cylinder on the Suzuki GSX-R rendered it defective and unreasonably dangerous. Dr. McLellan's lack of practical experience designing or manufacturing brake master cylinders on motorcycles is an issue of weight best suited for cross-examination. *See Poulter v. Cottrell, Inc.*, No. 12-C-01071, 2014 WL 5293595, at *2 (N.D. Ill. June 24, 2014); *Palatka*, 535 F. App'x at 454.

### B. Relevance

In a products liability case, "[n]egligence and strict liability theories of recovery overlap to the degree that, in either instance, the plaintiff must prove the product was defective and the legal cause of the injury." *Shea v. Bombardier Recreational Products, Inc.*, No. 2011-CA-000999-MR, 2012 WL 4839527, at *4 (Ky. Ct. App. 2012) (citing *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996)); *see also Hinken v. Sears Roebuck and Co.*, No. 13CV-283-HRW, 2015 WL 165027, at *3 (E.D. Ky. Jan. 13, 2015); *Yonts v. Easton Technical Prods., Inc.*, No. 3:11-CV-535-DJH, 2015 WL 3408937, at *5 (W.D. Ky. May 27, 2015). "The ultimate question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *Yonts*, 2015 WL 3408937, at *5 (quoting *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780, 782 (Ky. 1984)).

Defendants contend that Dr. McLellan's expert opinion should be excluded claiming that he holds no opinion on whether the alleged condition of the GSX-R's front brake master cylinder

reduced the braking performance and caused the accident. Similarly, Defendants argue that Dr. McLellan's opinions are irrelevant because he does not know whether there was any corrosion or hydrogen gas present in the brake master cylinder at the time of the accident and he has not conducted any testing, experimentation, or calculations to assess whether hydrogen generation would reduce braking performance or how much hydrogen must be generated to reduce braking performance. [DN 189 at 34–35]. The Court will address Defendant's argument with respect to Dr. McLellan's independent testing of the brake master cylinder in section C(1) below.

The Court finds that Dr. McLellan's opinion will aid the jury in determining whether the brake master cylinder suffered from a design or manufacturing defect. Dr. McLellan testified that the subject brake master cylinder suffered from design flaws. Specifically, in his report, Dr. McLellan indicated that "[i]n addition to the corrosion and gas evolution occurring at the surface of the abraded reciprocating piston, a design flaw, a further design flaw pertains to the direct interaction between the underside of the piston and the steel spring potentially give rise to galvanic corrosion and gas evolution." [DN 249-9, Exhibit I at 3–4]. In support of his opinion, Dr. McLellan testified that the electron micrographs depict areas of wear and corrosion on the side of the piston in question. [*Id.* at 1; McLellan Dep. at 137]. Dr. McLellan further testified that based on his inspection of the piston, calculations involving the pH of the brake fluid, admissions by Suzuki in internal documentation, and information provided by Plaintiff's experts Limpert and Sullivan, there was "enough hydrogen ingress into the brake fluid to give rise to the problem of spongy brakes." [*Id.* at 141]. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Relevant evidence is admissible under Federal Rule of Evidence 402. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 468 (6th Cir.

2012).  Dr. McLellan's opinion as to the existence of design defects of the brake master cylinder is directly relevant to the key issues of this case.

### C. Reliable Basis

Defendants seek to exclude the expert testimony of Dr. McLellan arguing that his opinions lack a sufficiently reliable basis.  Defendants argue that Dr. McLellan should not be permitted to testify because he never performed actual testing, analysis, experiments, calculations, or studies regarding the materials choice related to the brake master cylinder or determining the amount of corrosion or hydrogen gas in the brake master cylinder at the time of the accident.  Additionally, Defendants maintain that Dr. McLellan failed to "reverse engineer" the amount of corrosion present in the brake master cylinder at the time of the accident.  According to Defendants, all Dr. McLellan did to support his opinions was review documents selected by Plaintiff's attorney, visually examine the components of the front brake master cylinder from an inspection 9 months after the accident, and talk with Plaintiff's attorney and other paid experts.  [DN 189 at 2].

### 1.  Corrosion, Hydrogen Generation, and Defect

"Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as the 'expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'"  *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).  "'[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'"  *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152).

The Court recognizes that "*Daubert* attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other."  *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir.

