**CIVIL ACTION NO: 4:14-CV-00074-JHM**

**DEREK SCHALL**                                                                                  **PLAINTIFF**

**V.**

**SUZUKI MOTOR OF AMERICA, INC.,**
**SUZUKI MOTOR CORP., and**
**NISSIN KOGYO CO., LTD.**                                                               **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendants' Motion to Exclude Plaintiff's expert witness, Dr. Thomas Balk. [DN 191]. Fully briefed, this matter is ripe for decision.

## I.     BACKGROUND

Plaintiff Derek Schall was injured in a motorcycle accident on July 19, 2013, in Daviess County, Kentucky. [DN 5 ¶ 39]. He alleges that the accident was caused by defects in the front brake master cylinder on the motorcycle, a 2007 Suzuki GSX-R600. [*Id.*] He has brought an action against Suzuki Motor Corporation ("SMC"), the manufacturer of the motorcycle; Suzuki Motor of America, Inc. ("SMAI"), the importer of the motorcycle; and Nissin Kogyo Co., Ltd. ("Nissin"), the manufacturer of the front brake master cylinder, alleging strict products liability and negligence. [*Id.* ¶ 41–52].

## II.     STANDARD OF REVIEW

Defendants move the Court to exclude Plaintiff's expert, Dr. Thomas Balk, arguing that his opinions do not meet the standards of Federal Rules of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the

expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant.  *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702.  Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*  Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).  "Rule 702 guides the trial court by providing general standards to assess reliability." *Id.*

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94.  This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702.  *Kumho Tire*, 526 U.S. at 147.  Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular

expertise, and the subject of his testimony." *Id.* at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citation omitted); *see also Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 5633216, at *1–2 (W.D. Ky. Nov. 22, 2017).

## III. DISCUSSION

Schall retained Dr. Thomas Balk to provide expert testimony related to the front brake master cylinder—more specifically, whether the brake master cylinder exhibited evidence of corrosion, whether the component parts used by Defendants in the brake master cylinder were reasonable, and when a reasonably prudent engineer should have detected a problem with the brake master cylinder. Defendants now move to exclude the testimony of Dr. Balk arguing that (1) Dr. Balk is not qualified to offer these opinions; (2) Dr. Balk's opinions lack a sufficiently reliable basis; and (3) Dr. Balk's testimony is not relevant. [DN 191 at 2].

### A. Qualification to Offer Opinions

Defendants maintain that while Dr. Balk's background and expertise is in materials science engineering, he does not possess the knowledge, skill, experience, training, or education that qualifies him to offer opinions about whether the brake master cylinder was defective, whether the brake master cylinder contained corrosion or hydrogen at the time of the accident, or whether Suzuki and Nissin's investigation was appropriate. According to Defendants, Dr. Balk never worked as an expert witness, never designed nor manufactured a brake master cylinder or any other motorcycle component, never examined a motorcycle brake system prior to this case, and never authored any scholarly papers on brake master cylinders, motorcycle braking components, brake fluids, or antioxidants. Defendants contend that he is not a member of any professional organizations associated solely with the science of corrosion and is not an expert on zinc alloys,

brake fluids, or brake fluid corrosion inhibitors. Thus, Defendants argue that Dr. Balk lacks expertise as a brake master cylinder designer or manufacturer, and as a result, he is not qualified to offer opinions about the design and manufacture of a brake master cylinder. [DN 191 at 13–14]. The Court disagrees.

Dr. Balk is qualified to offer expert opinions in this case. The record reflects that Dr. Balk has a Bachelor of Science Degree in both Mechanical Engineering and Materials Science and Engineering from the University of California Berkeley and a Master of Science Degree and a Ph.D. in Materials Science and Engineering from The Johns Hopkins University. After graduation, Dr. Balk practiced as a scientist in Stuttgart, Germany at the Max-Planck-Institute for Metals Research where he researched metals. In 2004, the University of Kentucky Department of Chemical and Materials Engineering Department hired Dr. Balk as a professor. In 2009, Dr. Balk obtained his Professional Engineer license and completed the Professional Engineer exam in metallurgical and materials engineering. During his tenure at the University of Kentucky, he wrote or co-authored numerous peer-reviewed articles and taught courses in Materials Science and upper-level courses in Corrosion, Materials Characterization Techniques, Material Failure Analysis, Metals Processing, and Materials Design. Dr. Balk is a member of the Materials Research Society, The Minerals, Metals, and Materials Society, ASM International, Association for Iron & Steel Technology, and The American Ceramic Society.

