UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:14-CV-00074-JHM

DEREK SCHALL                                                                         PLAINTIFF

V.

SUZUKI MOTOR OF AMERICA, INC.,
SUZUKI MOTOR CORP., AND
NISSIN KOGYO CO., LTD.                                                         DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Suzuki Motor of America, Inc. ("SMAI") and Suzuki Motor Corporation's ("SMC") (collectively "Suzuki") Motion to Exclude the Testimony of Plaintiff's Proposed Expert, Mark Kittel. [DN 179]. Nissin Kogyo Co., Ltd.'s ("Nissin") moved to join Suzuki's Motion [DN 204] and the Court granted that Motion. [DN 287]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Plaintiff Derek Schall was injured in a motorcycle accident on July 19, 2013, in Daviess County, Kentucky. [DN 5 ¶ 39]. He alleges that the accident was caused by defects in the front brake master cylinder ("FBMC") on the motorcycle, a 2007 Suzuki GSX-R600. [*Id.*]. He sued SMC, the manufacturer of the motorcycle; SMAI, the importer of the motorcycle; and Nissin, the manufacturer of the FBMC, alleging strict products liability and negligence. [*Id.* ¶ 41–52].

### II. STANDARD OF REVIEW

Defendants move the Court to exclude Plaintiff's expert, Mark Kittel, arguing that his opinions do not meet the standards of Federal Rules of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [DN 179].

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). "Rule 702 guides the trial court by providing general standards to assess reliability." *Id.*

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope

2

of Rule 702. *Kumho Tire*, 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citation omitted); *see also Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14-CV-00022-JHM, 2017 WL 5633216, at *1–2 (W.D. Ky. Nov. 22, 2017).

### III. DISCUSSION

Schall retained Mark Kittel to provide expert testimony related to accident reconstruction and to opine about the relation between the front brake recall condition and the facts of the subject accident. Defendants seek to exclude several opinions of Kittel. Defendants divide their challenges to Kittel's opinion into five sections and Schall responds in kind. As such, the Court addresses the Defendants' arguments in the same format.

As a preliminary matter, it is worth delineating Kittel's qualifications for offering opinions in this case. Kittel is a licensed professional engineer, having received a Bachelor of Science in Mechanical Engineering from the University of Colorado. [DN 234-8 at 1]. He is board-certified in Forensic Engineering by the National Academy of Forensic Engineers as well as being certified by the National Council of Examiners for Engineering and Surveying. [*Id.*]. Kittel is also an accredited traffic accident reconstructionist. [*Id.*]. Since 1998, Kittel has worked in different capacities as an engineer. He has spent time on the research and development of several varieties of powersport vehicles as well as providing post-production support to improve the quality of products and to determine whether a product should be recalled due to safety concerns. [*Id.*]. Kittel currently specializes in motor vehicle accident and product failure analysis. [*Id.*]. In

addition to his more formal qualifications, Kittel has over thirty years of off-road riding and racing experience with motorcycles and has been involved in on-road motorcycle racing for ten years. [*Id.*].

**A. Reasonableness of Schall's Actions**

Suzuki first attacks Kittel's opinion that Schall acted reasonably by driving his motorcycle off the roadway into what appeared to him to be a cornfield. [DN 179 at 5–9]. Suzuki argues that Kittel's opinion is premised upon nothing more than an unquestioning acceptance of Schall's narrative of the moments before the crash. [*Id.* at 5]. More particularly, Suzuki maintains that the lack of evidence of Schall's speed when he first attempted to apply the front brake and the absence of skid marks which would otherwise be indicative of a braking attempt render his opinion on the reasonableness of Schall's actions inadmissible. Finally, Suzuki takes issue with Kittel's opinion because, during his deposition, Kittel stated that another reasonable option for Schall would have been for him to attempt to negotiate the curve. [*Id.* at 7]. Schall responds that Kittel, an expert in motorcycle operation and accident evaluation and reconstruction, is well-suited to testify to the reasonableness of Schall's actions having reviewed deposition testimony, countless documents, photographs, and videos, and having evaluated Schall's motorcycle and the accident location. [DN 234 at 8–9].

