UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:14-CV-00074-JHM

DEREK SCHALL                                                              PLAINTIFF

V.

SUZUKI MOTOR OF AMERICA, INC.,
SUZUKI MOTOR CORP., and
NISSIN KOGYO CO., LTD.                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Exclude Plaintiff's expert witness, Rudy Limpert. [DN 193]. Fully briefed, this matter is ripe for decision.

**I.   BACKGROUND**

Plaintiff Derek Schall was injured in a motorcycle accident on July 19, 2013, in Daviess County, Kentucky. [DN 5 ¶ 39]. He alleges that the accident was caused by defects in the front brake master cylinder on the motorcycle, a 2007 Suzuki GSX-R600. [*Id.*] He sued Suzuki Motor Corporation ("SMC"), the manufacturer of the motorcycle; Suzuki Motor of America, Inc. ("SMAI"), the importer of the motorcycle; and Nissin Kogyo Co., Ltd. ("Nissin"), the manufacturer of the front brake master cylinder, alleging strict products liability and negligence. [*Id.* ¶ 41–52].

**II.  STANDARD OF REVIEW**

Defendants move the Court to exclude Plaintiff's expert, Rudy Limpert, arguing that his opinions do not meet the standards of Federal Rules of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the

expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). "Rule 702 guides the trial court by providing general standards to assess reliability." *Id.*

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. *Kumho Tire*, 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular

expertise, and the subject of his testimony." *Id.* at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citation omitted); *see also Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 5633216, at *1–2 (W.D. Ky. Nov. 22, 2017).

### III. DISCUSSION

Schall retained Dr. Rudy Limpert to provide expert testimony related to the front brake master cylinder. Dr. Limpert opined that the brake master cylinder suffered from design defects including: (1) the compensating/reservoir port location which prevented gases from escaping the brake fluid reservoir and the improper utilization of a zinc brake master cylinder piston which caused corrosion and the production of hydrogen gas; (2) the brake master cylinder contained a manufacturing defect in that the pistons were dipped into the protective coating without tipping or adjusting the baskets to ensure a proper coating; and (3) Suzuki's investigation of the reduced braking phenomenon and recall were too slow. Defendants now move to exclude the testimony of Dr. Limpert arguing that Dr. Limpert is not qualified to offer these opinions, the opinions themselves lack a sufficiently reliable basis, and the testimony is not relevant. [DN 193 at 2].

**A. Qualification to Offer Opinions**

Defendants maintain that while Dr. Limpert's background and expertise is in mechanical engineering, he does not possess the knowledge, skill, experience, training, or education that qualifies him to offer opinions about whether the brake master cylinder was defectively designed due to corrosion and hydrogen gas generation and caused the accident, whether the brake master cylinder was defectively manufactured due to non-uniform surface treatment creating corrosion and hydrogen gas and caused the accident, whether non-brake fluid material was generated by

3

corrosion in the brake master cylinder and caused the accident, or whether Defendants' product investigation and recall were too slow. According to Defendants, Dr. Limpert has never designed nor manufactured a motorcycle brake master cylinder or worked with a brake system with zinc components; never been retained to opine regarding corrosion within a motorcycle brake master cylinder; only worked on a single case involving a manufacturing defect in a brake master cylinder of a Harley-Davidson; no experience (with one exception) concerning a compensating port; and is not an expert in corrosion or metallurgy. Thus, Defendants argue that Dr. Limpert lacks expertise as a brake master cylinder designer or manufacturer, and as a result, he is not qualified to offer opinions about the design and manufacture of a brake master cylinder. [DN 193 at 14–15]. The Court disagrees.

