UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:14-CV-00074-JHM

DEREK SCHALL                                                                                          PLAINTIFF

V.

SUZUKI MOTOR OF AMERICA, INC.,
SUZUKI MOTOR CORP., and
NISSIN KOGYO CO., LTD.                                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Suzuki Motor of America, Inc. ("SMAI") and Suzuki Motor Corporation's ("SMC") Motion to Exclude Plaintiff Derek Schall's expert witness, Peter Sullivan. [DN 180]. Fully briefed, this matter is ripe for decision.

### I.    BACKGROUND

Schall was injured in a motorcycle accident on July 19, 2013, in Daviess County, Kentucky. [DN 5 ¶ 39]. He alleges that the accident was caused by defects in the front brake master cylinder on the motorcycle, a 2007 Suzuki GSX-R600. [*Id.*]. He sued SMC, the manufacturer of the motorcycle; SMAI, the importer of the motorcycle; and Nissin Kogyo Co., Ltd., the manufacturer of the front brake master cylinder, alleging strict products liability and negligence. [*Id.* ¶ 41–52].

### II.    STANDARD OF REVIEW

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge

acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). "Rule 702 guides the trial court by providing general standards to assess reliability." *Id.*

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 595 (1993). The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. *Kumho Tire*, 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citation omitted). *See also Brooks v.*

*Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 5633216, at *1–2 (W.D. Ky. Nov. 22, 2017).

### III. DISCUSSION

Schall retained Sullivan to provide expert testimony on motorcycle operation. [DN 247 at 4]. Defendants now request that the Court exclude Sullivan's testimony based on Sullivan's opinions in three areas: "(1) the deceleration capability of [Schall's] motorcycle and its causal role in the crash, (2) the reasonableness of [Schall's] actions or perceptions, and (3) Suzuki's corporate knowledge and conduct." [DN 180 at 2].

**A. The Deceleration Capability of Schall's Motorcycle and its Causal Role in the Crash**

Sullivan opines that Schall's motorcycle was not capable of "providing adequate or compliant brake force and corresponding deceleration rates" because it was only capable of producing approximately a -0.1g deceleration rate. [DN 247-9 at 14–15]. Sullivan makes three assumptions that Defendants argue are inaccurate:

(1) the motorcycle's laden weight is 535 pounds;
(2) that he was applying about 55 pounds of force to rotate the front wheel during his testing; and
(3) the front brake lever was pushed in as far as it reasonably would go until its movement was limited by contact with the rider's ring or pinky finger

[*Id.*, DN 180 at 5].

"An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (citation omitted). "However, mere 'weaknesses in the factual basis of an expert witness' opinion . . . bears on the weight of the evidence rather than on its admissibility." *Id.* (citation omitted); *see also Wash. v. Kellwood Co.*, 105 F. Supp. 3d 293, 306 (S.D.N.Y. 2015) ("Unless the information or assumptions that plaintiff's expert [] relied on were so unrealistic and contradictory as to suggest bad

3

faith, inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible.")

First, Sullivan, in his deposition, said that 535 pounds is the weight of the motorcycle without the rider. [DN 247-8 Sullivan Dep. 206:4–15]. The weight of the motorcycle is used in calculating the g-force. [*Id.* at 73:17–23]. His report, however, says that the motorcycle's laden weight is 535 pounds. [DN 247-9 at 14]. The vehicle specification for Schall's motorcycle states that the motorcycle's weight is 354 pounds. [DN 180-3 at 3]. Schall's response brief does not explain Sullivan's contradictory answer at his deposition. [DN 247 at 9–10]. However, the inconsistency between his report and the deposition goes to the weight of the evidence and not the admissibility. *See In re Yamaha Motor Corp. Rhino ATV Prods. Litig.*, 816 F. Supp. 2d 442, 461–62 (W.D. Ky. 2011) ("Miscalculations and inaccuracies . . . go to the weight of the evidence and not its admissibility.").

