# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO: 4:14-CV-00074-JHM

DEREK SCHALL                                                                                      PLAINTIFF

V.

SUZUKI MOTOR OF AMERICA, INC.,
SUZUKI MOTOR CORP., and
NISSIN KOGYO CO., LTD.                                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Suzuki Motor of America, Inc. ("SMAI") and Suzuki Motor Corporation's ("SMC") Motion to Exclude Plaintiff Derek Schall's expert witness, William Kitzes. [DN 181]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Schall was injured in a motorcycle accident on July 19, 2013, in Daviess County, Kentucky. [DN 5 ¶ 39]. He alleges that the accident was caused by defects in the front brake master cylinder on the motorcycle, a 2007 Suzuki GSX-R600. [*Id.*]. He sued SMC, the manufacturer of the motorcycle; SMAI, the importer of the motorcycle; and Nissin Kogyo Co., Ltd., the manufacturer of the brake master cylinder, alleging strict products liability and negligence. [*Id.* ¶ 41–52].

### II. STANDARD OF REVIEW

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge

acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). "Rule 702 guides the trial court by providing general standards to assess reliability." *Id.*

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 595 (1993). The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. *Kumho Tire*, 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citation omitted). *See also Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 5633216, at *1–2 (W.D. Ky. Nov. 22, 2017).

### III. DISCUSSION

Schall retained Kitzes to provide expert testimony on product safety management. [DN 236 at 4]. Kitzes is a board-certified Product Safety Manager and Hazard Control Manger. [DN 236-8 at 5]. He has a certificate in Safety Management from the American Society of Safety Engineers, a certificate in Risk Communication from the Harvard School of Public Health, and is a member of the Human Factors and Ergonomics Society. [*Id.*]. For seven years, he worked at the United States Consumer Product Safety Commission. [*Id.*]. Defendants request the exclusion of all eight of Kitzes' opinions. [DN 181 at 6]. The Court addresses each group of challenges below.

**A. Kitzes' Opinions that "Suzuki Failed to Act as a Reasonably Prudent Manufacturer and Distributor" and "Acted with a Clear, Conscious and Willful Disregard for the Safety of GSX-R Riders"**

Defendants primary challenge to Kitzes' opinions that "Suzuki failed to act as a reasonably prudent manufacturer and distributor" and that "Suzuki acted with a clear, conscious and willful disregard for the safety of GSX-R riders" is that they are improper legal conclusions. [DN 181 at 7]. Kitzes' first opinion is that "Suzuki failed to act as a reasonably prudent manufacturer and distributor to adequately protect GSX-R riders from the devastating injuries from loss of brake pressure during the foreseeable and intended use of their motorcycles." [DN 236-8 at 15]. The Court closely reviewed the cases Defendants cite as support for the position that Kitzes may not testify as to whether Defendants failed to act as reasonably prudent manufacturers and distributors. While there are courts that conclude that Kitzes may not testify to such an opinion, the Court finds the following line of case law persuasive. The Western District of Kentucky has previously permitted Kitzes to testify about what a defendant knew and when. For example, in *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp, 2d 442, 459 (W.D. Ky. 2011), "Kitzes conclude[d] that Yamaha had knowledge of the [off road vehicle's] danger but avoided acting on its knowledge as would a reasonably prudent manufacturer." The court held that his testimony "could be helpful to the jury

3

and should be admitted" because it "could assist the jury by distilling disparate incident reports and analyzing how a large corporation such as Yamaha digests and processes such information." *Id.*; *see also Jackson v. E-Z-GO Div. of Textron Inc.*, 326 F. Supp. 3d 375, 401 (W.D. Ky. 2018) (finding that Kitzes' "proposed opinions that the alleged inadequacy of Defendant's warnings rendered the product 'unreasonably dangerous' and that they were a 'substantial factor' in causing Jordan's injuries" do not embrace legal issues). Here, Kitzes' testimony would be helpful to a jury to understand what a reasonable and prudent manufacturer would do given the circumstances of this case. Thus, Kitzes' opinion is admissible.