2009). However, the *Daubert* factors do not constitute a definitive checklist or test. Rather, the "gatekeeping inquiry must be 'tied to the facts' of a particular case," depending on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150; *see also Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 430 (6th Cir. 2007). Depending on the facts of a given case, it is well within a district court's discretion to find an expert's opinion reliable although he has conducted no testing. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 668–69 (6th Cir. 2000) ("The district court, in its discretion, could have decided that Richardson's failure to test his theories went to the weight of his testimony regarding defects in the Bronco II, not to its admissibility."); *Jacobs v. Tricam Indus., Inc.*, No. 10-CV-11469, 2011 WL 3957667, at *4 (E.D. Mich. Sept. 8, 2011) (finding that "testing is not required in every case, particularly where, as here, the expert conducted an examination of the physical evidence"); *Wendorf v. JLG Indus., Inc.*, No. 08-CV-12229, 2010 WL 148255, at *4 (E.D. Mich. Jan. 11, 2010) (finding expert's failure to test goes to the weight of the testimony); *Williams v. Gen. Motors Corp.*, No. 1:03-CV-02060, 2007 WL 3232292, at *2 (N.D. Ohio Oct. 30, 2007) ("Mr. Rosenbluth has relied on various sources, including academic and government studies. His failure to perform his own independent tests or studies of his theories goes to the weight of his testimony, not to its admissibility."); *see also Potts v. Martin & Bayley, Inc.*, No. 4:08-CV-00015-JHM, 2011 WL 4703058, at *6 (W.D. Ky. Oct. 4, 2011).

A review of Dr. McLellan's report and deposition indicates that he relied upon microscopic photographic evidence of the subject brake master cylinder from the April 14, 2014 inspection, personal photographs and examination of certain components of the piston; test results of brake fluid of Schall's GSX-R; test results on sample material taken from the brake master cylinder; and other experts' reports. Dr. McLellan relied on Suzuki and Nissin's own internal correspondence—including emails and memos shared between Suzuki and its dealerships regarding customer

complaints about their motorcycle brakes and reports of injury that were associated with non-functioning brakes, inspection and testing by CCI Corporation, correspondence with experts who provided an opinion on corrosion issues in the front brakes, and technical conditions and observations presented in the internal documents. That information, combined with his ample experience in metallurgy, materials science, and engineering, helped him conclude that corrosion existed in Schall's front brake master cylinder and that the component parts used by Defendants in the brake master cylinder were inappropriate. Dr. McLellan followed an established analytical path to arrive at a reasonable conclusion based on his observations of data obtained by him and other experts, review of test results, research, and expertise. Dr. McLellan's reliance on other expert's testing on the subject GSX-R's brake master cylinder in addition to his own goes to the weight and credibility of the evidence.

Furthermore, Dr. McLellan's decision as to what data on which to rely is in line with the choices made by at least one of Defendants' expert witnesses in this case—suggesting "that his data selection matched the conventional practices of his profession." *Adler v. Elk Glenn, LLC*, 986 F. Supp. 2d 851, 856–57 (E.D. Ky. 2013). It is uncontested that Dr. Bruce Pound utilized the same materials to arrive at his opinions. (Pl's Reply at 12–13, DN 230) ("To formulate my opinions in this matter, I evaluated documents and photographs that have been produced in relation to the brake master cylinder. Based on my evaluation, education, and experience, I have reached the following findings and opinions . . . ."). Therefore, contrary to Defendants' argument, the case law does not mandate exclusion of Dr. McLellan's opinion because he utilized other experts' test and data or because he did not independently test some of the components of the GSX-R's brake master cylinder himself.

Defendants also complain that Dr. McLellan merely infers corrosion in the front brake master cylinder on the day of Schall's accident based on the presence of corrosion at an inspection