Dr. Balk explained during his deposition that a materials science engineer "works to understand why materials behave the way they do, how they can be improved, how material selection can aid in a design of a component or a system." [DN 230-8 Balk Dep. at 20]. Dr. Balk further testified that he considered the issues presented in this case to be "a fairly straightforward materials engineering problem." [*Id.* at 70]. Given his knowledge skill, experience, training, and education in materials science engineering, he is qualified to proffer an expert opinion on a variety

of materials science and engineering topics. Specifically, testimony related to corrosion and the materials selected for use in the brake master cylinder are within the scope of Dr. Balk's expertise as a materials science engineer. Similarly, Dr. Balk is qualified to opine when reported scientific findings would alert an engineer that corrosion may be a problem within the brake master cylinder.

Furthermore, the fact that Dr. Balk never personally designed, manufactured, or examined a brake master cylinder for a motorcycle prior to his opinions rendered in this case does not disqualify him as an expert. "The federal courts in a number of product liability cases involving engineering experts have permitted an expert witness with general knowledge to give expert testimony where the subject of that testimony related to such general knowledge but the expert had no specialized knowledge of the particular product." *Burke ex rel. Burke v. U-Haul Int'l, Inc.*, No. 3:03CV-32-H, 2006 WL 3043421, *4 (W.D. Ky. Oct. 20, 2006) (court permitted expert qualified in vehicle dynamics to opine how a tow dolly reacted to an accident, even though the expert had no particular experience with tow dollies) (citing *DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988)); *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 455 (6th Cir. 2013) ("[W]e will not require [an expert] to have a specialized knowledge of firearms to offer opinions" in a firearm design and manufacturing defect case). The Court considers a proposed expert's "full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). *See also Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14CV-00022-JHM, 2016 WL 276126, at *3 (W.D. Ky. Jan. 21, 2016).

The Court finds that Dr. Balk's knowledge as a mechanical and materials science engineer qualifies him to offer opinions about whether the brake master cylinder on the Suzuki GSX-R rendered it defective and unreasonably dangerous. Balk's lack of practical experience designing

or manufacturing brake master cylinders on motorcycles is an issue of weight best suited for cross-examination. *See Poulter v. Cottrell, Inc.*, No. 12-C-01071, 2014 WL 5293595, at *2 (N.D. Ill. June 24, 2014); *Palatka*, 535 F. App'x at 454.

## B. Relevance

In a products liability case, "[n]egligence and strict liability theories of recovery overlap to the degree that, in either instance, the plaintiff must prove the product was defective and the legal cause of the injury." *Shea v. Bombardier Recreational Products, Inc.*, No. 2011-CA-000999-MR, 2012 WL 4839527, at *4 (Ky. Ct. App. 2012) (citing *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996)). *See also Hinken v. Sears Roebuck and Co.*, No. 13CV-283-HRW, 2015 WL 165027, at *3 (E.D. Ky. Jan. 13, 2015); *Yonts v. Easton Tech. Prods., Inc.*, No. 3:11-CV-535-DJH, 2015 WL 3408937, at *5 (W.D. Ky. May 27, 2015). "The ultimate question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *Yonts*, 2015 WL 3408937, at *5 (quoting *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780, 782 (Ky. 1984)).

Defendants contend that Dr. Balk's expert opinion should be excluded claiming that Dr. Balk holds no opinion on whether the alleged condition of the GSX-R's front brake master cylinder caused the accident. Similarly, Defendants argue that Dr. Balk's opinions are irrelevant because he does not know whether there was any hydrogen present in the brake master cylinder at the time of the accident and he has not conducted any analysis, testing, experimentation, or calculations to establish that corrosion or hydrogen gas played any role in causing Schall's accident. [DN 191 at 22–24]. The Court will address Defendant's argument with respect to Dr. Balk's independent testing of the brake master cylinder in the next section.