Though a bare conclusion that Schall's conduct was "reasonable" likely would not be particularly helpful to the jury, and thus potentially inadmissible under Federal Rule of Evidence 702, based on the Court's review of Kittel's written report, there is no reason to believe that Schall's counsel intends to elicit bare conclusions. "With explanation, testimony regarding the reasonableness or unreasonableness of particular conduct will assist the jury in understanding the evidence and determining facts in issue, and will not simply 'tell the jury what result to reach.'" *Dowe v. Nat'l R.R. Passenger Corp.*, No. 01 C 5808, 2004 WL 887410, *1 (N.D. Ill. Apr. 26,

4

2004) (citing FED. R. EVID. 704, Advisory Comm. Notes); *see also Richman v. Sheahan*, 415 F. Supp. 2d 929, 948–49 (N.D. Ill. 2006) (collecting cases).

Kittel, in his expert report, explains that in reaching his opinion he reviewed countless documents including deposition testimonies, visited the scene of the accident, drove the curve Schall encountered, and inspected Schall's motorcycle. [DN 234-7 at 3–4]. Based upon that review, as well as his extensive motorcycle racing experience [DN 234-8 at 1], the Court finds that Kittel is qualified to provide this opinion. *See Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14CV-00022-JHM, 2016 WL 276126, at *3 (W.D. Ky. Jan. 21, 2016) ("The Court considers a proposed expert's 'full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.'") (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

Kittel's opinion is not unsupported. Instead, Defendants take issue with the quality of the opinion's support. Neither Kittel nor Schall contest Defendants' primary grievances—that there is no conclusive evidence of Schall's speed when he attempted to apply his front brake and the lack of skid marks at the accident site. That absence of information does not, however, cause Kittel's opinion as to the reasonableness of Schall's actions to be inadmissible. Instead, how he arrived at this opinion can be explored at trial as it is an appropriate ground for cross-examination. This decision is consistent with *Daubert*'s recognition that cross-examination, not exclusion of expert testimony, is the preferred method of handling challenged expert testimony. It is also consistent with the liberal thrust of Rule 702. *See Jahn Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (stating that in *Daubert* "[t]he Court explained that Rule 702 displays a liberal thrust with the general approach of relaxing the traditional barriers to opinion testimony" (internal quotations omitted)).

Defendants maintain that Kittel's opinion "is not specialized knowledge, and is not helpful for the jury." [DN 179 at 7]. The Court disagrees. Schall correctly points out that Defendants will likely attempt to show the jury that Schall was negligent in the moments before his crash—an effort to eliminate or at least minimize their liability. Determining whether Schall was negligent requires more than the jury's common sense, knowledge, and experience. In other words, the jury is not equally competent to determine the reasonableness of Schall's actions taken while veering off the road into what he thought was a flat cornfield.

**B. Crash Occurred in a Manner Consistent with a Front Brake Malfunction**

Suzuki next challenges Kittel's opinion that Schall's accident was caused by a front brake malfunction. [DN 179 at 9–10]. Specifically, Kittel opines that based on the available evidence and testimony, "the subject accident occurred in a manner that is consistent with a front brake malfunction." [DN 234-7 at 12]. Defendants claim that this opinion lacks any evidence other than Schall's "belated, self-serving claim." [DN 179 at 9]. Schall responds that Kittel is perfectly suited to offer such an opinion as an accident reconstructionist and that Kittel does so based upon review of ample evidence. [DN 234 at 9–11].

Defendants take issue with Kittel having never performed his own testing of the front brake. It is true that Kittel himself never inspected or tested the subject brake master cylinder as it had been removed by the time of his inspection of the motorcycle. However, as Schall correctly points out, Kittel does not need to have performed his own independent testing but may rely on admissible evidence supplied by other experts who have tested the component part. Indeed, depending on the facts of a given case, it is well within a district court's discretion to find an expert's opinion reliable although he has conducted no testing. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 668–69 (6th Cir. 2000) ("The district court, in its discretion, could have decided that