Dr. Limpert is qualified to offer expert opinions in this case. The record reflects that Dr. Limpert has a Ph.D. in Mechanical Engineering from the University of Michigan. For the majority of his career, he analyzed braking systems. Prior to receiving his Master's Degree in Mechanical Engineering and his Ph.D., Dr. Limpert worked as an engineer designing automotive hydraulic brake systems. After graduation, Dr. Limpert worked as a safety standards engineer for National Highway Traffic Safety Administration ("NHTSA") in the area of accident avoidance, including braking and vehicle handling and later taught engineering at the University of Utah. While at the university, Dr. Limpert directed the multi-disciplinary accident investigation team sponsored by the United States Department of Transportation. He also led a research project sponsored by the NHTSA to develop and design advanced hydraulic brake systems for passenger cars. Since 1981, Dr. Limpert has worked in the area of brake design and safety, as well as accident reconstruction. He has conducted numerous seminars for SAE International, previously known as the Society of Automotive Engineers, teaching brake design and safety to automotive engineers. He has testified

4

in numerous brake design and manufacturing cases. Dr. Limpert recently authored the third edition of his book, *Brake Design and Safety*, which is a resource utilized by automotive engineers, technical consultants, accident reconstruction experts, and lawyers to help understand the design of brake systems, the analysis of braking performance, and product liability issues. [DN 238, Limpert Report at 2]. Thus, Dr. Limpert is a mechanical engineer with special expertise in brake design. Given his knowledge, skill, experience, training, and education, he is qualified to proffer an expert opinion on mechanical engineering topics, as well as brake design and safety.

Furthermore, the fact that Dr. Limpert never personally designed or manufactured a brake master cylinder for a motorcycle prior to his opinions rendered in this case does not disqualify him as an expert. "The federal courts in a number of product liability cases involving engineering experts have permitted an expert witness with general knowledge to give expert testimony where the subject of that testimony related to such general knowledge but the expert had no specialized knowledge of the particular product." *Burke ex rel. Burke v. U-Haul Int'l, Inc.*, No. 3:03CV-32-H, 2006 WL 3043421, *4 (W.D. Ky. Oct. 20, 2006) (court permitted expert qualified in vehicle dynamics to opine how a tow dolly reacted to an accident, even though the expert had no particular experience with tow dollies) (citing *DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988)); *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 455 (6th Cir. 2013) ("[W]e will not require [an expert] to have a specialized knowledge of firearms to offer opinions" in a firearm design and manufacturing defect case). The Court considers a proposed expert's "full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); *see also Brooks v. Caterpillar Global Mining Am., LLC*, No. 4:14CV-00022-JHM, 2016 WL 276126, at *3 (W.D. Ky. Jan. 21, 2016).

The Court finds that Dr. Limpert's knowledge in the fields of mechanical engineering and brake design and safety qualifies him to offer opinions about whether the design or manufacture of brake master cylinder on the Suzuki GSX-R rendered it defective and unreasonably dangerous. Dr. Limpert's lack of practical experience designing or manufacturing brake master cylinders on motorcycles is an issue of weight best suited for cross-examination. *See Poulter v. Cottrell, Inc.*, No. 12-C-01071, 2014 WL 5293595, at *2 (N.D. Ill. June 24, 2014); *Palatka*, 535 F. App'x at 454. Furthermore, Defendants have not shown why Dr. Limpert's vast experience in the automotive industry is not transferable to the motorcycle industry. *See In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 452 (W.D. Ky. 2011).

**B. Relevance**

In a products liability case, "[n]egligence and strict liability theories of recovery overlap to the degree that, in either instance, the plaintiff must prove the product was defective and the legal cause of the injury." *Shea v. Bombardier Recreational Products, Inc.*, No. 2011-CA-000999-MR, 2012 WL 4839527, at *4 (Ky. Ct. App. 2012) (citing *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996)); *see also Hinken v. Sears Roebuck and Co.*, No. 13CV-283-HRW, 2015 WL 165027, at *3 (E.D. Ky. Jan. 13, 2015); *Yonts v. Easton Tech. Prods., Inc.*, No. 3:11-CV-535-DJH, 2015 WL 3408937, at *5 (W.D. Ky. May 27, 2015). "The ultimate question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *Yonts*, 2015 WL 3408937, at *5 (quoting *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780, 782 (Ky. 1984)).