Second, at the April 2014 inspection of Schall's motorcycle, the front and rear tires of the motorcycle were perched on stands. [DN 180 at 4]. Sullivan attempted to rotate the front tire by hand while another person squeezed the front brake lever. [*Id.* at 4–5]. Three years later, Sullivan calculated that he applied 55 pounds of force by watching video from the 2014 inspection and re-creating his actions in the video on a different motorcycle. [DN 180 at 6]. Schall asserts that "this testing method is sufficiently reliable." [DN 247 at 11]. There is no evidence that this method is generally accepted in Sullivan's field. He also has failed to adequately document the testing conditions, data, and the rate of error, so that the test could be repeated and its results verified and critiqued. *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 304 (6th Cir. 1997), *abrogated on other grounds by Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir. 1998) (finding that expert's opinion could not be based on good science when, among other things, the expert "failed to

adequately document testing conditions and the rate of error so the test could be repeated and its results verified and critiqued"). The testing that Sullivan conducted to determine how much force he applied appears at this time to be unreliable. The Court will conduct a hearing before excluding Sullivan's testimony regarding his test to calculate precisely how much force he applied, but he may use the test to explain that "you should not be able to move the motorcycle wheel while the brake is fully engaged." [DN 247 at 10].

Third, Defendants take issue that Sullivan calculated the deceleration rate of Schall's motorcycle based on the assumption that Schall could deploy the brake lever only to a position of 0.8 inches from the grip because the brake lever would be inhibited by a rider's ring and pinky fingers that remained burled on the grip. [DN 247-9 at 13–14, DN 180 at 8]. Sullivan determined from Schall's deposition that he generally used two fingers on the brake lever. [DN 247-9 at 11]. But when Schall was asked about how many fingers that he used to apply the brake on the night of the accident, Schall said that he did not recall but felt like he would want to use two fingers on the brake lever. [DN 180-4 Pl. Dep. 92:9–22]. Sullivan asserts that use of one or two fingers is consistent with the vast majority of technique and training manuals but does not identify these manuals. [DN 247-9 at 13]. However, he does say that it is consistent with his over forty years of experience as a motorcyclist. [*Id.*]. So, even if these unknown manuals are not enough to establish the reliability of Sullivan's opinion, Sullivan has relied on his experience and Schall's deposition to come to a reasonable assumption. *See Seiber v. Estate of McRae*, No. 1:11-CV-00111-TBR, 2013 WL 5673601, at * 4 (W.D. Ky. Oct. 17, 2013) ("When a witness relies primarily on his or her experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

Ultimately, Sullivan's determination that the motorcycle was capable of a -0.1g deceleration is partly based upon his questionable test that he used to determine that he applied 55 pounds of force. Sullivan stated in his deposition that "if the motorcycle weighs 535 pounds, that's 1g. So if it takes 55 pounds to spin it, it's roughly a tenth of a G." [DN 247-8 at Sullivan Dep. 73:14–23]. As such, unless the Court can be convinced later of the reliability of his test, Sullivan's opinion that the deceleration rate is -0.1g is excluded; but, again, he can opine generally as to the deceleration capability of the motorcycle.

Sullivan also calculated the deceleration rate based on brake lever force measurements by reviewing the amount of brake lever force applied at various lever travel intervals measured during the inspection, and then referenced a Suzuki graph depicting expected front brake performance expressed in terms of lever force versus deceleration rate. [DN 247-9 at 61]. The brake lever force testing was conducted using two different brake levers: an original equipment (OEM) lever and an aftermarket lever that Schall had installed and was using at the time of the crash. [*Id.* at 12]. Both levers have six available settings that adjust the lever at various distances from the handlebar. [DN 247-9 at 45]. On the aftermarket lever, Setting 1 is closest to the handlebar and Setting 6 is the farthest. [DN 180-2 Sullivan Dep. 154: 3–13]. On the OEM lever, Setting 6 is closet to the handlebar and Setting 1 is farthest. [*Id.* at 195:23–196:2]. Schall's aftermarket lever was at Setting 2 at the time of the accident. [*Id.* at 114:13–25]. Sullivan determined that Setting 3 on the OEM lever was comparable to Setting 2 on the aftermarket lever in terms of distance from the handlebar. [*Id.* at 158:3–7]. Sullivan states that the aftermarket lever on Setting 2 and the OEM lever on Setting 3 produced 4.9 pounds of force in Schall's motorcycle when applied to a position 0.8 inches from the handlebar. [DN 247-9 at 44, 61]. At his deposition, Sullivan admitted an error when he said that the force meter reading of 4.9 pounds on the OEM lever was generated on Setting 6, instead of Setting 3.