Kitzes also opines that "Suzuki acted with a clear, conscious and willful disregard for the safety of GSX-R riders" and that "[Suzuki] put their own economic interests over the safety of their customers." [DN 236-8 at 16]. "Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent. In general, courts have found that this type of 'testimony is improper . . . because it describes 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *In re E.I. du Pont Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016) (citations omitted); *see In re Heparin Prod. Liab. Litig.*, MDL No. 1953, 2011 WL 1059660, at *6, *8 (N.D. Ohio Mar. 21, 2011) (finding that an expert could not testify about the "knowledge, motivations, intent or purposes of Defendants or their employees" nor could an expert "testify concerning the state of mind, intent, knowledge, purposes, or motivations of Defendants, its employees, or the FDA"). Kitzes' opinion that Defendants acted with "clear, conscious and willful disregard" for rider safety is about Defendants' state of mind in addressing the brake master cylinder issue, and therefore inadmissible. Kitzes' opinion that "[Suzuki] put their own economic interests over the safety of their customers" is an opinion about Suzuki's motivations, which is also inadmissible.

Additionally, Kitzes opined that "Suzuki acted . . . contrary to their own code of conduct." [DN 236-8 at 16]. In reaching his conclusion, Kitzes reviewed the Suzuki Group Code of Conduct along with corporate documents and communications to determine if Suzuki complied with the Code of Conduct. [*Id.* at 16–80]. This is not a legal conclusion as Defendants argue, but rather Kitzes uses his product safety management knowledge, education, and experience coupled with his review of the evidence to provide an expert opinion regarding the facts of the case that will be helpful to the jury to determine whether Defendants conduct was reasonable. [DN 181-2, DN 238-8]; *see Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (holding that "testimony that does little more than tell the jury what result to reach" is a legal conclusion).

**B. Kitzes' Opinions about Suzuki's Awareness and the Timeliness of its Actions**

Defendants argue Kitzes' opinions about Defendants' awareness and the timeliness of their actions "are not within the scope of proper expert testimony and are not supported by any special knowledge or expert analysis." [DN 181 at 13].

Kitzes' opinion that "Suzuki failed to perform an adequate hazard identification and risk assessment to identify GSX-R defects and take adequate corrective action in a timely manner" is admissible. [DN 236-8 at 15]. Kitzes used his product safety management expertise to analyze how Defendants conducted their product safety management. [DN 236-8]. According to Kitzes, product safety management includes developing "procedures to identify hazards," "assess the risk," measures to "eliminate hazards," and "warn users of all hazards that have not been eliminated or adequately guarded" against. [*Id.* at 1–2]. Companies should also apply certain principles to ensure that products are reasonably safe. [*Id.* at 2]. In evaluating whether Defendants followed these principles, Kitzes reviewed depositions, Defendants' internal e-mails, and other corporate documents to determine if Defendants applied product safety management principles. [*Id.* at 16–80]. Kitzes applied his education and experience in product safety to the documents that he reviewed to determine if "Suzuki

5

performed an adequate hazard identification and risk assessment, and whether it took adequate corrective action." [*Id.* at 15]. As such, the opinion is admissible.

Kitzes also opined that "Suzuki was aware of the danger of GSX-R loss of brake pressure and failed to warn GSX-R riders of the potential for loss of brake pressure at least a year before the injuries to Derek Schall" and "Suzuki was aware that replacement of the master cylinder piston and repositioning the reservoir port would correct the defective and unreasonably dangerous master cylinder system, yet failed to make such correction to substantially reduce or eliminate the risk of injury in a timely manner." [DN 236-8 at 15–16]. While, as previously mentioned, an expert cannot opine on the knowledge, motive, or state of mind of the defendant, Kitzes can testify to what Defendants knew and when they knew it based on his expertise in product safety management to assist the jury in understanding whether Defendants' actions were reasonable. *In re Yamaha Motor Corp.*, 816 F. Supp. 2d at 459 (permitting expert testimony regarding "what Yamaha knew and when"); *see also Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1333 (M.D. Fla. 2015) ("[T]o the extent [an expert] merely discusses what information was available and possessed by [the defendant] prior to [the] procedure, this testimony is helpful and relevant to determining whether [the defendant] acted reasonably and does not improperly comment on [the defendant's] 'state of mind.'").

As such, Kitzes' opinions here are admissible because Kitzes is only discussing what Defendants were aware of, what they did, and did not do in the context of product safety management. Kitzes' opinion is helpful to the jury in determining whether Defendants acted reasonably in the context of product safety management. For similar reasons, Kitzes' opinion that Suzuki "knew [brake pressure loss] would happen when the bikes hadn't been used" and "resisted the notion that there were other conditions under which it could happen" are proper expert opinions. [DN 181-1 Kitzes Dep. 86:20–25].