nine months later.  It is clear from Dr. McLellan's deposition that he does not intend to testify to the degree of corrosion or the amount of hydrogen gas present at the time of the accident.  However, based on his review of the data presented, his observation of the piston and the spring from Schall's motorcycle, the chemical test results from the inspection, and his experience, he intends to testify that within a degree of engineering certainty, there was corrosion present in the master cylinder on the date of the accident.  [McLellan Dep. at 164–165].  Specifically, Dr. McLellan testified that while no one can quantify the amount of corrosion present on the day of the accident, the degradation was so severe as of the April 14, 2014, inspection date to produce such a low pH, the corrosion had to be going on for a substantial period of time.  [*Id.* at 115].  Dr. McLellan further testified that in his experience the corrosion discovered at the time of the inspection of the motorcycle in April 2014 would be less than existed at the time of the accident.  [*Id.* at 55].  Additionally, in rejecting defense counsel's question suggesting that the corrosion actually occurred between the date of the accident and the date of the inspection, Dr. McLellan explained that this theory is not probable given the fact that the subject motorcycle was stored through the fall, winter, and spring when temperatures would be cooler than during the height of summer when Schall's accident occurred.  Dr. McLellan emphasized that given the fact that corrosion reactions usually increase with temperature, the ambient temperature to which the motorcycle had been exposed during storage was relatively low compared to the motorcycle's history of use during summer.  [*Id.* at 116].  Additionally, Dr. McLellan noted that if the motorcycle was stored in such a way to vent some of the gas, the actual hydrogen gas volume present would tend to decrease with time during that nine-month period—meaning  that it was actually higher at the time of the accident.  [*Id.* at 116–117].  Dr. McLellan's opinions are based on his practical experience and his study in a particular technical field, and therefore, there appears to be no reason at this time to exclude him from testifying about such.

Defendants also object to Dr. McLellan's report and proposed testimony arguing that his opinions and methodology have not been subject to peer-review and Dr. McLellan has not authored any scholarly papers that deal with hydrogen and its reaction in a fluid, the reactions of solids or metals in brake fluid, or zinc corrosion. [DN 189 at 31–32]. Defendants further argue that Dr. McLellan's opinions do not have a known or potential error rate, have no standards control, and were developed solely for use in this litigation. [*Id.* at 32]. Defendants contend that Dr. McLellan's opinions trigger the Sixth Circuit's cautionary "red flags" such as "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." [*Id.* at 33 (citing *S.S. v. Leatt Corp.*, No. 1:12CV-483, 2013 WL 3714142 (N.D. Ohio July 15, 2013)].

As noted by the United States Supreme Court, "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exhaustively applies to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "The fact that a witness's 'opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not [necessarily] render them unreliable and inadmissible.'" *Scanlan v. Sunbeam Prod., Inc.*, No. 3:12-CV-00009-CRS, 2018 WL 476165, at *3 (W.D. Ky. Jan. 18, 2018) (quoting *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001)). The Court's objective is "'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Billone v. Sulzer Orthopedics, Inc.*, No. 99-CV-6132, 2005 WL 2044554, at *2 (W.D.N.Y. Aug. 25, 2005) (quoting *Kumho Tire*, 526 U.S. at 151).

Dr. McLellan's opinion is not only based on his experience in the industry, but also generally accepted materials science and engineering standards. In other words, the principles and

methods employed by Dr. McLellan were not based on his *ipse dixit*, but appear to be a reliable method of assessing the condition and the component parts of the brake master cylinder. *See*, *e.g.*, *Ferris v. Tenn. Log Homes, Inc.*, No. 4:06CV-35-JHM, 2009 WL 1506724, at *10 (W.D. Ky. May 27, 2009); *Zerega Ave. Realty Corp. v. Hanover Ins. Co.*, No. 04 CIV. 9651(KNF), 2006 WL 1343643, at *4 (S.D.N.Y. May 17, 2006) ("Drawing upon one's educational background and practical experience is a reliable methodology through which to develop opinions and reach conclusions about scientific, technical, or other areas of specialized knowledge.").

## 2. Product Investigation and Timeliness of Recall

Based on his review of the investigation and data gathered by Suzuki and Nissan, including internal testing conducted by the companies, testing by an independent company, and internal emails, Dr. McLellan concluded:

> Suzuki was well acquainted with the problems of brake malfunction in the GSX-R motorcycles in the years preceding the final decision to issue the recall of Nov. 18, 2013. If Suzuki had inquired, I could have told them rather quickly they were having a chemical reaction causing gas buildup in the GSX-R motorcycles. Of note, this was only happening to the GSX-R model.
> In addition to the data listed above Suzuki had good evidence for the piston/steel galvanic corrosion problem in the COMP report of April 8, 2013 from Koeki and Co. where solid matter corrosion product was found to contain large quantities of Zn, Fe and oxygen.
> Despite all the scientific and engineering results available 30 to 40 years prior to Mr. Schall's accident and their own studies, Suzuki continued to use a clearly dangerous BMC system and did not publish a recall until Nov. 18, 2013, too late to help Mr. Schall.