The Court finds that Dr. Balk's opinion will aid the jury in determining whether the brake master cylinder suffered from a design or manufacturing defect. Dr. Balk testified that the subject front brake master cylinder piston exhibited evidence of galvanic corrosion. Thus, the proximate cause of the brake failure, in Dr. Balk's opinion, was the use of a zinc piston which was inappropriate for brake master cylinders given that zinc is known to be susceptible to corrosion. [DN 230-8 Balk's Dep. at 97–98]. Specifically, Dr. Balk testified that "[c]orrosion occurred in Mr. Schall's situation in his brake master cylinder as evidenced by the deposit that was analyzed from the bore of that piston. And if that corrosion occurred, then that most likely involved the generation of hydrogen gas." [*Id.* at 97]. Dr. Balk further opined "that [the nonresponsiveness of the brakes] was most likely due to hydrogen gas evolution." [*Id.* at 98]. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Relevant evidence is admissible under Federal Rule of Evidence 402. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 468 (6th Cir. 2012). Dr. Balk's opinion as to the proximate cause of the brake master cylinder's failure is directly relevant to the key issues of this case.

The Court will address the relevance of Dr. Balk's opinions regarding the timeliness of Defendant's investigation and recall below.

**C. Reliable Basis**

Defendants seek to exclude the expert testimony of Dr. Balk arguing that his opinions lack a sufficiently reliable basis. Defendants argue that Dr. Balk should not be permitted to testify because he never personally inspected the subject GSX-R's front brake master cylinder. Defendants further argue that Dr. Balk's testimony should be excluded because he never performed actual testing, analysis, experiments, calculations or studies related to his opinions regarding the presence of corrosion or hydrogen in the brake master cylinder or regarding the materials choice

related to the brake master cylinder. According to Defendants, Dr. Balk based his opinions solely on a "handful" of documents provided by Schall's attorneys and a review of photographs of the brake master cylinder and components parts from the April 2014 inspection.

## 1. Corrosion, Hydrogen Generation, and Defect

"Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as the 'expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592). "'[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152).

The Court recognizes that "*Daubert* attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009). However, the *Daubert* factors do not constitute a definitive checklist or test. Rather, the "gatekeeping inquiry must be 'tied to the facts' of a particular case," depending on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. *See also Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 430 (6th Cir. 2007). Depending on the facts of a given case, it is well within a district court's discretion to find an expert's opinion reliable although he has conducted no testing. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 668–69 (6th Cir. 2000) ("The district court, in its discretion, could have decided that Richardson's failure to test his theories went to the weight of his testimony regarding defects in the Bronco II, not to its admissibility."); *Jacobs v. Tricam Indus., Inc.*, 10-CV-11469, 2011 WL 3957667, at *4 (E.D. Mich. Sept. 8, 2011) (finding that "testing is not required in every case,

particularly where, as here, the expert conducted an examination of the physical evidence"); *Wendorf v. JLG Indus., Inc.*, No. 08-CV-12229, 2010 WL 148255, at *4 (E.D. Mich. Jan. 11, 2010) (finding expert's failure to test goes to the weight of the testimony); *Williams v. Gen. Motors Corp.*, No. 1:03-CV-02060, 2007 WL 3232292, at *2 (N.D. Ohio Oct. 30, 2007) ("Mr. Rosenbluth has relied on various sources, including academic and government studies. His failure to perform his own independent tests or studies of his theories goes to the weight of his testimony, not to its admissibility."). *See also Potts v. Martin & Bayley, Inc.*, No. 4:08-CV-00015-JHM, 2011 WL 4703058, at *6 (W.D. Ky. Oct. 4, 2011).