6

Richardson's failure to test his theories went to the weight of his testimony regarding defects in the Bronco II, not to its admissibility."); *Jacobs v. Tricam Indus., Inc.*, 816 F. Supp. 2d 487, 493 (E.D. Mich. 2011) (finding that "testing is not required in every case, particularly where, as here, the expert conducted an examination of the physical evidence"); *Wendorf v. JLG Indus., Inc.*, No. 08-CV-12229, 2010 WL 148255, at *4 (E.D. Mich. Jan. 11, 2010) (finding expert's failure to test goes to the weight of the testimony); *Williams v. Gen. Motors Corp.*, No. 1:03-CV-02060, 2007 WL 3232292, at *2 (N.D. Ohio Oct. 30, 2007) ("Mr. Rosenbluth has relied on various sources, including academic and government studies. His failure to perform his own independent tests or studies of his theories goes to the weight of his testimony, not to its admissibility."); *see also Potts v. Martin & Bayley, Inc.*, No. 4:08-CV-00015-JHM, 2011 WL 4703058, at *6 (W.D. Ky. Oct. 4, 2011). Here, the Court finds it appropriate for Kittel to rely on the conclusion of Schall's expert, Peter Sullivan, that the subject FBMC had a diminished braking capability at the time of the accident.

Relying on Sullivan's conclusion, Kittel considered the sum of Schall's deposition testimony. Using his expertise as an accident reconstructionist, Kittel reasonably linked the manner of occurrence as described by Schall with the scientific conclusion reached by Sullivan to reach the opinion that the accident occurred in a manner consistent with a front brake malfunction. Defendants take issue with the lack of additional evidence supporting this conclusion and the conflicting testimony from witnesses who stated that Schall himself attributed the crash to causes other than brake malfunction. But this is a challenge "to the accuracy of the expert's conclusions, not to their reliability, and bear[s] on 'the weight of the evidence rather than on its admissibility.'" *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 757 (S.D. Ohio 2015) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008)); *see also*

7

*United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) ("Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis."). Here, it will be up to Defendants to explore Kittel's factual basis on cross-examination.

**C. Diminished Braking Capability because of the Recall Condition**

The Court turns to Defendants' next challenge. Defendants' take issue with two of Kittel's opinions concerning the condition of Schall's front brake cylinder. First, that "[i]nspection of the front brake master cylinder on Mr. Schall's motorcycle reportedly shows that all of the markers identified by Suzuki as being associated with the recall condition were present." [DN 234-7 at 12]. And second, that "[b]ased on the available evidence it is likely that Mr. Schall experienced diminished front braking capability as a result of a spongy front brake lever caused by conditions that are consistent with the recall condition." [*Id.*]. Defendants charge that Kittel did not arrive at these opinions based on any personal investigation, inspection, or testing done in connection with the case but rather by the wholesale adoption of the opinions of Schall's other experts. [DN 179 at 11]. Schall responds that Kittel's opinion is premised upon a comprehensive evaluation of the evidence and that he may properly consider other experts' findings in arriving at his own opinions. [DN 234 at 11–13].

As discussed above, "[e]xperts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as the 'expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592). "'[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert

8

testimony is reliable.'" *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152). While it is true that Kittel did not perform his own independent testing of the front brake master cylinder, that alone does not render his opinion excludable.

"Although an expert 'may not adopt another expert's opinions wholesale,' *Siegel v. Fisher & Paykel Appliances Holdings, Ltd.*, No. 3:08CV-429-JDM, 2010 WL 4174629, at *2 (W.D. Ky. Oct. 19, 2010), pursuant to 'Rule 703, an expert's testimony may be formulated by the use of facts, data and conclusions of other experts.' *Asad v. Cont'l Airlines, Inc.*, 314 F. Supp. 2d 726, 740 (N.D. Ohio 2004) (citing *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 102 n.10 (3rd Cir. 1982))." *Jackson v. E-Z-GO Div. of Textron, Inc.*, 326 F. Supp. 3d 375, 396 (W.D. Ky. 2018). It is evident that Kittel does not intend to merely parrot Sullivan's opinion. Instead, he uses the information Sullivan obtained to take the next step, based on his experience and expertise as an accident reconstructionist and mechanical engineer, and attribute Schall's diminished braking capability to the braking phenomenon identified in Suzuki's recall notice.

Kittel explains his use of Sullivan's findings and assessment as follows: "My understanding is that the brakes were found to be in a – to contain the conditions described in the Suzuki recall with corrosion and diminished braking capability, and those factor into the opinions of the accident reconstruction as the condition of the brakes at the time of the accident." [DN 234-9 at 70:18–23]. Kittlel's review of Sullivan's work, combined with his ample experience in mechanical engineering and accident reconstruction, helped him conclude that the subject master cylinder displayed characteristics consistent with the recall notice. And further, that Schall's description of a loss of braking capability was a result of those characteristics.