Defendants contend that Dr. Limpert's expert opinion should be excluded contending that he cannot prove that any defect was the cause of his accident. Specifically, Defendants argue that

Dr. Limpert's opinions are irrelevant because he admits he undertook no testing or analysis to show that the alleged defective conditions were present at the time of the accident or caused the accident. [DN 193 at 22–23]. The Court will address Defendant's argument with respect to Dr. Limpert's independent testing of the brake master cylinder in section C of this opinion.

The Court finds that Dr. Limpert's opinion will aid the jury in determining whether the brake master cylinder suffered from a design or manufacturing defect. In his report, Dr. Limpert discussed the design and safety of a hydraulic brake system, including the purpose of the compensating port in the master cylinder. [DN 238-9 at 149, Limpert Report at 3]. Dr. Limpert opined that the subject front brake master cylinder suffered from both design and manufacturing defects. Specifically, Dr. Limpert opined that the "the subject master cylinder the compensating port is located at the 3 o'clock position and not at the 12 o'clock position as required by competent safety-oriented engineering brake design practices." [*Id.*]. According to Dr. Limpert, this condition did not permit gases from the "working" brake fluid to escape into the brake fluid reservoir. [*Id.*]. Dr. Limpert also indicated that another design defect "is that the piston in the brake master cylinder itself creates the dangerous gas in the brake fluid." [*Id.*]. Finally, Dr. Limpert opined that Defendants failed to use a reasonably prudent method in placing a coating on the brake master cylinder piston, resulting in an insufficient coating of the pistons. [*Id*. at 4]. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Relevant evidence is admissible under Federal Rule of Evidence 402. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 468 (6th Cir. 2012). Dr. Limpert's opinion as to the existence of design and manufacturing defects of the brake master cylinder is directly relevant to the key issues of this case.

7

**C. Reliable Basis**

Defendants seek to exclude the expert testimony of Dr. Limpert arguing that his opinions lack a sufficiently reliable basis. Defendants argue that Dr. Limpert should not be permitted to testify because he never performed actual testing, analysis, experiments, or calculations to support his opinions regarding the alleged defects in the brake master cylinder or the cause of the accident. Specifically, Defendants maintained that Dr. Limpert failed to perform testing (1) to show that corrosion or hydrogen was present in the brake master cylinder at the time of the accident; (2) to show that gas was generated in the brake master cylinder or was unable to be purged and caused Schall's accident; (3) to show that the brake master cylinder piston in Schall's GSX-R was one of the five to ten percent with non-uniform surface treatment and caused the accident; (4) to show the composition or origin of the alleged "matter" the brake master cylinder and caused the accident; and (5) to show that the brake did not work when applied. [DN 193 at 18–19]. Additionally, Defendants maintain that Dr. Limpert failed to review the deposition transcripts of first responders or investigating officers and knew little about the subject GSX-R. [*Id*. at 19]. According to Defendants, all Dr. Limpert has done to support his opinions is inspect the GSX-R and accident site, review photographs of the GSX-R, review discovery documents and depositions selected by Plaintiff's attorney, and talk with Plaintiff's attorney and other paid experts. [*Id*. at 16–17].

**1. Corrosion, Hydrogen Generation, and Defect**

"Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as the 'expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592). "'[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'"

8

*Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152).

The Court recognizes that "*Daubert* attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009). However, the *Daubert* factors do not constitute a definitive checklist or test. Rather, the "gatekeeping inquiry must be 'tied to the facts' of a particular case," depending on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150; *see also Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 430 (6th Cir. 2007). Depending on the facts of a given case, it is well within a district court's discretion to find an expert's opinion reliable although he has conducted no testing. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 668–69 (6th Cir. 2000) ("The district court, in its discretion, could have decided that Richardson's failure to test his theories went to the weight of his testimony regarding defects in the Bronco II, not to its admissibility."); *Jacobs v. Tricam Indus., Inc.*, No. 10-CV-11469, 2011 WL 3957667, at *4 (E.D. Mich. Sept. 8, 2011) (finding that "testing is not required in every case, particularly where, as here, the expert conducted an examination of the physical evidence"); *Wendorf v. JLG Indus., Inc.*, No. 08-CV-12229, 2010 WL 148255, at *4 (E.D. Mich. Jan. 11, 2010) (finding expert's failure to test goes to the weight of the testimony); *Williams v. Gen. Motors Corp.*, No. 1:03-CV-02060, 2007 WL 3232292, at *2 (N.D. Ohio Oct. 30, 2007) ("Mr. Rosenbluth has relied on various sources, including academic and government studies. His failure to perform his own independent tests or studies of his theories goes to the weight of his testimony, not to its admissibility."); *see also Potts v. Martin & Bayley, Inc.*, No. 4:08-CV-00015-JHM, 2011 WL 4703058, at *6 (W.D. Ky. Oct. 4, 2011).