[Sullivan Dep. 203:10–19, 215:22–216:2]. Not only does such a miscalculation go to the weight of the evidence and not its admissibility, Sullivan's mistake is a moot point because his report says, "regardless of which lever was tested, regardless of the adjustment setting it was on when tested, the brake lever was 'spongy' in its operation . . . ." [DN 247-9 at 12]. Sullivan's methodology for calculating deceleration rate based on brake lever force measurements does not warrant exclusion.

Defendants additionally argue that Sullivan should not be permitted to offer an opinion that the motorcycle's deceleration rate capability does not meet the federal safety standards. [DN 180 at 12–13]. They assert that Sullivan frames his opinion that the motorcycle was able to produce a -0.1g deceleration rate, even though his calculations pertained only to Schall's front brake. Furthermore, Sullivan opines that "4.9 pounds of force or 21.9 newtons, would result in a deceleration rate on [Schall's motorcycle] of slightly more than 1m/s2, or approximately 1/3rd of the Federal Motor Vehicle Safety Standard (FMVSS) . . . ." [DN 247-9 at 61]. He agreed during his deposition that the combined deceleration rate of the front brake and the rear brake meets the federal standard. [DN 247-8 Sullivan Dep. 215:10–16]. Sullivan's determination that the deceleration rate does meet federal safety standards is also based on the -0.1g deceleration rate conclusion that the Court has already excluded for now. Therefore, unless the Court is convinced otherwise, Sullivan cannot offer an opinion that the motorcycle's deceleration rate does not meet federal safety standards.

Sullivan further states that "[i]t is my opinion that the brake system performance, as measured on April 14, 2014 was consistent with the defect condition as described in the recall, and was significantly underperforming, which likely caused or contributed to the subject crash." [DN 247-9 at 15]. He says that the opinion is "consistent with [Schall's] sworn testimony, consistent with the subject motorcycle and [Schall's] point of rest, and consistent with elements of the reconstruction of

7

the subject crash . . . ." [*Id.*]. Defendants argue that his opinion is not consistent with any of those factors or the balance of evidence, which makes his opinion speculative. [DN 180 at 13].

Defendants' disagreement with Sullivan's statement that his opinion is consistent with the evidence that he refers to goes to the weight of his opinion not the admissibility. Defendants will have an opportunity at trial to cross-examine Sullivan and/or present contrary evidence. Sullivan's opinion is not speculation because it is tied to the facts of this case as required under Rule 702.

**B. The Reasonableness of Schall's Actions or Perceptions**

Sullivan opines that Schall "acted reasonably and prudently under the circumstances when he decided to keep the motorcycle upright while continuing to attempt to slow or stop his motorcycle." [DN 247-9 at 11]. He also says, "it is understandable that [Schall] did not consciously and immediately recognize an excessively spongy brake lever condition . . . ." [*Id.* at 15].

Defendants argue that "Sullivan should not be allowed to testify that [Schall] acted 'reasonably and prudently' because he has no basis for stating that, under the circumstances [Schall] faced, riding into a cornfield was the most prudent option." [DN 180 at 19]. Sullivan opines that under the circumstances of needing more deceleration the best braking technique is to keep the motorcycle upright while braking. [DN 247-8 Sullivan Dep. 123:15–124:4]. He even said that his opinion was within the context of rider technique. [*Id.* at 123:23–24]. Sullivan's opinion is proper because he is an expert in motorcycle riding and the opinion is about Schall's technique. *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding that an expert's testimony that derived largely from his practical experience was both reliable and relevant). Sullivan provides consulting on motorcycles and has ridden motorcycles his entire adult life. [DN 247-8 Sullivan Dep. 108:21–109:1, DN 247-9 at 1–2]. For similar reasons, Sullivan can also opine on whether it was understandable for Schall not to recognize a spongy brake. [DN 180 at 19].

8

## C. Suzuki's Corporate Conduct and Knowledge

Sullivan opines that (1) Defendants "did not act reasonably and prudently under the circumstances, failed to enact the subject recall in a timely manner, and failed to take remedial action with regard to the subject 2007 Suzuki GSX-R600 . . . ." ; (2) Defendants' "management personnel acted with conscious disregard for public safety and Defendants['] management's conscious indifference, inability, and unwillingness to identify and recognize the inadequacies and malpractices within their own operations, created an extreme degree of risk of harm to the motoring public and to [Schall] . . . ."; and (3) "Defendants' management personnel likely had actual, subject awareness of the risks involved and knew or should have known or likely had actual, subjective awareness of the risks and dangers involved . . . ." [DN 249-9 at 16]. Defendants argue that this opinion is not the proper subject for expert testimony and should be excluded. [DN 180 at 24].