**C. Kitzes' Opinions Regarding National Highway Traffic Safety Administration (NHTSA) Reporting**

Regarding Kitzes' opinions on Defendants' reporting to the NHTSA, Defendants argue that Kitzes "is not qualified to analyze Defendants' actions and investigation regarding front brake performance issues and he adds nothing of value to the jury's determination of the relevant issues." [DN 181 at 18]. They also say that his opinions "are based on faulty factual assumptions." [*Id.*]. Kitzes opines that "Suzuki failed to inform the National Highway Traffic [] Safety Administration (NHTSA) of the complaints of brake loss pressure under the Early Warning Reporting System[1] in a timely manner" and "Suzuki failed to notify [] NHTSA that the GSX-R motorcycle contained a defect related to motor vehicle safety as required under 49 [U.S.C.] [§] 301[2] and 49 [C.F.R.] [§] 573[3] in a timely manner." [DN 236-8 at 15–16]. In his deposition, Kitzes explains that Defendants failed to file Early Warning Reports required by regulations promulgated under the federal Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act.[4] [DN 181-1 Kitzes Dep. 18:6–20:21]. His reasoning is based on an internal document from a Suzuki employee that indicated to him that Suzuki was not filing such reports. [*Id.*].

Schall maintains that *Miller v. Coty, Inc.*, No. 3:14-cv-00443-CRS, 2018 WL 1440608 (W.D. Ky. Mar. 22, 2018) supports his contention that Kitzes can testify to the opinions at issue here. In *Miller*, the court held that "Kitzes' proffered testimony on the adequacy of the Product's existing warning, in terms of the application of product safety management theory and compliance with FDA

---

[1] The Early Warning Report rule requires manufacturers to submit to the NHTSA information regarding vehicle safety issues and recalls. 49 C.F.R. § 579.
[2] "[T]o reduce traffic accidents and deaths and injuries resulting from traffic accidents," it is necessary to "prescribe motor vehicle safety standards for motor vehicles and motor vehicle equipment in interstate commerce." 49 U.S.C. § 30101(1).
[3] The purpose of this regulation is, in part, "[t]o inform NHTSA of defective and noncomplying motor vehicles and items of motor vehicle equipment, and to obtain information for NHTSA on the adequacy of manufacturers' defect and noncompliance notification campaigns, on corrective action, on owner response, and to compare the defect incidence rate among difference groups of vehicles." 49 C.F.R. § 573.2(b).
[4] The TREAD Act requires, in part, the NHTSA to collect manufacturers' safety data for the purposes of early identification of safety defect trends. 49 U.S.C. § 301669(m).

labeling requirements, is sufficiently reliable due to Mr. Kitzes' long experience in applying such established and peer-reviewed theories to consumer products." *Miller*, 2018 WL 1440608, at *7. While the court in *Miller* did find that Kitzes' opinion on compliance with FDA labeling requirements was sufficiently reliable, the court did not consider whether Kitzes' opinion was a legal conclusion. As such, the Court does not find that the case is applicable to its consideration of whether Kitzes' opinion here is a legal conclusion.

Kitzes is qualified to testify regarding Defendants' compliance with the Early Warning Report rule, 49 U.S.C. § 301, and 49 C.F.R. § 573 because he has extensive experience in product safety management. *See In re Yamaha Motor Corp.*, 816 F. Supp. 2d at 455 ("To the extent that testimony on the [Consumer Product Safety Commission] and [Consumer Product Safety Act] is admissible, [the expert] is qualified to give it. She has extensive experience at the [Consumer Product Safety Commission], where she served as a compliance officer and deputy director. Although she may not qualify under the traditional scientific-based approach, she does qualify as an experience-based expert."). Kitzes is board-certified in Safety Management and Hazard Control Management. [DN 181-2 at 2]. He also worked for several years at the Consumer Product Safety Commission. [*Id.*]. He has done several seminars and workshops on safety-related issues. [*Id.* at 4–7]. There is no question that Kitzes is qualified to testify to his opinions here based on his product safety management experience.