[DN 249-9, Exhibit I, McLellan Report at 4]. Additionally, after a review of an internal email dated April 4, 2013, from Takao Kudo, Dr. McLellan stated that "[t]he decision to issue a recall was reached after consideration of the cost involved in recalling or not doing so." [*Id.* at 3]. Similarly, in his deposition, Dr. McLellan compiled several Suzuki internal documents, identified as the "X file," which Dr. McLellan believes are relevant to his opinion that Suzuki knew hydrogen was being generated as early as January of 2013 and failed to act. [McLellan Dep. at 88, 88–107].

Defendants seek to exclude Dr. McLellan's opinion that Suzuki's investigation into the reduced brake phenomenon and its issuance of a recall was untimely. [DN 189 at 30–31]. Defendants maintain that this testimony is improper because the basis for Dr. McLellan's opinions is derived solely from his summary of Defendants' internal documents which he agreed in his deposition "are what they are." [McLellan Dep. at 103, 159–160]. Defendants likewise contend that Dr. McLellan admitted in his deposition that his criticism of Suzuki "is not a scientific question," but a "question of morality and decency" which is a completely irrelevant personal opinion. [*Id.* at 103]. Additionally, Defendants argue that Dr. McLellan improperly attempts to opine about the Defendants' knowledge or state of mind concerning the brake phenomenon. [DN 189 at 30–31]. In response, Plaintiff argues that Dr. McLellan's testimony will aid the jury in understanding the time it should have taken the Defendants to scientifically recognize the defect and whether the Defendants appropriately responded when they became aware of the deficiencies in the brake master cylinder.

### a. Summary of Documentary Evidence

Defendants' challenge to Dr. McLellan's opinions regarding Suzuki's investigation is premised on their contention that Dr. McLellan's opinions and testimony are no more than a summary of documentary evidence that the jury could review themselves. "'[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'" *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (quoting *Highland Capital Mgmt, LP v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)). To the extent such evidence is admissible, it is "properly presented through percipient witnesses and documentary evidence." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015). "However, as opposed to providing a mere factual narrative, [an] expert is allowed to articulate the 'factual underpinning' upon which he bases his opinion." *Pledger v. Reliance Tr. Co.*, No.

1:15-CV-4444-MHC, 2019 WL 4439606, at *12 (N.D. Ga. Feb. 25, 2019) (citing *Duling v. Domino's Pizza, LLC,* No. 1:13-CV-01570-LMM, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015)).

The Court reviewed Dr. McLellan's Report and finds that his testimony is not offered "solely for the purpose of constructing a factual narrative." *In re Fosamax*, 645 F. Supp.2d at 192. Materials science and engineering as it relates to the corrosion and hydrogen gas creation are specialized matters not within the province of an ordinary juror. *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1149 (D. Colo. 2006). Dr. McLellan "drew extensively on his specialized knowledge and experience to review, analyze and summarize available information and to reach conclusions regarding" what he believes Defendants knew or should have known about the brake master cylinder at given points in time. *Id.* at 1149–50. It is also perfectly proper for Dr. McLellan to consider documentary evidence, pre-accident investigative reports, and internal correspondence to evaluate both the cause of the alleged defect and the Defendants' conduct and to interpret and summarize the information he collected through this process to assist the jury in determining whether Defendants breached their post-sale duty to warn of the defect. *Id.*; *Mahaney on behalf of estate of Kyle v. Novartis Pharm. Corp.*, No. 1:06-CV-00035-R, 2011 WL 13209806, at *4 (W.D. Ky. Sept. 12, 2011). Neither Dr. McLellan's deposition nor his report suggests that he intends to merely read or "regurgitate" the evidence as the expert in *In re Fosamax*, 645 F. Supp. 2d at 192.