A review of Dr. Balk's report and deposition indicates that he relied upon microscopic photographic evidence of the subject master cylinder piston, test results of brake fluid of Schall's GSX-R, test results on sample material taken from the brake master cylinder, and other experts' reports. Just as Dr. McLellan, Dr. Balk also relied on Suzuki and Nissin's own internal correspondence—including emails and memos shared between Suzuki and its dealerships regarding customer complaints about their motorcycle brakes and reports of injury that were associated with non-functioning brakes, inspection and testing by CCI Corporation, correspondence with a professor in Japan who provided an opinion on corrosion issues in the front brakes, an interview with a professor in the Engineering Department of Toyohashi University in Japan, and technical conditions and observations presented in the internal documents. That information, combined with his ample experience in materials science and engineering, helped him conclude that corrosion existed in Plaintiff's front brake master cylinder and the component parts used by Defendants in the brake master cylinder were unreasonable. Dr. Balk followed an established analytical path to arrive at a reasonable conclusion based on his observations of data obtained by other experts, review of test results, research, and expertise. While Dr. Balk did not

inspect or perform any independent testing on the subject GSX-R's brake master cylinder, this fact goes to the weight and credibility of the evidence.

Furthermore, as noted with respect to Dr. McLellan, Dr. Balk's decision as to what data on which to rely is in line with the choices made by at least one of Defendants' expert witnesses in this case—suggesting "that his data selection matched the conventional practices of his profession." *Adler v. Elk Glenn, LLC*, 986 F. Supp. 2d 851, 856–57 (E.D. Ky. 2013). It is uncontested that Dr. Bruce Pound utilized the same materials to arrive at his opinions. (Pl's Reply at 12–13, DN 230) ("To formulate my opinions in this matter, I evaluated documents and photographs that have been produced in relation to the brake master cylinder. Based on my evaluation, education, and experience, I have reached the following findings and opinions . . . ."). Therefore, contrary to Defendants' argument, Dr. Balk's opinion does not warrant exclusion for having utilized other experts' test and data or not independently testing the GSX-R's FMBC himself.

Defendants also complain that Dr. Balk merely infers corrosion in the front brake master cylinder on the day of Schall's accident based on the presence of corrosion at an inspection nine months later. Just as with the testimony of Dr. McLellan, it is clear from Dr. Balk's deposition that he does not intend to testify to the degree of corrosion or the amount of hydrogen gas present at the time of the accident. However, based on his review of the data presented, the independent test conducted by other experts, and his experience, he intends to testify that galvanic corrosion caused hydrogen generation in the brake master cylinder which caused Plaintiff's nonresponsive brakes. Dr. Balk's opinions are based on his practical experience and his study in a particular technical field, and therefore, there appears to be no reason at this time to exclude him from testifying about such.

Defendants also object to Dr. Balk's report and proposed testimony arguing that his opinions and methodology have not been subject to peer-review and Dr. Balk has not authored any scholarly papers on brake master cylinders or motorcycle braking components. Defendants further argue that Dr. Balk's opinions do not have a known or potential error rate, have no standards control, and were developed solely for use in this litigation. [DN 191 at 20–22]. Defendants argue that Dr. Balk's opinions trigger the Sixth Circuit's cautionary "red flags" such as "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." [*Id*. at 22 (citing *S.S. v. Leatt Corp.*, No. 1:12CV-483, 2013 WL 3714142 (N.D. Ohio July 15, 2013)].

As noted by the United States Supreme Court, "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exhaustively applies to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "The fact that a witness's 'opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not [necessarily] render them unreliable and inadmissible.'" *Scanlan v. Sunbeam Prod., Inc.*, No. 3:12-CV-00009-CRS, 2018 WL 476165, at *3 (W.D. Ky. Jan. 18, 2018) (quoting *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001)). The Court's objective is "'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Billone v. Sulzer Orthopedics, Inc.*, No. 99-CV-6132, 2005 WL 2044554, at *2 (W.D.N.Y. Aug. 25, 2005) (quoting *Kumho Tire*, 526 U.S. at 151).

Dr. Balk's opinion is not only based on his experience in the industry, but also generally accepted materials science and engineering standards. In other words, the principles and methods employed by Dr. Balk were not based on his *ipse dixit*, but appear to be a reliable method of

11

assessing the condition and the component parts of the brake master cylinder. *See, e.g., Ferris v. Tenn. Log Homes, Inc.*, No. 4:06CV-35-JHM, 2009 WL 1506724, at *10 (W.D. Ky. May 27, 2009); *Zerega Ave. Realty Corp. v. Hanover Ins. Co.*, No. 04 CIV. 9651(KNF), 2006 WL 1343643, at *4 (S.D.N.Y. May 17, 2006) ("Drawing upon one's educational background and practical experience is a reliable methodology through which to develop opinions and reach conclusions about scientific, technical, or other areas of specialized knowledge.").