9

Kittel's reliance on other experts' testing of the subject master cylinder and their opinions goes to the weight and credibility of his opinions, not the admissibility. Therefore, contrary to Defendants' argument, the case law does not mandate exclusion of Kittel's opinion because he utilized other experts' tests or because he did not independently test the subject front brake cylinder.

**D. Suzuki's Knowledge and State of Mind**

Next, Defendants seek to exclude Kittel's opinion about the timeliness of their investigations into the reduced brake phenomenon. [DN 179 at 15–17]. Defendants maintain that this testimony is improper because the basis for the opinion is derived exclusively from Kittel's summary of Defendants' internal documents. This argument is premised on the contention that Kittel's opinion on this matter is no more than a summary of documentary evidence that the jury could review themselves. Additionally, Defendants argue that Kittel improperly attempts to opine about the Defendants' knowledge or state of mind concerning the brake phenomenon. [*Id.*].

Kittel, in reality, offers three opinions on this particular score. First, he opines that "there was sufficient information available to Suzuki to notice a trend in the market that indicated a potential issue with the FBMC on the GSXR line of motorcycles." [DN 234-10 at 2]. Second, he intends to testify that "Suzuki was aware that even highly experienced riders will, on occasion, fail to notice a front brake lever that generates little to no braking pressure prior to riding." [*Id.* at 4]. Finally, he states that "it is apparent that Suzuki does not believe they can rely upon riders to identify a front brake issue during a pre-ride check." [*Id.*].

1. **Summary of Documentary Evidence**

"'[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'" *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164,

192 (S.D.N.Y. 2009) (quoting *Highland Capital Mgmt., LP v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)). To the extent such evidence is admissible, it is "properly presented through percipient witnesses and documentary evidence." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015). "However, as opposed to providing a mere factual narrative, [an] expert is allowed to articulate the 'factual underpinning' upon which [he] bases [his] opinion." *Pledger v. Reliance Trust Co.*, No. 1:15-CV-4444-MHC, 2019 WL 4439606, at *12 (N.D. Ga. Feb. 25, 2019) (citing *Duling v. Domino's Pizza, LLC,* No. 1:13-CV-01570-LMM, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015)).

The Court reviewed Kittel's report and deposition and finds that his testimony is not offered "solely for the purpose of constructing a factual narrative." *In re Fosamax*, 645 F. Supp. 2d at 192. Engineering, research and development experience related to powersport vehicles, and product failure analysis are specialized matters not within the province of an ordinary juror. *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1149 (D. Colo. 2006). Kittel "drew extensively on his specialized knowledge and experience to review, analyze and summarize available information and to reach conclusions regarding" what he believes Defendants knew or should have known regarding the front brake master cylinder at a given point. *Id.* at 1149–50. Neither Kittel's deposition nor his report suggests that he intends to merely read or "regurgitate" the evidence as the expert in *In re Fosamax*.

### 2. Motive, Intent, and State of Mind

"Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016) (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004)); *see also In re Seroquel Prods. Liab. Litig.*, No.

6:06-MD-1769-ORL, 2009 WL 3806436, at *4–5 (M.D. Fla. July 20, 2009) ("The Court determines that [the expert] may not render any opinions regarding the state of mind, intent, motives or ethics of [the corporation] or any of its employees. These matters are not the proper subject of expert opinion; they are matters to be argued by counsel based on the evidence."); *Bouchard v. Am. Home Prods. Corp.*, No. 3:98-CV-7541, 2002 WL 32597992, at *6 (N.D. Ohio May 24, 2002) (expert's statements about corporate intent were inadmissible). In general, courts have found that this type of "'testimony is improper . . . because it describes lay matters which a jury is capable of understanding and deciding without the expert's help'" *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 718 (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546).

As to Kittel's first two opinions, the Court disagrees with Defendants' contention that the expert speculates as to Defendants' state of mind, subjective motivation, or intent when he opines on what information was available to Defendants and what Defendants knew or should have known as it relates to the front brake phenomenon. Kittel reviewed an extensive historical record—including internal emails and documents as well as pre- and post-recall incident reports— and, based upon his expertise and experience, opines on what he believes Defendants knew or should have known and when as it relates to the front brake master cylinder. "This is not testimony that goes to motive or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 719; *see also Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1333 (M.D. Fla. 2015) ("[T]o the extent [an expert] merely discusses what information was available and possessed by [the defendant] prior to [the] procedure, this testimony is helpful and relevant to determining whether [the defendant] acted reasonably and does not improperly comment on [the defendant's] 'state of mind.'"); *In re Yamaha Motor Corp. Rhino ATV Prod. Liab. Litig.*, 816 F. Supp. 2d 442,