A review of Dr. Limpert's report and deposition indicates that he relied on an inspection of the subject motorcycle and of the accident site on April 14, 2014; photographs of the subject brake master cylinder from the April 14, 2014; results from tests performed on the subject brake master cylinder and component parts by other experts; the other experts' reports and depositions; the deposition of Schall and other witnesses; discovery documents including "documents authored by one of the Suzuki entities or . . . Nissin Kogyo;" and the recall notice. [See DN 238-9 at 9, 34]. This information, combined with his ample experience in mechanical engineering and brake design and safety, helped him conclude that both design and manufacturing defects are present in the brake master cylinder. Dr. Limpert followed an established analytical path to arrive at a reasonable conclusion based on his observations of data obtained by him and other experts, review of test results, research, and expertise. Dr. Limpert's reliance on other experts' testing on the subject GSX-R's front brake master cylinder and their opinions goes to the weight and credibility of the evidence, not admissibility. Therefore, contrary to Defendants' argument, the case law does not mandate exclusion of Dr. Limpert's opinion because he utilized other experts' tests and data or because he did not independently test some of the components of the GSX-R's brake master cylinder.

Defendants also object to Dr. Limpert's report and proposed testimony arguing that his opinions and methodology have not been subject to peer-review. [DN 193 at 21]. Defendants further argue that Dr. Limpert's opinions do not have a known or potential error rate, have no standards control, and were developed solely for use in this litigation. [*Id.*]. Defendants contend that Dr. Limpert's opinions trigger the Sixth Circuit's cautionary "red flags" such as "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." [*Id.* at 22 (citing *S.S. v. Leatt Corp.*, No. 1:12CV-483, 2013 WL

3714142 (N.D. Ohio July 15, 2013)].

As noted by the United States Supreme Court, "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exhaustively applies to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "The fact that a witness's 'opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not [necessarily] render them unreliable and inadmissible.'" *Scanlan v. Sunbeam Prod., Inc.*, No. 3:12-CV-00009-CRS, 2018 WL 476165, at *3 (W.D. Ky. Jan. 18, 2018) (quoting *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001)). The Court's objective is "'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Billone v. Sulzer Orthopedics, Inc.*, No. 99-CV-6132, 2005 WL 2044554, at *2 (W.D.N.Y. Aug. 25, 2005) (quoting *Kumho Tire*, 526 U.S. at 151).

Dr. Limpert's opinion is not only based on his experience in the brake industry, but also generally accepted mechanical engineering standards. In other words, the principles and methods employed by Dr. Limpert were not based on his *ipse dixit*, but appear to be a reliable method of assessing the condition of the brake master cylinder. *See*, *e.g.*, *Ferris v. Tenn. Log Homes, Inc.*, No. 4:06-CV-35-JHM, 2009 WL 1506724, at *10 (W.D. Ky. May 27, 2009); *Zerega Ave. Realty Corp. v. Hanover Ins. Co.*, No. 04 CIV. 9651(KNF), 2006 WL 1343643, at *4 (S.D.N.Y. May 17, 2006) ("Drawing upon one's educational background and practical experience is a reliable methodology through which to develop opinions and reach conclusions about scientific, technical, or other areas of specialized knowledge.").