"An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704. District courts have a "wide, but not unlimited, degree of discretion in admitting or excluding testimony [that] arguably contains a legal conclusion." *U.S. v. Volkman*, 797 F.3d 377, 388 (6th Cir. 2015) (citation and internal quotation marks omitted). However, "testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach— is properly excludable under the Rules." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (citation omitted).

Sullivan's opinion that Defendants did not act reasonably or prudently, failed to enact a timely recall, and failed to take remedial action is permitted. As far as Sullivan's opinion on whether Defendants acted reasonably and prudently, he may opine on an ultimate issue such as this if his opinion does not extend to whether Defendants' conduct violated a law, statute, or regulation. *Cowden v. BNSF Ry. Co.* No. 4:08CV01534 ERW, 2010 WL 3306889, at *4 (E.D. Mo. Aug. 19,

9

2010) ("[Expert] may still opine ultimate issues such as whether Defendant acted prudently or provided Plaintiff with a reasonably safe work environment, so long as his opinions do not extend to whether Defendant's conduct actually violated certain laws or regulations."), *aff'd in part, rev'd in part*, 690 F.3d 884 (8th Cir. 2012).

As discussed previously, experts may rely on their experience as a basis of an opinion. In his deposition, Sullivan stated that his opinion on the timeliness of the recall is based on "being in the [transportation service industry] for over three decades and looking at when defects are discovered and how soon recalls follow them" combined with his "analysis of the documents reviewed and the admissions made by [SMAI] to [SMC] in Japan and all of those interactions with e-mails and the suggestions and all of the [SMAI] communications where they're trying to push the mother ship towards the recall. . . ." [DN 247-8 at 216:20–217:1–11]. Sullivan also has experience researching NHTSA recalls. [*Id.* at 217:13–18]. Considering that Sullivan does not intend to give an opinion on whether the recall was compliant with the law, his opinion is permissible based on his experience. [*Id.* at 217:19–218:2].

Sullivan's opinion that management acted with conscious disregard is a legal conclusion that invades the province of the jury and must be excluded. *Hayes v. MTD Prods., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. Sept. 6, 2007) (finding that the expert's report deviated from opinions to legal conclusions when the expert concluded that the accident was caused by a "systemic disregard for safety, at all levels" on the part of the defendant and by defendant's "reckless disregard for the safety of its consumers and gross negligence"); *see In re Heparin Prod. Liab. Litig.*, MDL No. 1953, 2011 WL 1059660, at *6 (N.D. Ohio Mar. 21, 2011) (finding that an expert could not testify "that the conduct of Defendants indicated that they 'consciously disregarded' the welfare of patients receiving their products").

Sullivan cannot opine on the motive, intent, or state of mind of Defendants. "Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent. In general, courts have found that this type of 'testimony is improper . . . because it describes 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *In re E.I. du Pont Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016) (citations omitted); *see In re Heparin Prod. Liab. Litig.*, 2011 WL 1059660, at *6, *8 (finding that an expert could not testify about the "knowledge, motivations, intent, or purposes of Defendants or their employees," nor could an expert "testify concerning the state of mind, intent, knowledge, purposes, or motivations of Defendants, its employees, or the FDA"). However, to the extent that Sullivan's opinion is not just an assertion but is tied to a specific fact in the case, he is permitted to testify about what Suzuki knew and when it knew it to assist a jury in understanding whether Defendants' actions were reasonable. *In re Yamaha Motor Corp.*, 816 F. Supp. 2d at 459 (permitting expert testimony regarding "what Yamaha knew and when"); *see also Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1333 (M.D. Fla. 2015) ("[T]o the extent [an expert] merely discusses what information was available and possessed by [the defendant] prior to [the] procedure, this testimony is helpful and relevant to determining whether [the defendant] acted reasonably and does not improperly comment on [the defendant's] 'state of mind.'").

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Exclude the testimony of Sullivan [DN 180] is **GRANTED in part and DENIED in part** consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

March 9, 2020

11