Contrary to Defendants' arguments, Kitzes' opinions on whether whether Defendants violated the Early Warning Report rule, 49 U.S.C. § 301, and 49 C.F.R. § 573 are relevant to issues the jury will have to determine because Schall alleges that "Defendants acted with negligence, gross negligence, and/or wanton and malicious disregard of the Plaintiff['s] rights by failing to timely evaluate complaints of problems with Suzuki motorcycles . . . failing to timely issue a recall campaign by Suzuki distributors; by failing to timely notify the [NHTSA] of the defective motorcycles . . . ."

8

[DN 5 ¶ 51]. *See In re Yamha Motor Corp.*, 816 F. Supp. 2d at 456 ("Whether Yamaha violated the requirements of the [Consumer Product Safety Act] is irrelevant. . . . The [Consumer Product Safety Act] provides no private right of action, and proof that Yamaha violated the [Consumer Product Safety Act] would not advance any of the plaintiffs' claims. The plaintiffs in this case have alleged that [the product] was defectively designed. They have not alleged negligent recall or any other claims for which the reporting requirements of the [Consumer Product Safety Act] might be relevant."). Kitzes' opinion is relevant because Schall's allegations are, in part, about whether Defendants were timely in their recall.

However, there are limitations on what Kitzes can testify to on this issue. In as much as Kitzes is relying on the statutes and regulations that he cites to explain what the appropriate standard of care is in managing product safety, he may testify to what Suzuki did or did not do, but Kitzes may not opine on Defendants' compliance with the law. *Cowden v. BNSF Ry. Co.* No. 4:08CV01534 ERW, 2010 WL 3306889, at *4 (E.D. Mo. Aug. 19, 2010) ("[Expert] may still opine on ultimate issues such as whether Defendant acted prudently or provided Plaintiff with a reasonably safe work environment, so long as his opinions do not extend to whether Defendant's conduct actually violated certain laws or regulations."), *aff'd in part, rev'd in part*, 690 F.3d 884 (8th Cir. 2012); *see Johnson v. Avco Corp.*, 702 F. Supp. 2d 1093, 1109–10 (E.D. Mo. 2010) (Expert "may discuss the evidence indicating that Swan had not sufficiently practiced night landings and he may discuss the requirements outlined in the regulations, but he may not opine about whether Swan in fact violated the regulations.").

### D. Kitzes' Opinion that "Suzuki Failed to Identify Foreseeable Conditions of Use and Instead Blamed Riders for Not Conducting a Pre-Operation Check"

Defendants argue that Kitzes is not qualified to opine that "Suzuki failed to identify foreseeable conditions of use and instead blamed riders for not conducting a pre-operation check." [DN 181 at 20, DN 236-8 at 16]. Kitzes is qualified to give an opinion on what a foreseeable condition

of use of a product would be as someone who has spent decades in the consumer product safety field. [DN 181-2]. In addition to the experience previously discussed, Kitzes "directed the application of injury statistics, engineering data, and foreseeable consumer use to achieve a reduction in injuries, through standards, warning, and safety education campaigns." [*Id.* at 8]. Kitzes has even been retained as a consultant for a manufacturer "for analysis of all-terrain vehicle off-road safety, including instructions, warnings, and foreseeable use . . . ." [*Id.*].

For non-scientific expert testimony, "experience alone—or experience in conjunction with other knowledge, skill, training, or education may be sufficient to qualify an expert. When a witness relies primarily on his or her experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Childress v. Ky. Oaks Mall Co.*, No. 5:06CV-54-R, 2007 WL 2772299, at *3 (W.D. Ky. Sept. 20, 2007) (citations omitted).

Kitzes explains in his report that in evaluating a company's product safety management program, a safety principle applied by reasonably prudent manufactures is the performance of an adequate risk assessment that integrates foreseeable consumer use. [DN 236-8 at 2]. At his deposition, Kitzes identified that the foreseeable condition of use here is "not doing a pre-ride check." [DN 181-1 Kitzes Dep. 91:6–7]. Kitzes' testimony will also assist the jury in understanding what foreseeable conditions of use Schall's motorcycle would have. Therefore, his opinion about Suzuki's failure to identify a foreseeable condition of use is admissible.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Exclude the testimony of Kitzes [DN 181] is **GRANTED in part and DENIED in part** consistent with this opinion.

*Joseph H. McKinley [signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

10

March 12, 2020