### b. Opinion on Morality and Decency

In Dr. McLellan's deposition, defense counsel asked the following question: "[I]s it fair to say that it's outside of your field of expertise about how a company responds to an issue, whether they do it quickly or slowly? I mean, the documents . . . are what the documents are." [McLellan Dep. at 104]. Dr. McLellan responded: "Yes. It is not a scientific question. But it's a question of morality and decency, I think. . . . And if you have a problem that you know about, get it out

and recall it and save some lives and limbs." [Id. at 104–05]. Defendants seek to exclude Dr. McLellan's opinion regarding the timeliness of the recall because it is an opinion based on his subjective view of morality and decency which Defendants maintain is a completely irrelevant personal opinion. The Court agrees with Defendants. "Personal views on corporate ethics and morality are not expert opinions." *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007). *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004) ("While [Defendants] may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of their actions simply is not relevant" to this lawsuit).

Furthermore, to the extent that Dr. McLellan opines on Defendants' corporate conduct in issuing recalls, Schall fails to establish how Dr. McLellan is qualified to opine on this subject. Dr. McLellan is an expert in the fields of materials science and engineering and his expertise does not include experience in the manner in which corporations react to potential safety issues with their products. *See, e.g., Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1333 (M.D. Fla. 2015) (expert was not qualified to opine regarding "Bard's corporate conduct or how Bard should have responded to the data in its possession" because his areas of expertise did not include knowledge or even experience in the manner in which corporations react). Dr. McLellan possesses the qualifications to opine when reported scientific findings would alert an engineer or a materials scientist that corrosion may be a problem within the brake master cylinder. However, the timeliness of the Defendants' response to the detection of a safety hazard has to be addressed by another expert.

### c. Motive, Intent, and State of Mind

"Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016) (citing *In re Rezulin Prods. Liab. Litig.*, 309 F.

Supp. 2d 531); *see also In re Seroquel Prods. Liab. Litig.*, No. 6:06-MD-1769-ORL, 2009 WL 3806436, at *4–5 (M.D. Fla. July 20, 2009) ("The Court determines that [the expert] may not render any opinions regarding the state of mind, intent, motives or ethics of [the corporation] or any of its employees. These matters are not the proper subject of expert opinion; they are matters to be argued by counsel based on the evidence."); *Bouchard v. Am. Home Prods. Corp.*, No. 3:98-CV-7541, 2002 WL 32597992, at *6 (N.D. Ohio May 24, 2002) (expert's statements about corporate intent were inadmissible). In general, courts have found that this type of "'testimony is improper . . . because it describes lay matters which a jury is capable of understanding and deciding without the expert's help.'" *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 718.

The Court disagrees with Defendants' contention that Dr. McLellan speculates as to Defendants' state of mind, subjective motivation, or intent when he opines on what information was available to Defendants and what Defendants knew or should have known both pre- and post-sale. Dr. McLellan reviewed both materials science texts, articles, and conference presentations and an extensive historical record—including internal testing conducted by the companies, testing by an independent company, and internal emails—and, based upon his qualifications, opines on what he believes Defendants knew or should have known regarding the brake master cylinder at given points in time. "This is not testimony that goes to motive or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 719; *see also Tillman*, 96 F. Supp. 3d at 1333 ("[T]o the extent [an expert] merely discusses what information was available and possessed by [the defendant] prior to [the] procedure, this testimony is helpful and relevant to determining whether [the defendant] acted reasonably and does not improperly comment on [the defendant's] 'state of mind.'"); *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 459 (W.D. Ky. 2011) (permitting expert testimony regarding

"what Yamaha knew and when"). Further, expert testimony on the state of scientific or industrial knowledge available to Defendants is relevant to the issues of the existence of a design or manufacturing defect. *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 711. Similarly, testimony regarding what information was available and possessed by Defendants prior to the accident is helpful and relevant to the issue of post-sale failure to warn. However, in as much as Dr. McLellan offers opinions on the intent, motives, or state of mind of the Defendants, it is not relevant or admissible based on this case law. *Tillman*, 96 F. Supp. 3d at 1333 (expert may opine "on what information and knowledge was available" to the company, but may not go beyond that to offer opinions on the company's intent or state of mind).

Dr. McLellan relies upon his specialized knowledge, skill, training, education, and years of experience in the field of materials science and engineering to form his opinions. His opinions will help the jury evaluate, from a materials science and engineering standpoint, whether Defendants conformed to industry standards and "provide the necessary information to assess how a reasonably prudent corporation in [Defendant's] position would act, i.e., to determine whether [Defendant] had and breached a legal duty of care." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 717.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Exclude the testimony of Dr. Rex McLellan [DN 189] is **GRANTED in part and DENIED in part** consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

March 9, 2020

18