### 2. Product Investigation and Timeliness of Discovery of Defect

Defendants seek to exclude Dr. Balk's opinion about the timeliness of Suzuki and Nissin's investigations into the reduced brake phenomenon. [DN 191 at 19–20]. Defendants maintain that this testimony is improper because the basis for Dr. Balk's opinions is derived solely from his summary of Defendants' internal documents. Additionally, Defendants argue that Dr. Balk improperly attempts to opine about the Defendants' knowledge or state of mind concerning the brake phenomenon. [*Id.*].

In response, Plaintiff argues that Dr. Balk's testimony will aid the jury in understanding "when reported scientific findings would alert an engineer that corrosion may be a problem within the [brake master cylinder]" and in understanding "the time it should have taken the Defendants to scientifically recognize the defect." [DN 230 at 13, 15]. Plaintiff cites the deposition testimony of Dr. Balk in which he testified that based on his review of a compendium of reports from November 15th of 2011" which included "30-something incidences or the summaries of those incidents," the gas generated in the brake master cylinder should have been analyzed at that time. [Balk Dep. at 132]. Specifically, Dr. Balk listed the tests that would need to be done, including "gas analysis, brake fluid analysis, elemental analysis of the deposits, failure analysis of the piston and other metallic components" and noted that "each one of those is something that can be done on the order of weeks." [Balk Dep. at 132–134].

### a. Summary of Documentary Evidence

Defendants' challenge to Dr. Balk's opinions regarding Defendants' investigation is premised on their contention that Dr. Balk's opinions and testimony are no more than a summary of documentary evidence that the jury could review themselves. "'[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'" *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (quoting *Highland Capital Mgmt., LP v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)). To the extent such evidence is admissible, it is "properly presented through percipient witnesses and documentary evidence." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015). "However, as opposed to providing a mere factual narrative, [an] expert is allowed to articulate the 'factual underpinning' upon which [he] bases [his] opinion." *Pledger v. Reliance Trust Co.*, No. 1:15-CV-4444-MHC, 2019 WL 4439606, at *12 (N.D. Ga. Feb. 25, 2019) (citing *Duling v. Domino's Pizza, LLC,* No. 1:13-CV-01570-LMM, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015)).

The Court reviewed Dr. Balk's Report and finds that his testimony is not offered "solely for the purpose of constructing a factual narrative." *In re Fosamax*, 645 F. Supp. 2d at 192. Materials science and engineering as they relate to corrosion and hydrogen gas creation are specialized matters not within the province of an ordinary juror. *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1149 (D. Colo. 2006). Dr. Balk "drew extensively on his specialized knowledge and experience to review, analyze and summarize available information and to reach conclusions regarding" what he believes Defendants knew or should have known regarding the brake master cylinder at given points in time. *Id.* at 1149–50. It is also proper for Dr. Balk to consider documentary evidence, pre-accident investigative reports, and internal correspondence in evaluating both the cause of the alleged defect and the Defendants' conduct and to interpret and

summarize the information he collected through this process to assist the jury in determining whether Defendants breached their post-sale duty to warn of the defect. *Id.*; *Mahaney on behalf of estate of Kyle v. Novartis Pharm. Corp.*, No. 1:06-CV-00035-R, 2011 WL 13209806, at *4 (W.D. Ky. Sept. 12, 2011). Neither Dr. Balk's deposition nor his report suggests that he intends to merely read or "regurgitate" the evidence as the expert in *In re Fosamax*.