459 (W.D. Ky. 2011) (permitting expert testimony regarding "what Yamaha knew and when"). Expert testimony on the state of scientific or industrial knowledge available to Defendants is relevant to the issues of the existence of a design or manufacturing defect. *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 711. Similarly, testimony regarding what information was available and possessed by Defendants prior to the accident is helpful and relevant to the issue of post-sale failure to warn.

However, to the extent that Kittel offers an opinion on Defendants' intent, motives, or state of mind, it is not relevant or admissible pursuant to this case law. *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1333 (M.D. Fla. 2015) (stating that an expert may opine "on what information and knowledge was available" to the company, but may not go beyond that to offer opinions on the company's intent or state of mind). Kittel's last opinion—that "it is apparent that Suzuki does not believe they can rely upon riders to identify a front brake issue during a pre-ride check"—falls into this category. [DN 234-10 at 4]. This opinion directly implicates Defendants' state of mind and crosses the line from explaining what information was available to Defendants and what that information suggests to the impermissible ground of opining on what Defendants believed. Though there may be a factual basis underpinning this opinion, the jury is equally capable of looking at the evidence and coming to such a conclusion. Such testimony is properly excluded.

### E. Motorcycle Riders' Perception

Finally, Defendants argues that Kittel's opinion about how Schall may have perceived the performance of his front brakes should be excluded. [DN 179 at 17–21]. Kittel, in his supplemental report, reached the following conclusion:

> [I]t is foreseeable that a rider could be operating a vehicle with diminished braking capability without realizing it until they needed to stop or slow quickly. In this scenario it is understandable that a rider would perceive the brake system to have

13

> suddenly lost braking capability and may describe the incident as a "sudden failure" of the front brakes.

[DN 234-10 at 3]. Defendants maintain that Kittel "should not be permitted to offer this opinion to the jury because it is sheer speculation that directly contradicts the evidence and is outside his area of expertise." [DN 179 at 18]. The Court will address each argument in turn.

Defendants' argument that Kittel's opinion is pure speculation and is in direct contradiction to the available evidence is without merit. Defendants seem to hang their argument on the fact that another one of Schall's experts, Jeffrey Hyatt, testified in his deposition that the recall condition causes gas to generate slowly, causing a slow onset of diminished braking capacity. The suggestion that Kittel's opinion directly contradicts that of Hyatt is inaccurate. Instead, Kittel's opinion builds on Hyatt's testimony and reconciles the slow onset of diminished brake capacity with Schall's narrative of the incident in which he describes a sudden loss of braking power. Kittel's opinion is premised upon both his expertise and experience, as well as his review of incident reports detailing riders' experiences with diminished braking power, thus it is not speculative. Further, it is not contradictory to the evidence before the Court. If Defendants believe the basis for Kittel's opinion is scant, that is an issue of weight best suited for cross-examination. *See Poulter v. Cottrell, Inc.*, No. 12-C-01071, 2014 WL 5293595, at *2 (N.D. Ill. June 24, 2014).

Defendants also argue that such an opinion is outside of Kittel's area of expertise. In particular, Defendants premise this argument on Kittel's admission that he is not a human factors expert. However, this admission is not determinative of the issue. As discussed above, practical experience may well form the basis of an opinion. *See First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 333–35 (6th Cir. 2001) (recognizing that an expert's opinion being derived from practical experience does not render it excludable under *Daubert*). Kittel has extensive experience

14

in the operation of motorcycles based on his thirty years of riding and racing experience. Based on this experience, Kittel can appropriately opine that a rider may not perceive a slowly diminishing braking capability on his or her motorcycle because planned stops do not require significant brake pressure—such as approaching a stop sign or traveling in normal traffic. Kittel further explains that when confronted with an unexpected or emergent situation requiring immediate, significant brake pressure, that rider may well believe that there has been a sudden and total loss of braking capability. There appears to be no reason at this time to exclude him from testifying about such.

### IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to exclude the testimony of Mark Kittel [DN 179] is **GRANTED in part and DENIED in part** consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

March 9, 2020

cc: counsel of record