## 2. Product Investigation and Timeliness of Recall

Defendants seek to exclude Dr. Limpert's opinion that Suzuki's investigation into the reduced brake phenomenon and its issuance of a recall was untimely. [DN 193 at 20-21]. Defendants maintain that this testimony is improper because the basis for Dr. Limpert's opinions is derived solely from his summary of Defendants' internal documents. Additionally, Defendants argue that Dr. Limpert improperly attempts to opine about the Defendants' knowledge or state of mind concerning the brake phenomenon. [*Id*. at 11, 20]. In response, Plaintiff argues that Dr. Limpert's testimony will educate the jury as to when a reasonably prudent engineer should have detected a problem with the brake master cylinder. [DN 238 at 18–19].

In his October 13, 2017, Report, Dr. Limpert opined

> Suzuki was aware their brakes were defective long before they conducted a recall. It is inconceivable to me they would allow this dangerous condition to exist in vehicles already sold to the public, and to continue to sell new motorcycles to the public while investigating the defect. It is my opinion the defect in the design is a serious safety issue and the failure of Suzuki to immediately warn the public and conduct a recall constitutes a reckless disregard for the safety of the public.

[DN 193-3 at 2]. Interestingly, Dr. Limpert removed this opinion from his April 16, 2018, report. [DN 238 at 19]. A review of his deposition reveals that Dr. Limpert believed that he had not deleted any opinions that were contained in his October 13, 2017, report. When questioned briefly by Plaintiff's counsel, Dr. Limpert testified that the October 2017 and the April 2018 reports fairly and accurately represent his opinions in the case. [Limpert Dep. at 115, DN 238-9 at 115].

### a. Summary of Documentary Evidence

Defendants' challenge to Dr. Limpert's opinions regarding Suzuki's investigation is premised on their contention that Dr. Limpert's opinions and testimony are no more than a summary of documentary evidence that the jury could review themselves. As stated above, "'an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative

based upon record evidence.'" *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (quoting *Highland Capital Mgmt., LP v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)). To the extent such evidence is admissible, it is "properly presented through percipient witnesses and documentary evidence." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015). "However, as opposed to providing a mere factual narrative, [an] expert is allowed to articulate the 'factual underpinning' upon which he bases his opinion." *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 WL 4439606, at *12 (N.D. Ga. Feb. 25, 2019) (citing *Duling v. Domino's Pizza, LLC,* No. 1:13-CV-01570-LMM, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015)).

The Court reviewed Dr. Limpert's report and deposition and finds that his testimony is not offered "solely for the purpose of constructing a factual narrative." *In re Fosamax*, 645 F. Supp.2d at 192. Mechanical engineering and brake design and safety are specialized matters not within the province of an ordinary juror. *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1149 (D. Colo. 2006). Dr. Limpert "drew extensively on his specialized knowledge and experience to review, analyze and summarize available information" in an effort (1) to evaluate the cause of the alleged manufacturing defect and to interpret and summarize the information he collected through this process to assist the jury in determining whether Defendants breached their duty and (2) "to reach conclusions regarding" what he believes Defendants knew or should have known regarding the brake master cylinder at given points in time. *Cook*, 580 F. Supp. 2d at 1149–50. Just as with Drs. McLellan and Balk, it is also proper for Dr. Limpert to consider documentary evidence, pre-accident investigative reports, and internal correspondence to evaluate the causes of the alleged defect and the Defendants' conduct and to interpret and summarize the information he collected through this process to assist the jury in determining whether Defendants breached their post-sale

duty to warn of the defect. *Id.*; *Mahaney on behalf of estate of Kyle v. Novartis Pharm. Corp.*, No. 1:06-CV-00035-R, 2011 WL 13209806, at *4 (W.D. Ky. Sept. 12, 2011). Neither Dr. Limpert's deposition nor his report suggests that he intends to merely read or "regurgitate" the evidence as the expert in *In re Fosamax*.