### b. Motive, Intent, and State of Mind

"Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016) (citing *In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004)); *see also In re Seroquel Prods. Liab. Litig.*, No. 6:06-MD-1769-ORL, 2009 WL 3806436, at *4–5 (M.D. Fla. July 20, 2009) ("The Court determines that [the expert] may not render any opinions regarding the state of mind, intent, motives or ethics of [the corporation] or any of its employees. These matters are not the proper subject of expert opinion; they are matters to be argued by counsel based on the evidence."); *Bouchard v. Am. Home Prods. Corp.*, No. 3:98-CV-7541, 2002 WL 32597992, at *6 (N.D. Ohio May 24, 2002) (expert's statements about corporate intent were inadmissible). In general, courts have found that this type of "'testimony is improper . . . because it describes lay matters which a jury is capable of understanding and deciding without the expert's help'" *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 718.

The Court disagrees with Defendants' contention that Dr. Balk speculates as to Defendants' state of mind, subjective motivation, or intent when he opines on what information was available to Defendants and what Defendants knew or should have known both pre- and post-sale.[1] Dr. Balk

---

[1] Dr. Balk stated in his report:

reviewed both academic texts and research and an extensive historical record—including internal testing conducted by the companies, testing by an independent company, and internal emails— and, based upon his qualifications, opines on what he believes Defendants knew or should have known from a materials science and engineering standpoint regarding the brake master cylinder at given points in time. "This is not testimony that goes to motive or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 719; *see also Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1333 (M.D. Fla. 2015) ("[T]o the extent [an expert] merely discusses what information was available and possessed by [the defendant] prior to [the] procedure, this testimony is helpful and relevant to determining whether [the defendant] acted reasonably and does not improperly comment on [the defendant's] 'state of mind.'"); *In re Yamaha Motor Corp. Rhino ATV Prod. Liab. Litig.*, 816 F. Supp. 2d 442, 459 (W.D. Ky. 2011) (permitting expert testimony regarding "what Yamaha knew and when"). Expert testimony on the state of scientific or industrial knowledge available to Defendants is relevant to the issues of the existence of a design or manufacturing defect. *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 711. Similarly, testimony regarding what information was available and possessed by Defendants prior to the accident is helpful and relevant to the issue of post-sale failure to warn.

However, in as much as Dr. Balk offers opinions on the intent, motives, or state of mind of the Defendants, it is not relevant or admissible based on this case law. *Tillman*, 96 F. Supp. 3d at

---

In my opinion, it is reasonable to expect that Suzuki could have been expected to identify corrosion as the cause of gas bubbles in the brake fluid once it identified gas in the brake lines, which would have required them to analyze the gas and identify it as hydrogen. Once the gas is identified as hydrogen, it would have been reasonable to expect recognition that galvanic corrosion was occurring and a reasonably prudent company would understand that there was a defect in the front [brake master cylinder] that would allow this chemical reaction to occur.

(Balk Report, DN 230-9 at 3.) Dr. Balk noted that in formulating his opinion he considered "what can reasonably be expected of an engineer, along with the relevant technical conditions and observations presented in the documents that I reviewed." (*Id*. at 4.) "Once the gas analyzed is identified to be hydrogen, a reasonably prudent manufacturer should expect that galvanic corrosion was the specific corrosion scenario." (*Id*.) "As noted above, Suzuki and Nissin had all adequate information through their investigation to identify the galvanic corrosion process and its cause stemming from chemical reactions within the piston, due to the defective coating process and materials used." (*Id*. at 5.)

1333 (expert may opine "on what information and knowledge was available" to the company, but may not go beyond that to offer opinions on the company's intent or state of mind). Additionally, Dr. Balk is not an expert in the manner in which corporations react to potential safety issues with their products and, as a result, he is not permitted to offer an opinion on how the Defendants should have responded following the detection of a potential defect. *Id.* at 1333 (expert was not qualified to opine regarding "Bard's corporate conduct or how Bard should have responded to the data in its possession" because his areas of expertise did not include knowledge or even experience in the manner in which corporations react). As recognized by Plaintiff, "it will be the obligation of other experts to educate the jury as to how a reasonably prudent manufacturer should respond following detection of a safety hazard such as this." [DN 230 at 15].

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to exclude the testimony of Dr. Thomas Balk [DN 191] is **GRANTED in part and DENIED in part** consistent with this opinion.

Joseph H. McKinley Jr., Senior Judge
United States District Court

March 9, 2020

cc: counsel of record