### b. Motive, Intent, and State of Mind

"Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016) (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531); *see also In re Seroquel Prods. Liability Litig.*, No. 6:06-MD-1769-ORL, 2009 WL 3806436, at *4–5 (M.D. Fla. July 20, 2009) ("The Court determines that [the expert] may not render any opinions regarding the state of mind, intent, motives or ethics of [the corporation] or any of its employees. These matters are not the proper subject of expert opinion; they are matters to be argued by counsel based on the evidence."); *Bouchard v. Am. Home Products Corp.*, No. 3:98-CV-7541, 2002 WL 32597992, at *6 (N.D. Ohio May 24, 2002) (expert's statements about corporate intent were inadmissible). In general, courts have found that this type of "'testimony is improper . . . because it describes lay matters which a jury is capable of understanding and deciding without the expert's help'" *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 718.

The Court disagrees with Defendants' contention that Dr. Limpert speculates as to Defendants' state of mind, subjective motivation, or intent when he opines on what information was available to Defendants and what Defendants knew or should have known both pre- and post-sale. Dr. Limpert reviewed both academic materials and an extensive historical record—including discovery documents and "documents authored by one of the Suzuki entities

14

or . . . Nissin Kogyo" and the recall notice—and, based upon his qualifications, opines on what he believes Defendants knew or should have known regarding the brake master cylinder. "This is not testimony that goes to motive or intent." *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 719; *see also Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1333 (M.D. Fla. 2015) ("[T]o the extent [an expert] merely discusses what information was available and possessed by [the defendant] prior to [the] procedure, this testimony is helpful and relevant to determining whether [the defendant] acted reasonably and does not improperly comment on [the defendant's] 'state of mind.'"); *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 459 (W.D. Ky. 2011) (permitting expert testimony regarding "what Yamaha knew and when"). Further, expert testimony on the state of scientific or industrial knowledge available to Defendants is relevant to the issues of the existence of a design or manufacturing defect. *In re E.I. du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d at 711. Similarly, testimony regarding what information was available and possessed by Defendants prior to the accident is helpful and relevant to the issue of post-sale failure to warn. However, in as much as Dr. Limpert offers opinions on the intent, motives, or state of mind of the Defendants, it is not relevant or admissible based on this case law. *Tillman*, 96 F. Supp. 3d at 1333 (expert may opine "on what information and knowledge was available" to the company, but may not go beyond that to offer opinions on the company's intent or state of mind).

Additionally, "[p]ersonal views on corporate ethics and morality are not expert opinions." *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007); *see In re Rezulin Products Liability Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004) ("While [Defendants] may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of their actions simply is not relevant" to this lawsuit). Thus, in as much as

Dr. Limpert intends to testify that "it is inconceivable" to him that Defendants "would allow this dangerous condition to exist in vehicles already sold to the public, and to continue to sell new motorcycles to the public while investigating the defect," the Court believes this "opinion" sounds in corporate ethics and morality and is properly excluded. [DN 193-3 at 2].

Furthermore, to the extent that Dr. Limpert opines on Defendants' corporate conduct in issuing recalls, Schall fails to establish how Dr. Limpert is qualified to opine on this subject. Specifically, Dr. Limpert stated in his October 2017 report: "It is my opinion the defect in the design is a serious safety issue and the failure of Suzuki to immediately warn the public and conduct a recall constitutes a reckless disregard for the safety of the public." Dr. Limpert is an expert in the fields of mechanical engineering, brake design and safety, and accident reconstruction and his expertise does not include experience in the manner in which corporations react to potential safety issues with their products. *Tillman*, 96 F. Supp. 3d at 1333 (expert was not qualified to opine regarding "Bard's corporate conduct or how Bard should have responded to the data in its possession" because his areas of expertise did not include knowledge or even experience in the manner in which corporations react). Dr. Limpert possesses the qualifications to opine that the design defect is a serious safety issue; however, the timeliness of the Defendants' response to the detection of a safety hazard—that Defendants should have immediately warned the public and conducted a recall—must be addressed by another expert.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Exclude the testimony of Dr. Rudy Limpert [DN 193] is **GRANTED in part and DENIED in part** consistent with this opinion.

cc: counsel of record

Joseph H. McKinley Jr., Senior Judge
United States District Court

March 9, 2020